UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>         Plaintiff,<br><br>       v.<br><br>UNITED STATES SOCIAL SECURITY ADMINISTRATION and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>         Defendants. | Civil No. 25-cv-1217 |

**COMPLAINT**
**(Freedom of Information Act)**

1. The American Civil Liberties Union ("Plaintiff" or "ACLU") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the expedited processing and disclosure of records that will shed light on the so-called Department of Government Efficiency's ("DOGE") access to data systems containing sensitive information maintained by Defendants U.S. Social Security Administration ("SSA") and U.S. Department of Veterans Affairs ("VA").

2. On January 20, 2025, President Trump issued an executive order establishing DOGE, renaming the United States Digital Service as the "United States DOGE Service ('USDS'),'" and establishing a temporary organization, "the U.S. DOGE Service Temporary Organization" (collectively referred to as "USDS"). Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025).

3. The executive order directs USDS to "improve the quality and efficiency of governmentwide software, network infrastructure, and information technology (IT) systems." *Id.*

1

§ 3. It also instructs government agency heads to "take all necessary steps . . . to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b).

4. In the days and weeks following the executive order, numerous outlets reported that individuals affiliated with or representing USDS, who lacked training and qualifications to handle highly sensitive data, had requested or gained access to government data systems across agencies—including Defendants' systems. Additional reports have indicated that individuals associated with USDS have proposed or implemented programs to use artificial intelligence to analyze large volumes of federal government records for purposes including, purportedly identifying potential redundancies and budget reductions.

5. In February, SSA Acting Commissioner Lee Dudek confirmed reports that Defendant SSA had granted USDS access to SSA data systems. In a press release, Commissioner Dudek stated that USDS personnel were working with SSA and that USDS had "read" access to SSA systems.[1] More recently, following litigation under the Privacy Act, Administrative Procedures Act, and other statutes in which a court prohibited access to SSA records by USDS personnel,[2] the Washington Post reported that USDS has "sought for weeks to get around a court order barring their access to sensitive data and internal systems at the Social Security Administration, prompting career staff to repeatedly resist their efforts."[3]

---

[1] Press Release, Soc. Sec. Admin., Statement from Lee Dudek, Acting Commissioner, about Commitment to Agency Transparency and Protecting Benefits and Information (Feb. 19, 2025), https://perma.cc/JV8S-UMTT.

[2] *Am. Fed'n of State, Cnty., & Mun. Emps. v. Soc. Sec. Admin.*, __ F. Supp. 3d __, No. 1:25-cv-00596, 2025 WL 868953 (D. Md. Mar. 20, 2025).

[3] Hannah Natanson & Lisa Rein, *Inside DOGE's Push to Defy a Court Order and Access Social Security Data*, Wash. Post (Apr. 15, 2025), https://perma.cc/F2GR-46FR.

6. USDS's access to government agency systems has garnered significant attention from Congress, the media, and the public. USDS access to SSA and VA systems raises particularly acute concerns in light of the highly sensitive information about Americans' health and finances held by those agencies. Because of the extraordinary harm that unauthorized access to and use of SSA records can cause, a federal judge has barred USDS access to SSA records in a lawsuit alleging violation of the Privacy Act and other federal data privacy and security laws.[4] Members of Congress have raised pointed questions about the harms that could result from unjustified access to and use of veteran medical records held by the VA.[5]

7. On February 7, 2025, Plaintiff submitted a FOIA request (the "Request") to more than 40 federal agencies, including SSA and VA, seeking the release of records pertaining to USDS's attempted or actual access to sensitive government data systems, including data repositories, databases, computer matching programs, and other systems containing sensitive or personally identifiable information. Ex. A.

8. Plaintiff requested expedited processing on the ground that there is an "urgency to inform the public concerning actual or alleged Federal Government activity" and the request is "made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). Plaintiff also requested waiver and limitation of search, processing, and duplication fees.

9. A number of agencies granted expedited processing initially or on appeal, including the Department of Commerce, Department of Defense, Department of Education, Department of

---

[4] *Am. Fed'n of State, Cnty., & Mun. Emps. v. Soc. Sec. Admin.*, __ F. Supp. 3d __, No. 1:25-cv-00596, 2025 WL 868953 (D. Md. Mar. 20, 2025).

[5] Letter from Jon Ossoff et al., U.S. Senators, to Douglas Collins, U.S. Sec'y of Veterans Affs. (Feb. 13, 2025), https://perma.cc/T9WN-RFMF.

Health and Human Services, Centers for Medicare and Medicaid Services, Centers for Disease Control and Prevention, Department of Homeland Security, Federal Emergency Management Agency, Office of Personnel Management, and Internal Revenue Service.

10. However, Defendant SSA denied Plaintiff's request for expedited processing and a fee waiver. Although Plaintiff timely appealed that denial, SSA has not responded to the appeal. SSA has not released any records responsive to the Request.

11. To date, Defendant VA has not responded to Plaintiff's request for expedited processing, and has not released any records responsive to the Request.

12. Plaintiff now asks the Court for injunctive and other relief requiring Defendants to process the ACLU's request on an expedited basis, including conducting a prompt and thorough search for and production of responsive records. Plaintiff also seeks an order enjoining Defendants from charging search, review, or duplication fees for the processing of the Request.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

14. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

15. The American Civil Liberties Union is a non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of government policies and practices and pending and proposed state and federal legislation, provides analysis of pending and proposed legislation and Executive Branch policies and practices, directly lobbies legislators and government officials, and mobilizes its members to communicate with elected and appointed officials. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the

conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities. It is incorporated in the District of Columbia and has its principal place of business in New York City.

16. Defendant U.S. Social Security Administration is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). SSA has possession, custody, and control of the records that the ACLU seeks.

17. Defendant U.S. Department of Veterans Affairs is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). VA has possession, custody, and control of the records that the ACLU seeks.

**FACTS**

**I. Concerns About USDS Access to Sensitive Data in Defendants' Custody and Control**

18. Defendant SSA controls sensitive personal and financial data, including "Social Security numbers, medical records, mental health records, hospitalization records, drivers' license numbers, bank and credit card information, tax information, income history, work history, birth and marriage certificates, and home and work addresses."[6] It has data on everyone who has a Social Security number, everyone who has Medicare, and everyone who has applied for Supplemental Security Income. About 72.5 million people receive Social Security benefits.[7]

19. In a recent opinion barring USDS personnel's access to SSA systems, Judge Hollander of the U.S. District Court for the District of Maryland wrote that USDS "is essentially

---

[6] *Am. Fed'n of State, Cnty. & Municipal Emps.,* 2025 WL 868953, at *68.
[7] Soc, Sec. Admin., *How Much Will the COLA Amount Be for 2025 and When Will I Receive It?* (Oct. 10, 2024), https://perma.cc/26HN-HAA7.

5

engaged in a fishing expedition at SSA . . . . thereby exposing personal, confidential, sensitive, and private information that millions of Americans entrusted to their government."[8]

20. Defendant VA maintains sensitive personal information and financial data, including veterans' medical records, benefits information, and military service records. VA has data on every veteran who has sought benefits through the agency, as well as information about veteran spouses, children, caregivers, and survivors. In 2024, VA estimated that it granted benefits to 1.1. million veterans and their survivors.[9]

21. Members of Congress have expressed significant concern that DOGE access to VA systems could enable private citizens, who lack proper legal authority and security clearances, to target veteran benefits and use private information for personal gain.[10]

**II. Statutory Framework**

22. Under FOIA, normally an agency must determine within twenty days after receiving a FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). The agency must immediately notify the requester of the determination. *Id.* An agency must also normally "make a determination with respect to any appeal within twenty days." *Id.* § 552(a)(6)(A)(ii).

23. However, when a requestor seeks expedited processing of the request, the agency's "determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." *Id.* § 552(a)(6)(E)(ii)(I). FOIA also requires "expeditious consideration of

---

[8] *Am. Fed'n of State, Cnty. & Municipal Emps.*, 2025 WL 868953, at *68.

[9] Press Release, Dep't of Veterans Affs., VA Has Now Granted Benefits to 1.1 million Veterans and Their Survivors in Fiscal Year 2024, Surpassing All-Time Record (July 23, 2024), https://perma.cc/K7DA-GCT7.

[10] Letter from Richard Blumenthal et al., U.S. Senators, to Douglas Collins, U.S. Sec'y of Veterans Affs. (Feb. 6, 2025), https://perma.cc/XJE2-E8XU.

administrative appeals of such determinations of whether to provide expedited processing." *Id.* § 552(a)(6)(E)(ii)(II).

24. FOIA requires agencies to provide expedited processing when the requestor "demonstrates a compelling need." *Id.* § 552(a)(6)(E)(i). FOIA defines "compelling need" to include an "urgency to inform the public concerning actual or alleged Federal Government activity" when the request is "made by a person primarily engaged in disseminating information." *Id.* § 552(a)(6)(E)(v)(II).

25. When expedited processing is granted, the agency shall process records "as soon as practicable." *Id.* § 552(a)(6)(E)(iii).

26. FOIA provides for waiver of document search, review, and duplication fees when disclosure of the requested records is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii). FOIA also provides for a waiver of search fees when the requestor is a "representative of the news media" and the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii)(II).

27. Additionally, if an agency "has failed to comply with any time limit" under 5 U.S.C. § 552(a)(6), the agency "shall not assess any search fees." *Id.* § 522(a)(4)(A)(viii)(I). If the request is made by "a representative of the news media" and the records "are not sought for commercial use," then the agency also cannot charge duplication fees. *Id.* This provision applies even when an agency may otherwise cite a separate statute that authorizes fees. *Shapiro v. U.S. Soc. Sec. Admin.*, 525 F. Supp. 3d 528, 541–42 (D. Vt. 2021).

28. If an agency "fails to comply with the applicable time limit provisions," a requester "shall be deemed to have exhausted his administrative remedies." *Id.* § 552(a)(6)(C)(i).

### III. ACLU's FOIA Requests

29. On February 7, 2025, the ACLU submitted a Request to more than forty agencies, including Defendants SSA and VA, seeking records pertaining to access to sensitive agency records by individuals associated with USDS.

30. The Request sought the following records:

(1) Any request by persons affiliated with or representing DOGE or USDS for access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records (including records of federal employees, contractors, and applicants), financial data, health data, or other sensitive data, and any response to such request;

(2) Any decision, analysis or discussion about whether access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records, financial data, health data, or other sensitive data by persons affiliated with or representing DOGE or USDS is prohibited or constrained by statute, regulation, or rule. This includes but is not limited to any discussion of protections provided by the Privacy Act; the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule; the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act; taxpayer privacy laws including 26 U.S.C § 6103; the Family Educational Rights and Privacy Act (FERPA); and census record privacy laws including 13 U.S.C. §§ 9, 214; and

(3) Any proposed or actual use of artificial intelligence, including but not limited to services, models, or other software applications provided by xAI or Grok, by or at the direction or request of persons affiliated with or representing DOGE or USDS to analyze agency records or data.

Ex. A at 3–4.

31. The Request sought expedited processing on the grounds that there was a "compelling need" for the requested records "because the information requested is 'urgen[tly]' needed by an organization primarily engaged in disseminating information 'to inform the public concerning actual or alleged Federal Government activity.'" *Id.* at 5 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)).

32. The Request explained that the ACLU is an organization "primarily engaged in disseminating information" within the meaning of FOIA and corresponding agency regulations because obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *Id.* The ACLU regularly publishes magazine issues, press releases, reports, blog posts, videos, podcasts, and other multimedia projects. *Id.* at 5–9. The ACLU website also includes many features on information obtained through FOIA. *Id.*

33. The Request further explained that there is "an urgency to inform the public about actual or alleged government activities" because the records sought relate to a matter of widespread and exceptional media and public interest in USDS access to federal agency systems containing sensitive information, and whether USDS access to or use of these sensitive records violates federal privacy protections. The Request cited numerous news stories, lawsuits, and a letter from Senator Mark Warner, and explained that there had been little information released about what access to sensitive data federal agencies had granted individuals associated with USDS, and what protections, if any, agencies had applied to safeguard individuals' private information. *Id.* at 3–4, 9–10.

34. The Request sought a waiver and limitation of fees on the grounds that disclosure of the requested records is in the public interest, as the disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* at 10–11 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). The records sought are related to serious questions surrounding the extraordinary access to sensitive agency records by USDS and would be a significant contribution

to the public's understanding given how little official information has been publicly available. The Request also sought a waiver and limitation of fees on the grounds that the ACLU is a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* at 10–12 (quoting 5 U.S.C. § 552(a)(4)(A)(ii)(III)).

### IV. Defendant SSA's Responses

35. On February 13, 2025, Defendant SSA denied the ACLU's requests for expedited processing and a fee waiver. Ex. B.

36. In denying the request for expedited processing, Defendant SSA stated that the ACLU's request did not fall under the category for "when the requester is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities." *Id.* at 2.

37. In denying the request for a fee waiver, Defendant SSA stated that the ACLU's request failed to meet the following factors listed in 20 C.F.R. § 402.85(b) for determining whether a disclosure is in the public interest:

- how the records pertain to the Federal government's operations or activities,
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public, and
- whether the contribution to public understanding would be significant.

Ex. B at 3.

38. Defendant SSA additionally invoked section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c), which, according to agency regulations, "permits the agency to charge the full cost to process requests for information for purposes not directly related to the administration of

program(s) under the Social Security Act," notwithstanding FOIA, 20 C.F.R. § 402.80. Defendant SSA concluded that the ACLU's request was "not directly related to the administration of the [Social Security] Act," and it would therefore charge for the full cost of search and reproduction of records to provide the requested information. Ex. B at 3.

39. On March 24, 2025, the ACLU appealed the denials of expedited processing and fee waiver. Ex. C.

40. The ACLU's appeal explained that its request was entitled to expedited processing because "the requestor is primarily engaged in disseminating information, and shows an urgency to inform the public about the actual or alleged government activities." 20 C.F.R. § 402.65(a). The appeal referenced the extensive explanation in the ACLU's original request that the ACLU meets the definition of a person "primarily engaged in disseminating information." To demonstrate the continued widespread media and public interest, the appeal cited numerous additional examples of news coverage raising questions and concerns about the legal, constitutional, and policy implications of USDS's questionable conduct across multiple government agencies. *See* Ex. C at 2–6 nn.1–7 (citing 44 press articles addressing the subject of the Request); Ex. A at 3–4, 9–10 nn.2–3, 11–12 (citing 16 press articles). The appeal also highlighted the particularized attention over concerns that representatives of USDS may be accessing sensitive personal and financial data, including Social Security numbers and medical, work, and pay records. Not only has there been extensive media coverage, courts have made findings in several lawsuits that irreparable harm could result from USDS access to sensitive personal information, including within SSA. Ex. C at 6–9.

41. As to denial of the ACLU's request for a fee waiver, the appeal explained that the ACLU's request satisfied the three factors set out in Defendant SSA's regulations for determining

11

whether disclosure of the requested information is in the public interest. *See* 20 C.F.R. § 402.85(b)(2). The records sought relate to SSA's operations as they pertain to USDS access to sensitive information. The records would reveal meaningful information about government operations and activities not already known to the public because there has been little to no information provided to the public on the standards under which individuals associated with USDS were hired or the authority or regulations under which they operate. This contribution thus would be significant because so little is known.

42. The appeal further explained that the authority under section 1106(c) to charge the full cost of processing requests is discretionary and does not apply to the ACLU's Request because it seeks records "directly related to the administration of a program under the [Social Security] Act for which SSA has responsibility." Ex. C at 10 (quoting 20 C.F.R. § 402.80(d)(1)(ii)). SSA's regulations expressly permit a fee waiver for disclosure of records in the public interest, even if fees would otherwise be charged pursuant to SSA's authority under section 1106(c). *See* 20 C.F.R. § 402.85.

43. In a March 25, 2025, email, Defendant SSA acknowledged receipt of the appeal, stating that the appeal would be added to SSA's FOIA case management solution, FOIAXpress, for processing. The email further stated that the ACLU would receive a separate email from FOIAXpress with a tracking number once the case was created in the system. Ex. D.

44. Later that same morning, Defendant SSA sent an email with the assigned tracking number 2025-APP-00478. Ex. E.

45. SSA did not provide an acknowledgement pursuant to 20 C.F.R. § 402.105(b) that the appeal would take longer than ten working days.

46. On April 18, 2025, the ACLU emailed Defendant SSA asking for a status update regarding the appeal. On April 21, 2025, SSA responded in an email stating that "[y]our appeal is currently being processed."

47. To date, SSA has not provided a determination on Plaintiff's appeal, and has not produced any responsive records.

48. Because SSA has not provided "expeditious consideration of [the] administrative appeal[]," 5 U.S.C. § 552(a)(6)(E)(ii)(II), Plaintiff has exhausted all administrative remedies. *See id.* § 552(a)(6)(C)(i).

49. Because SSA has not provided "expeditious consideration of [the] administrative appeal[]," *id.* § 552(a)(6)(E)(ii)(II), the agency is barred from charging search and duplication fees. *Id.* § 522(a)(4)(A)(viii)(I).

## V. Defendant VA's Response

50. In a February 10, 2025, email, Defendant VA acknowledged receipt of the ACLU's Request. Defendant VA further stated it referred the Request to the Office of the Executive Secretary, U.S. Department of Veterans Affairs for processing. Ex F.

51. Since February 10, 2025, the ACLU has received no communication from Defendant VA regarding this Request.

52. Defendant VA has failed to respond to the ACLU's request for expedited processing within 10 days, and more than twenty days have elapsed since Plaintiff filed the Request. Plaintiff has therefore exhausted all administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS FOR RELIEF

53. Defendants' failure to grant expedited processing and to process Plaintiff's Request expeditiously and as soon as practicable violates FOIA, 5 U.S.C. § 522(a)(6)(E), and Defendants' corresponding regulations.

54. Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

55. Defendants' failure to make an adequate search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D), and Defendants' corresponding regulations.

56. Defendant SSA's failure to grant Plaintiff's Request for a waiver of search, review, and duplication fees violates FOIA and SSA's corresponding regulations, 5 U.S.C. § 522(a)(4), (6); 20 C.F.R. § 402.85, and section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c).

57. Defendant SSA's failure to grant Plaintiff's Request for a limitation of fees violates FOIA and SSA's corresponding regulations, 5 U.S.C. § 522(a)(4), (6); 20 C.F.R. § 402.85, and section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c).

58. Defendant VA's failure to grant a fee waiver or limitation of fees violates FOIA and VA's corresponding regulations, 5 U.S.C. § 522(a)(4); 38 C.F.R. § 1.561(n).

59. Defendants' failure to comply with time limits under FOIA bars Defendants from charging search or duplication fees. 5 U.S.C. § 522(a)(4)(A)(viii).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Order Defendants SSA and VA to grant Plaintiff's request for expedited processing, to process Plaintiff's Request on an expedited basis, and to immediately release to Plaintiff the records sought in the Request;

B. Enjoin Defendants SSA and VA from charging Plaintiff search, review, or duplication fees for the processing of the Request;

C. Award Plaintiff costs and reasonable attorneys' fees incurred in this action; and

D. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Megan C. Keenan

Megan C. Keenan
Michelle Fraling*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
915 15th Street NW, 6th Floor
Washington, DC 20005
(917) 710-3245
mkeenan@aclu.org
michelle.fraling@aclu.org

Lauren Yu*
Nathan Freed Wessler*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
lyu@aclu.org
nwessler@aclu.org

Evelyn Danforth-Scott*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
edanforth-scott@aclu.org

*Counsel for Plaintiff*

* Pro hac vice application forthcoming

Dated: April 21, 2025