## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES SOCIAL SECURITY ADMINISTRATION and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>*Defendants*. | Case No. 1:25-cv-01217 |

### DECLARATION OF NATHAN FREED WESSLER

I, NATHAN FREED WESSLER, hereby declare as follows:

1.      I am an attorney with the American Civil Liberties Union ("ACLU") Foundation, where I serve as the Deputy Project Director of the ACLU Speech, Privacy, and Technology Project. I am counsel for Plaintiff ACLU in the above-captioned action. I make this declaration based on my personal knowledge and review of the ACLU's files.

2.      The ACLU is a non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of government policies and practices and pending and proposed state and federal legislation, provides analysis of pending and proposed legislation and Executive Branch policies and practices, directly lobbies legislators and government officials, and mobilizes its members to communicate with elected and appointed officials.

3.      The ACLU is committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about

1

governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

4.    One of the ways the ACLU gathers information about governmental activity is through Freedom of Information Act (FOIA) requests. The ACLU regularly publishes, analyzes, and disseminates information it obtains through FOIA requests through its website, magazine issues, press releases, reports, blog posts, videos, podcasts, social media posts, email alerts to the ACLU's 4 million members, supporters, and subscribers, and other multimedia projects. The ACLU regularly disseminates other information about government practices and threats to civil rights and civil liberties through the same channels. Examples of the ACLU's work disseminating information to the public are provided in the FOIA Request that is the subject of this litigation, a true and correct copy of which is attached as Exhibit A. *See* Ex. A at 6–9 nn. 5–10.

5.    Consistent with its regular practice, the ACLU intends to disseminate to the public information it receives in response to the FOIA Request that is the subject of this litigation.

6.    On February 7, 2025, the ACLU submitted a FOIA request (the "Request") to over 40 federal government agencies, including Defendant United States Social Security Administration ("SSA"). The Request sought records pertaining to access to sensitive agency records by individuals associated with the so-called Department of Government Efficiency ("DOGE"), also known as the United States DOGE Service ("USDS"). *See* Ex. A.

7.    The Request sought expedited processing on the grounds that there was a "compelling need" for the requested records because the information was urgently needed by an organization that primarily engages in disseminating information to the public about federal government activity. At the time the ACLU filed its Request, USDS's purported and actual access

to government data systems and potential use of AI had received substantial press coverage.[1] *See* Ex. A at 3–4, 9–10 nn.2–3, 11–12 (citing 16 press articles).

8.      The Request also sought a fee waiver or limitation of fees on the grounds that: (1) disclosure of the requested records is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"; and (2) the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)–(iii).

9.      A number of agencies to which the ACLU directed its Request have granted expedited processing and a fee waiver. Agencies granting expedited processing, either initially or on appeal, include the Department of Commerce, Department of Defense, Department of Education, Department of Health and Human Services, Centers for Medicare and Medicaid Services, Centers for Disease Control and Prevention, Department of Homeland Security, Federal

---

[1] *See, e.g.*, Isaac Stanley-Becker, et al., *Musk's DOGE Agents Access Sensitive Personnel Data, Alarming Security Officials,* Wash. Post (Feb. 6, 2025), https://perma.cc/A7W5-7BBP; *Inside Musk's Aggressive Incursion Into the Federal Government*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html; Andrew Duehren, et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://perma.cc/R9RN-DEFE; Vittoria Elliott, et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025), https://perma.cc/LB74-HWC9; Lauren Irwin, *Senate Democrat: DOGE Has 'Burrowed Into the Private Information of Every American*,' The Hill (Feb. 6, 2025), https://perma.cc/NPS9-SLDK; *Musk's DOGE Granted Access to US Medicare and Medicaid Systems,* Reuters (Feb. 5, 2025), https://perma.cc/36N8-TPAB; Vittoria Elliott, *DOGE Will Allow Elon Musk to Surveil the US Government From the Inside*, WIRED (Jan. 24, 2025), https://www.wired.com/story/doge-elon-musk; Hannah Natanson et al., *Elon Musk's DOGE is Feeding Sensitive Federal Data into AI to Target Cuts*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/nation/2025/02/06/elon-musk-doge-ai-department-education; Kate Conger et al., *Musk Allies Discuss Deploying A.I. to Find Budget Savings*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/technology/musk-allies-ai-government.html.

Emergency Management Agency, General Services Administration, Internal Revenue Service, and Office of Personnel Management.

10.     On February 13, 2025, the U.S. Social Security Administration denied the ACLU's requests for expedited processing and a fee waiver. A true and correct copy of the response is attached as Exhibit B.

11.     SSA denied the ACLU's request for expedited processing on the grounds that the request did not fall under the category for "when the requester is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities." Ex. B at 2.

12.     SSA denied the ACLU's request for a fee waiver on the grounds that the request failed to meet the following factors listed in 20 C.F.R. § 402.85(b) for determining whether a disclosure is in the public interest: (1) how the records pertain to the Federal government's operations or activities; (2) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (3) whether the contribution to public understanding would be significant. *Id.* at 2–3. Furthermore, SSA invoked section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c) to conclude that the ACLU's request was "not directly related to the administration of the [Social Security] Act," and it would therefore charge for the full cost of search and reproduction of records to provide the requested information. *Id*. at 3.

13.     On March 24, 2025, the ACLU appealed the denials of expedited processing and fee waiver. A true and correct copy of the ACLU's appeal is attached as Exhibit C.

14.     The appeal argued that the request was entitled to expedited processing because "the requestor is primarily engaged in disseminating information, and shows an urgency to inform

the public about the actual or alleged government activities." Ex. C at 1–8 (quoting 20 C.F.R.

§ 402.65(a)). In demonstrating urgency to inform the public, the appeal cited numerous additional

press articles, published subsequent to submission of the Request, raising questions or concerns

about DOGE access to sensitive federal data. Wessler Decl. Ex. C at 2–6 nn.1–7 (citing 44 press

articles).

15.     The appeal also argued that the ACLU was entitled to a fee waiver because it

satisfied the three factors set out in SSA's regulations for determining whether disclosure of the

requested information is in the public interest. *Id.* at 8–10 (citing 20 C.F.R. § 402.85(b)(2)).

16.     The appeal further explained that the authority under section 1106(c) to charge the

full cost of processing requests is discretionary and does not apply to the ACLU's Request because

it seeks records "directly related to the administration of a program under the [Social Security] Act

for which SSA has responsibility." *Id.* at 10 (quoting 20 C.F.R. § 402.80(d)(1)(ii)).

17.     On March 25, 2025, SSA acknowledged receipt of the appeal and assigned the

appeal tracking number 2025-APP-00478. SSA did not provide an acknowledgement pursuant to

20 C.F.R. § 402.105(b) that the appeal would take longer than ten working days. A true and correct

copy of the acknowledgment email is attached as Exhibit D.

18.     On April 18, 2025, the ACLU emailed SSA asking for a status update regarding the

appeal. A true and correct copy of the ACLU's email is attached as Exhibit E.

19.     On April 21, 2025, SSA responded in an email stating that "[y]our appeal is

currently being processed." A true and correct copy of the response is attached as Exhibit F.

20.     To date, SSA has not provided a determination on the ACLU's appeal, and has not

produced any responsive records.

21.    One of the agencies to which the ACLU directed its request, and now a defendant in this litigation, is the United States Department of Veterans Affairs ("VA"). Although the VA did not provide a determination on the ACLU's request for expedited processing prior to the filing of the complaint in this action on April 21, 2025, on April 25, 2025, the VA responded to the ACLU's Request via email, stating that the agency had commenced search for and processing of records, and granting the ACLU's request for fee waiver. Via the same communication, the VA released 18 pages of responsive records, and stated that "more pages [are] to be released in the future."

22.    Because no attorney for Defendants had yet entered an appearance, on May 2, 2025, and May 5, 2025, counsel for Plaintiff sent emails to the Civil Division Chief, Office of the United States Attorney for the District of Columbia, informing him that the ACLU intended to file a motion for a preliminary injunction as to the denial of expedited processing by Defendant SSA, and asking to be put in touch with the Assistant United States Attorney handling the case so the parties could "confer . . . about SSA's position to see if there is a way to avoid the need for a [preliminary injunction] motion before we move forward." On May 6, 2025, the Civil Chief responded stating that the government opposes Plaintiff's motion.

I declare under penalty of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 7, 2025

Nathan Freed Wessler