# Exhibit C

**FOIA Expedited Processing and Fee Waiver Appeal**

March 24, 2025

*Electronically submitted*

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR, 6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov



National Office
125 Broad Street,
18th Floor
New York, NY 10004
aclu.org

Deborah N. Archer
President

Anthony D. Romero
Executive Director

**Re:     Freedom of Information Act Appeal**

**Appeal of Denial of Expedited Processing and Fee Waiver for FOIA Request No. S9H: 2025-FOIA-00956**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU") write to appeal the Social Security Administration ("SSA") response to Freedom of Information Act ("FOIA") Request No. S9H: 2025-FOIA-00956 (the "Request," attached as Exhibit A). The Request, dated February 7, 2025, seeks records pertaining to access to sensitive agency records by individuals associated with the so-called Department of Government Efficiency ("DOGE"), also known as the United States DOGE Service ("USDS").

In a letter dated February 13, 2025 (the "Response," attached as Exhibit B), SSA denied the ACLU's requests for expedited processing and for a fee waiver. The ACLU hereby appeals both denials.

**I.     The Request Meets the Standard for Expedited Processing**

SSA denied expedited processing on grounds that the Request does not qualify under one of the three required categories: "when there is an imminent threat to the life or safety of a person; when the requestor is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities; or When the requestor can show, in detail and to our satisfaction, that a prompt response is needed because the requester may be denied a legal right, benefit, or remedy without the requested information, and that it cannot be obtained elsewhere in a reasonable amount of time." *See* Ex. B at 2. *See also* 20 CFR § 402.65(a); 5 U.S.C. § 552(a)(6)(E). The ACLU's request falls under the second category, and the ACLU appeals SSA's denial of expedited processing.

As explained exhaustively in the Request, Ex. A at 5–9, the ACLU meets the definition of a person "primarily engaged in disseminating information" because obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The Request details "an urgency to inform the public about actual or alleged government activities." 20 CFR § 402.65(a)(2); 5 U.S.C. § 552(a)(6)(E)(i)(I), (a)(6)(E)(v)(II). The records sought relate to a matter of widespread and exceptional media and public interest in USDS access to federal agency systems containing sensitive information, and whether USDS access to or use of these sensitive records violates federal privacy protections. The public and press have a pressing need for information to facilitate understanding of USDS's role in potentially compromising the privacy protections of millions of Americans, and more information is urgently needed to assess the scope of USDS's activities and SSA's response.

USDS's access to federal agencies' records systems has been and continues to be the subject of extraordinary and sustained attention in the public and the press, with new coverage published daily since promulgation of the Executive Order establishing USDS on January 20, 2025.[1] News outlets, government officials, and bipartisan U.S. lawmakers have raised sustained questions and concerns about the legal, constitutional, and policy implications of USDS's highly questionable conduct across multiple government agencies.[2]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] *See* Executive Order, *Establishing and Implementing The President's "Department of Government Efficiency"* (Jan. 20, 2025); *see also, e.g.*, Madeleine Ngo & Theodore Schleifer, *How Trump's Department of Government Efficiency Will Work*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/politics/doge-government-efficiency-trump-musk.html; Natalie Alms, *Trump Signs Order Setting Up DOGE with a Focus on Government Tech*, Gov't Executive (Jan. 21, 2025), https://www.govexec.com/management/2025/01/trump-signs-order-setting-up-doge-focus-government-tech/402362/.

[2] *See, e.g.*, Adam Cancryn, *DOGE Working With Two Trump Health Appointees to Examine Medicare and Medicaid Books*, Politico (Feb. 7, 2025), https://www.politico.com/news/2025/02/07/doge-trump-appointees-medicare-medicaid-00203211; AJ Dellinger, *'Most Transparent Administration in History' is Shredding Documents and Ignoring FOIA*, Gizmodo (Mar. 11, 2025), https://gizmodo.com/most-transparent-administration-in-history-is-shredding-and-ignoring-foia-2000574561; Andrew Duehren & Cecilia Kang, *Struggle Over Americans' Personal Data Plays Out Across the*

_____

*Government*, N.Y. Times (Feb. 19, 2025),
https://www.nytimes.com/2025/02/19/us/politics/elon-musk-doge-personal-data.html; Anna
Wilde Mathews & Liz Essley Whyte, *DOGE Aides Search Medicare Agency Payment Systems
for Fraud*, Wall Street J. (Feb. 5, 2025), https://www.wsj.com/politics/elon-musk-doge-
medicare-medicaid-fraud-e697b162; C.J. Ciaramella, *DOGE Isn't Exempt from FOIA Requests,
Judge Rules*, Reason (Mar. 11, 2025), https://reason.com/2025/03/11/doge-isnt-exempt-from-
foia-requests-judge-rules/; Dan Diamond et al., *DOGE Broadens Sweep of Federal Agencies,
Gains Access to Health Payment Systems*, Wash. Post (Feb. 5, 2025),
https://www.washingtonpost.com/health/2025/02/05/doge-health-agencies-labor/; David Ingram,
*Elon Musk and DOGE are Hacking the Government*, NBC News (Feb. 4, 2025),
https://www.nbcnews.com/tech/tech-news/elon-musk-doge-usaid-treasury-government-
rcna190450; Eyal Press, *What Will DOGE's Moves on Government Agencies Mean for OSHA?*,
New Yorker (Feb. 10, 2025), http://newyorker.com/news/the-lede/what-will-doges-moves-on-
government-agencies-mean-for-osha; Danielle Douglas-Gabriel, *Judge Temporarily Blocks
DOGE Access to Sensitive Information at Two Agencies*, Wash. Post (Feb. 24, 2025),
https://www.washingtonpost.com/education/2025/02/24/doge-education-department-opm-
sensitive-information/; Eugene Daniels, *Trump Sets Musk's DOGE on Defense, Education
Departments*, Politico (Feb. 7, 2025), https://www.politico.com/news/2025/02/07/trump-musk-
pentagon-education-014337; Faiz Siddiqui et al., *DOGE's Grab of Personal Data Stokes
Privacy and Security Fears*, Wash. Post (Feb. 25, 2025),
https://www.washingtonpost.com/business/2025/02/25/elon-musk-doge-data-privacy-security/;
Hannah Natanson et al., *Move Fast, Break Things, Rebuild: Elon Musk's Strategy for U.S.
Government*, Wash. Post (Feb. 24, 2025),
https://www.washingtonpost.com/technology/2025/02/24/doge-fast-cuts-federal-workers-
programs-elon-musk/; Hannah Parry, *DOGE Announces It's Slashing $881M from Education
Department Contracts: Live Updates*, Newsweek (Feb. 11, 2025),
https://www.newsweek.com/doge-announces-its-slashing-881m-education-department-
contracts-live-updates-2029353; Isaac Stanley-Becker et al., *Musk's DOGE Agents Access
Sensitive Personnel Data, Alarming Security Officials*, Wash. Post (Feb. 6, 2025),
https://perma.cc/A7W5-7BBP; Jack Queen & David Bario, *Judge Declines to Block DOGE from
Labor Department Systems*, Reuters (Feb. 10, 2025), https://www.reuters.com/world/us/us-
judge-declines-block-elon-musks-doge-labor-department-systems-2025-02-08/; Jeanne Sahadi,
*DOGE Wants Access to Your Tax and Social Security Data. These Two Laws are Supposed to
Protect You*, CNN (Feb. 25, 2025), https://www.cnn.com/2025/02/25/business/doge-personal-
data-access-federal-agencies/index.html; Jeff Stein et al., *Acting IRS Commissioner to Step
Down Amid DOGE Blitz on Agency*, Wash. Post (Feb. 24, 2025),
https://www.washingtonpost.com/business/2025/02/24/irs-commissioner-steps-down-musk-
doge/; Jeff Stein et al., *Top IRS Lawyer Pushed Aside as DOGE Seeks Records and 20% Staff
Cuts*, Wash. Post (Mar. 13, 2025), https://www.washingtonpost.com/business/2025/03/13/musk-
doge-irs-trump/; Jesse Coburn, *DOGE Gains Access to Confidential Records on Housing
Discrimination, Medical Details—Even Domestic Violence*, ProPublica (Feb. 26, 2025),
https://www.propublica.org/article/doge-elon-musk-hud-housing-discrimination-privacy-
domestic-violence; Jonathan Swan et al., *Inside Musk's Aggressive Incursion Into the Federal
Government*, N.Y. Times (Feb. 3, 2025),
https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html; Joseph
Gedeon, *Federal Judge Orders Doge to Release Internal Records for Transparency*, The

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3

Public discussion of this program has focused on three main issues. First, the potential mishandling of sensitive data by individuals associated with USDS, as little to no information has been provided to the public on the standards under which they were hired or the authority or regulations under which they operate.[3]

---

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Guardian (Mar. 11, 2025), https://www.theguardian.com/us-news/2025/mar/11/judge-orders-doge-document-release; Joyce Lupiani, *Elon Musk's DOGE Team Visits CDC in Atlanta, Reports Say*, FOX 5 Atlanta (Feb. 6, 2025), https://www.fox5atlanta.com/news/elon-musks-doge-team-visits-cdc-atlanta-reports-say; *Judge Blocks 2 Federal Agencies from Disclosing Personal Records to Trump Advisor Musk's DOGE*, Assoc. Press (Feb. 24, 2025), https://apnews.com/article/doge-musk-judge-989e1eea65bd910dd569da3c28486b2d; Michael Stratford, *Judge Questions Constitutionality of DOGE, Musk's Role*, Politico (Feb. 24, 2025), https://www.politico.com/news/2025/02/24/judge-questions-constitutionality-doge-elon-musk-00205866; Matt Bracken, *DOGE Must Comply with Expedited Request to Release Records, Judge Rules*, FedScoop (Mar. 11, 2025), https://fedscoop.com/doge-foia-requests-federal-judge-crew/; Molly Bohannon & Derek Saul, *Treasury Chief Bessent Says He's 'Completely Aligned' With Elon Musk: Here's What to Know About DOGE*, Forbes (Feb. 6, 2025), https://www.forbes.com/sites/mollybohannon/2025/02/06/treasury-chief-bessent-says-hes-completely-aligned-with-elon-musk-heres-what-to-know-about-doge/; Nate Raymond, *US Judge Says Musk's DOGE Must Release Records on Operations Run in Secrecy*, Reuters (Mar. 11, 2025), https://www.reuters.com/world/us/us-judge-says-musks-doge-must-release-records-operations-run-secrecy-2025-03-11/; Nicole Alvarez, *The Privacy Act of 1974 Was Designed to Protect Us from Elon Musk and DOGE,* Ctr. for Am. Progress (Feb. 21, 2025), https://www.americanprogress.org/article/the-privacy-act-of-1974-was-designed-to-protect-us-from-elon-musk-and-doge/; Rachel Scott et al., *Elon Musk's First 30 Days: How DOGE is Reshaping the Federal Government,* ABC News (Feb. 24, 2025), https://apnews.com/article/elon-musk-doge-lawsuit-attorneys-general-5733f8985e4cf7ad5b233fddefef4d01; Siladitya Ray, *Federal Judge Says Musk's DOGE Must Make Records Public—Questions 'Unusual Secrecy,*' Forbes (Mar. 11, 2025), https://www.forbes.com/sites/siladityaray/2025/03/11/federal-judge-rules-doge-must-disclose-records-about-its-operation-to-comply-with-federal-transparency-law/; Sean Michael Newhouse, *Multiple Groups File Lawsuits to Get DOGE Records*, Gov't Exec. (Feb. 27, 2025), https://www.govexec.com/oversight/2025/02/multiple-groups-file-lawsuits-get-doge-records/403343/; Vittoria Elliott et al., *A 25-Year-Old with Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025), https://perma.cc/LB74-HWC9.

[3] *See, e.g.*, Benjamin S. Weiss, *House Dems Demand Records on DOGE Structure, Activities at Federal Agencies*, Courthouse News Service (Mar. 18, 2025), https://www.courthousenews.com/house-dems-demand-records-on-doge-structure-activities-at-federal-agencies/; David Klepper, *Democratic Senators Protest After They Say Trump Gives Musk's Staff Access to Classified Info*, Assoc. Press (Feb. 5, 2025), https://apnews.com/article/elon-musk-trump-doge-intelligence-cia-4a4e99c7925b02e014e6e65d2ef9a055; Laura Strickler & Courtney Kube, *Secrecy is Becoming a Defining Trait of Elon Musk's DOGE*, NBC News (Feb. 7, 2025), https://www.nbcnews.com/politics/white-house/secrecy-becoming-defining-characteristic-elon-musks-doge-rcna190966; WIRED Staff, *The US Treasury Claimed DOGE Technologist Didn't Have 'Write Access' When He Actually Did*, WIRED (Feb. 6, 2025), https://www.wired.com/story/treasury-department-doge-marko-elez-access.

Second, individuals associated with USDS have proposed use of artificial intelligence tools to analyze large volumes of federal government records, raising concerns that sensitive personal information is being fed to shadowy algorithms, further compromising the privacy of Americans and potentially leading to flawed decisionmaking.[4] Third, access to sensitive data is controlled by federal privacy statutes and regulations, including the Privacy Act, the E-Government Act of 2002 (including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act), taxpayer privacy laws including 26 U.S.C § 6103, and other provisions. Public debate has raised urgent concerns that USDS's access to and use of such data may be unlawful or otherwise in contravention of existing regulations,[5] and lawsuits continue to be filed alleging violation of federal data privacy and security requirements.[6]

USDS's access to and interference with SSA records systems has received particularized attention over concerns that representatives of USDS may be accessing sensitive personal and financial data associated with the department, including Social Security numbers and medical, work, and pay records.[7] Indeed,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] *See, e.g.*, Hannah Natanson et al., *Elon Musk's Doge Is Feeding Sensitive Federal Data into AI to Target Cuts*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/nation/2025/02/06/elon-musk-doge-ai-department-education/; Jonathan Swan et al., *Inside Musk's Aggressive Incursion into the Federal Government*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html.

[5] *See, e.g.*, Alison Durkee & Forbes Staff, *Elon Musk and DOGE's Access to Student Loan Data Raises Concern—Here's What to Know*, Forbes (Feb. 10, 2025), https://www.forbes.com/sites/alisondurkee/2025/02/10/elon-musk-and-doges-access-to-student-loan-data-raises-concern-heres-what-to-know/; Anthony Izaguirre, *Federal Judge Blocks Elon Musk's DOGE from Accessing Sensitive US Treasury Department Material*, AP (Feb. 8, 2025), https://abc7ny.com/post/federal-judge-blocks-elon-musks-doge-donald-trump-administration-accessing-sensitive-us-treasury-department-material/15881252/; Lauren Feiner, *Trump Administration Illegally Allowed DOGE to Access Workers' Data, Lawsuit Alleges*, Verge (Feb. 11, 2025, https://www.theverge.com/news/609990/eff-doge-privacy-lawsuit-opm-trump-musk.

[6] *See* Ex. A at 10 n.13; *see also, e.g.*, *Am. Federation of State, Cnty. & Municipal Empls., AFL-CIO v. Social Sec. Admin.*, No. 1:25-cv-00596 (D. Md. filed Feb. 21, 2025); *Ctr. For Taxpayer Rights v. IRS*, No. 1:25-cv-00457 (D.D.C. filed Feb. 17, 2025); *Gribbon v. Musk*, No. 1:25-cv-00422 (D.D.C. filed Feb. 12, 2025); *Am. Federation of Gov't Emps., AFL-CIO v. U.S. Off. of Personnel Management*, No. 25-cv-1237 (S.D.N.Y. filed Feb. 11, 2025); *Elec. Privacy Info. Ctr. v. U.S. Off. of Personnel Management*, No. 25-cv-255 (E.D. Va. filed Feb. 10, 2025); *Am. Federation of Teachers v. Bessent*, No. 25-cv-430 (D. Md. filed Feb. 10, 2025); *Nat'l Treasury Emps. Union v. Vought*, No. 25-cv-380 (D.D.C. filed Feb. 9, 2025).

[7] *See, e.g.,* Fatima Hussein, *Social Security Head Steps Down Over DOGE Access of Recipient Information, AP Sources Say*, Assoc. Press (Feb. 17, 2025), https://apnews.com/article/social-security-elon-musk-doge-

USDS personnel recently announced their efforts to "clean up" SSA records systems in attempts to remove individuals they suspect to be deceased.[8] In response to these pressing security and privacy concerns, litigation has already commenced, including a lawsuit challenging USDS access to SSA records as illegal under the Privacy Act, Administrative Procedure Act, Social Security Act, and Internal Revenue Code, and other laws.[9] A declaration by SSA's former acting chief of staff in the case stressed concerns that USDS employees "[lack] a sufficient understanding of the sensitive nature of SSA data or the ways to ensure such data's confidentiality" and note that "[i]n such a chaotic environment, the risk of data leaking into the wrong hands is significant."[10] On March 20, the court granted a temporary restraining order, explaining that

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

> SSA provided members of the SSA DOGE Team with unbridled access to the personal and private data of millions of Americans, including but not limited to Social Security numbers, medical records, mental health records, hospitalization records, drivers' license numbers, bank and credit card information, tax information, income history, work history, birth and marriage certificates, and home and work addresses.
>
> Yet, [the SSA] never identified or articulated even a single reason for which the DOGE Team needs unlimited access to SSA's entire record systems, thereby exposing personal, confidential, sensitive,

---

164c91f8477d5e7833af7f6de4bbde57; Laurel Wamsley, *The Government Already Knows a Lot About You. DOGE is Trying to Access All of It*, NPR (Mar. 11, 2025), https://www.npr.org/2025/03/11/nx-s1-5305054/doge-elon-musk-security-data-information-privacy; Lisa Rein, *Former Social Security Official Describes Hostile Takeover by Musk Team*, Wash. Post (Mar. 10, 2025, 5:00 AM), https://www.washingtonpost.com/politics/2025/03/10/musk-social-security-data-doge-trump; Lisa Rein et al., *Top Social Security Official Exits After Clash with Musk's DOGE Over Data*, Wash. Post (Feb. 17, 2025), https://www.washingtonpost.com/politics/2025/02/17/doge-social-security-musk/; Makena Kelly & David Gilbert, *These Are the 10 DOGE Operatives Inside the Social Security Administration*, WIRED (Mar. 13, 2025), https://www.wired.com/story/doge-operatives-access-social-security-administration/.

[8] *See Dep't of Gov't Efficiency* (@DOGE), X (Mar. 18, 2025, 2:25 AM), https://x.com/DOGE/status/1901882509463630073?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Etweet; Shane Croucher & Aliss Higham, *DOGE Announces 'Major Cleanup' for Social Security*, Newsweek (Mar. 18, 2025), https://www.newsweek.com/doge-announces-major-cleanup-social-security-2046231.

[9] *See Am. Federation of State, Cnty., & Mun. Emps., AFL-CIO v, Soc. Sec. Admin.*, No. 1:25-cv-00596 (D. Md.) [hereinafter "*AFSCME v. SSA*"].

[10] *See* Ex. J., Tiffany Flick Decl. at 7, 12, *AFSCME v. SSA.* (ECF No. 22-10).

and private information that millions of Americans entrusted to their government.[11]

In light of the above, the Request meets the criteria for expedited processing in 20 CFR § 402.65(a) and the FOIA statute. The ACLU's entitlement to expedited processing is further confirmed because the Request satisfies the factors courts have looked to in applying the expedited processing standard under the FOIA statute. As explained above, the topics covered by the request are "the subject of current news coverage," and they "concern[] a matter of current exigency to the American public." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 308, 310 (D.C. Cir. 2001). Further, the "consequences of delaying a response would compromise a significant recognized interest" or have a "significant adverse consequence." *Id.* at 310–11. As one court explained when granting a temporary restraining order against USDS access to sensitive records systems within the Treasury Department, USDS activities pose a "risk . . . of the disclosure of sensitive and confidential information" and a "heightened risk that the systems in question will be more vulnerable than before to hacking." Order at 2, *State of N.Y. v. Trump*, No. 25-cv-1144-JAV (S.D.N.Y. Feb. 8, 2025) (ECF No. 6). Another judge subsequently granted a preliminary injunction in the same case, finding that "there is a substantial risk of future harm where the data access protocols in place do not satisfactorily vet the [USDS-affiliated] employees with access and rigorously train them in data security measures." *State of N.Y. v. Trump*, No. 25-cv-1144-JAV, 2025 WL 573771, at *26 (S.D.N.Y. Feb. 21, 2025). In another case challenging USDS access to sensitive records systems maintained by several federal agencies, a judge expressed "serious concerns about the privacy concerns raised by this case, and those concerns are all the graver now that the data includes information on all Americans who rely on Medicare and Medicaid, as well as countless consumers." *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, No. CV 25-0339 (JDB), 2025 WL 542825, at *1 (D.D.C. Feb. 14, 2025).[12] And in yet another case, a judge granted a temporary restraining order, recognizing that "unauthorized disclosure of the plaintiffs' sensitive personal information [to DOGE personnel without proper authorization] is an injury in fact" and holding that the government has failed to demonstrate that DOGE personnel have legitimate need for access to the type of highly sensitive personal information contained in agency systems of records, and that irreparable harm will result from misuse of that data. *Am. Fed'n of Tchrs. v. Bessent*, No. CV DLB-25-0430, 2025 WL 582063, at *7, 11–12, 14 (D. Md. Feb. 24, 2025). And a court recently found similarly as to USDS access to SSA records systems, explaining that irreparable harm may result from people's "sensitive, personally identifiable information [being] accessible to the DOGE Team on a daily basis, with no proper

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[11] Mem. Op. at 132, *AFSCME v. SSA* (Mar. 20, 2025) (ECF No. 49).

[12] The court denied a motion for a temporary restraining order but recognized that the complex legal issues and significant alleged harms should be addressed with "further briefing and analysis on a motion for preliminary injunction." *Id.* at *5.

justification." Mem. Op. at 129, *AFSCME v. SSA* (Mar. 20, 2025) (ECF No. 49).

But because the public lacks accurate information about the extent of USDS access to federal data systems, including in SSA, members of the public, lawmakers, and courts face barriers to ensuring compliance with critical privacy laws and regulations, meaning the vulnerabilities to sensitive and confidential information may continue unabated until accurate information about USDS activities is released.

"Neither FOIA nor the departmental regulations require the requester to *prove* wrongdoing by the government in order to obtain documents on an expedited basis." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020) (emphasis added). Rather, it is sufficient if "the request raised 'possible questions' about government integrity that could affect public confidence." *Id.* The Request has done that here.

In sum, the active public debate about the actions of USDS and the urgency to provide information about federal government activity warrant that the Request receive expedited processing. The ACLU respectfully asks that you direct SSA to grant expedited processing and promptly process the Request. Indeed, other agencies, including the Centers for Disease Control, Internal Revenue Service Office of Personnel Management, Department of Homeland Security, and others, have granted expedited processing of the same Request.

## II.      The ACLU Is Entitled to a Fee Waiver

SSA denied the ACLU's request for a fee waiver on the grounds that the Request has not shown "how the disclosure of the information you requested will meet the . . . factors" regarding whether disclosure of the requested information is in the public interest set out in the SSA's regulations, 20 C.F.R. § 402.85. Ex. B at 2–3. Those factors are:

> (i) How the records pertain to the Federal Government's operations or activities;

> (ii) Whether disclosure would reveal any meaningful information about Government operations or activities not already known to the public; and

> (iii) Whether the contribution to public understanding of those operations or activities would be significant.

20 C.F.R. § 402.85(b)(2). The Request seeks records to significantly contribute to the public's understanding of SSA's operations as they pertain to USDS's access to sensitive systems, and the ACLU hereby appeals SSA's denial of a fee waiver.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

As explained in the Request and in the expedited processing section of this appeal, *supra*, serious concerns have been raised about whether USDS access to or use of these sensitive records violate federal privacy protections and whether U.S. government actors are outsourcing important and complex decisionmaking to black-box AI algorithms. The Request seeks records related to the SSA's operations as they pertain to USDS access to sensitive information. This satisfies the first factor. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003); *see also Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Health & Hum. Servs.*, 481 F. Supp. 2d 99, 107–08 (D.D.C. 2006).

The Request also satisfies the second factor, as the records sought would reveal meaningful information about government operations and activities not already known to the public. As detailed above, there has been little to no information provided to the public on the standards under which individuals associated with USDS were hired or the authority or regulations under which they operate. *See supra* note 3. And because so little is known, the contribution would be significant, satisfying the third factor. *See Cause of Action v. FTC*, 961 F. Supp. 2d 142, 156 (D.D.C. 2013) ("When the requested information is not publicly available, it will more likely contribute significantly to public understanding."). The public and press have a pressing need for information to facilitate understanding of USDS's role in potentially compromising the privacy protections of millions of Americans, and the ACLU will make any information disclosed as a result of the Request available to the public at no cost. *See Judicial Watch*, 326 F.3d at 1314 (noting the ways in which the plaintiff communicated collected information to the public); *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1179–80 (10th Cir. 2005) (noting that "[w]hile the requested records may be publicly available in piecemeal and hard-to-access form," the plaintiff "plan[ned] to broadly disseminate compiled information").

The recent decision of a federal court granting a temporary restraining order against unfettered USDS access to SSA records underscores the degree to which the information sought in the Request is needed by the public, but is not publicly available. As the court explained, Americans "know their sensitive, personally identifiable information is accessible to the DOGE Team on a daily basis, with no proper justification." Mem. Op. at 129, *AFSCME v. SSA* (Mar. 20, 2025) (ECF No. 49). But they "do not know if their information has been viewed or documented by any of these employees, nor how many times it has been viewed or will continue to be viewed in the coming hours, days, weeks, or months." *Id.* The public also lacks information about whether "all members of the DOGE Team were SSA employees at the time access was granted," *id.* at 115, and why USDS and SSA believe USDS-affiliated personnel have a permissible "'need' for the breadth of access to SSA records that was provided to the DOGE Team." *Id.* at 121. As the court noted, "[c]ounsel [for the government] offered no meaningful explanation as to why the DOGE Team was in 'need' of unprecedented, unfettered access to virtually SSA's entire data systems in order to accomplish the goals of

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

modernizing technology, maximizing efficiency and productivity, and detecting fraud, waste, and abuse." *Id.*

Congress intended courts to liberally construe the fee waiver requests of noncommercial entities, *Forest Guardians*, 416 F.3d at 1181–82, and indeed, other agencies, including the Internal Revenue Service, U.S. Citizenship and Immigration Services, and the Centers for Disease Control, have granted a fee waiver for the same Request. The ACLU respectfully asks that you direct SSA to grant a fee waiver for the Request.

SSA's Response also determines that, notwithstanding FOIA's fee provisions, SSA intends to "charge the full cost for search and reproduction of records" under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). Ex. B at 3. The ACLU requests reconsideration of this determination on two grounds.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

First, the authority granted by section 1106(c) is discretionary. *See* (42 U.S.C. § 1306(c) (the agency "*may* require the requester to pay the full cost . . . of providing such information") (emphasis added). *See also* 20 C.F.R. § 402.80 ("Section 1106(c) of the Social Security Act *permits* the agency to charge the full cost to process requests for information for purposes not directly related to the administration of program(s) under the Social Security Act. This *may* be done notwithstanding the fee provisions in FOIA . . . .") (emphases added). In light of the extraordinary public interest in the subject matter of the Request, *see supra*, the ACLU asks the SSA to drop its invocation of section 1106(c) and apply the properly granted fee waiver.

Second, section 1106(c) applies only to FOIA requests made for a "purpose not directly related to the administration of the program or programs under this chapter to which such information relates." 42 U.S.C. § 1306(c). Although the regulations provide criteria that SSA considers when determining whether requested information is program-related, those criteria are advisory only, and the regulations require SSA to "consider each request on a case-by-case basis." 20 C.F.R. § 402.80(d)(2). Here, the records sought are "directly related to the administration of a program under the Act for which SSA has responsibility," *id.* § 402.80(d)(1)(ii), because they concern access to, security of, and use of sensitive and personal records held by SSA and used for administration of programs and provision of benefits. The administration of SSA programs relies on accurate and secure records containing personally identifiable information of Americans, including medical information, financial data, biographical information and, of course, social security numbers. The request seeks records regarding protections against improper access to, use of, and corruption of that data, which directly implicates the administration of SSA programs.

\* \* \*

10

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. Thank you for your attention to this matter.

Sincerely,

_____
Nathan Freed Wessler
Lauren Yu
Sophie Feng
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
nwessler@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11

Exhibit A

**FOIA Request / Expedited Processing Requested**

February 7, 2025

*Electronically submitted*

Recipients (full addressee list provided in addendum):



**AMERICAN CIVIL LIBERTIES UNION**

National Office
125 Broad Street,
18th Floor
New York, NY 10004
aclu.org

**Deborah N. Archer**
President

**Anthony D. Romero**
Executive Director

- Commerce Department (including the Census Bureau and National Oceanic and Atmospheric Administration)
- Consumer Finance Protection Bureau
- Department of Agriculture (including the Food and Nutrition Service)
- Department of Defense (including the Defense Manpower Data Center)
- Department of Education
- Department of Health and Human Services (including the Administration for Children and Families, Centers for Medicare & Medicaid Services, Centers for Disease Control, National Institutes of Health, Food and Drug Administration, Program Support Center, and Substance Abuse and Mental Health Services Administration)
- Department of Homeland Security (including the Federal Emergency Management Agency and U.S. Citizenship and Immigration Services)
- Department of Housing and Urban Development
- Department of the Interior (including the Bureau of Indian Affairs and National Park Service)
- Department of Justice (including the Federal Bureau of Investigation and Executive Office of U.S. Attorneys)
- Department of Labor (including the Mine Safety and Health Administration and Occupational Safety and Health Administration)
- Department of State (including the U.S. Agency for International Development)
- Department of Veterans Affairs
- Equal Employment Opportunity Commission
- General Services Administration
- Office of Management and Budget
- Office of Personnel Management
- Social Security Administration
- Treasury Department (including the Bureau of Fiscal Service and Internal Revenue Service)

Re:    **Request Under Freedom of Information Act Concerning U.S. DOGE Service Access to Sensitive Agency Records Systems**

       **(Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

    The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to access to sensitive agency records by individuals associated with the so-called Department of Government Efficiency ("DOGE"), also known as the United States DOGE Service ("USDS").

## I. Background

    On January 20, 2025, President Trump issued an executive order establishing the "Department of Government Efficiency," renaming the United States Digital Service as the "United States DOGE Service (USDS)," "establish[ing]" USDS in the Executive Office of the President, and establishing a temporary organization, "the U.S. DOGE Service Temporary Organization," pursuant to 5 U.S.C. § 3161. For purposes of this Request, these entities are collectively referred to as "USDS."

    In the weeks since, numerous press reports have discussed individuals affiliated with or representing USDS requesting or gaining access to various federal agency systems of records, data repositories, databases, computer matching programs, and other systems containing sensitive information. This reportedly includes the Treasury Department's payment system; personnel records of federal employees, contractors, and applicants; federal student loan records; federal benefits payee records; and more. Many of these records are protected by federal laws and regulations, including the Privacy Act, the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule, the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act, taxpayer privacy laws including 26 U.S.C § 6103, and other provisions. Serious concerns have been raised about whether USDS access to or use of these sensitive records violates these and other federal privacy protections.

    Additionally, reports have indicated that individuals associated with USDS have proposed or implemented programs to use artificial intelligence to analyze large volumes of federal government records for purposes including

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

identifying "potential redundancies and budget reductions."[2] This raises concerns about whether U.S. government actors are outsourcing important and complex decision-making to black-box AI algorithms, and whether feeding people's sensitive information to unvetted algorithms further risks compromising Americans' privacy.

To provide the American public with information about this highly consequential and fast-moving situation, the ACLU seeks the following information through this FOIA request.

## II. Requested Records

The ACLU seeks the release of records for the period beginning at noon Eastern Standard Time on January 20, 2025—including but not limited to written communications (including emails, SMS messages, and messages sent on platforms including but not limited to iMessage, Slack, Microsoft Teams, WhatsApp, and Signal) and memoranda—concerning the following:

**(1)** Any request by persons affiliated with or representing DOGE or USDS for access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records (including records of federal employees, contractors, and applicants), financial data, health data, or other sensitive data, and any response to such request;

**(2)** Any decision, analysis or discussion about whether access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records, financial data, health data, or other sensitive data by persons affiliated with or representing DOGE or USDS is prohibited or constrained by statute, regulation, or rule. This includes but is not limited to any discussion of protections provided by the Privacy Act; the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule; the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act; taxpayer privacy laws including 26 U.S.C § 6103; the Family Educational Rights and Privacy Act (FERPA); and census record privacy laws including 13 U.S.C. §§ 9 & 214; and

**(3)** Any proposed or actual use of artificial intelligence, including but not limited to services, models, or other software applications provided by xAI or

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[2] Kate Conger *et al.*, *Musk Allies Discuss Deploying A.I. to Find Budget Savings*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/technology/musk-allies-ai-government.html.

Grok, by or at the direction or request of persons affiliated with or representing DOGE or USDS to analyze agency records or data.

For purposes of this request, "persons affiliated with or representing DOGE or USDS" includes, but is not limited to, (1) any individual employed by or volunteering with DOGE or USDS, including as a Special Government Employee; (2) any Special Government Employee who began work with a federal agency on or after January 20, 2025; (3) any employee hired by a federal agency since Jan. 20, 2025 who previously worked at Tesla, Inc.; X Corp.; Space Exploration Technologies Corporation (SpaceX); The Boring Company (TBC); or X.AI Corp.; or (4) the following named individuals, who have been publicly reported[3] as being affiliated with or representing DOGE or USDS:

- Anthony Armstrong;
- Riccardo Biasini;
- Brian Bjelde;
- Akash Bobba;
- Edward Coristine;
- Steve Davis;
- Marko Elez;
- Luke Farritor;
- Nicole Hollander;
- Gavin Kilger;
- Gautier "Cole" Killian;
- Michael Kratsios;
- Tom Krause;
- Matt Luby;
- Nikhil Rajpal;
- Rachel Riley;
- Michael Russo;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[3] *See, e.g.,* Avi Asher-Schapiro *et al.*, *Elon Musk's Demolition Crew*, ProPublica (Feb. 6, 2025), https://projects.propublica.org/elon-musk-doge-tracker/; Daniel Barnes *et al.*, Trump administration agrees to restrict DOGE access to Treasury Department payment systems, NBC News (Feb. 5, 2025), https://www.nbcnews.com/politics/politics-news/trump-administration-agrees-restrict-doge-access-treasury-department-p-rcna190898; Revolving Door Project, *The People Reportedly Aiding Elon Musk and DOGE's Attack on the Federal Government* (Feb. 5, 2025), https://therevolvingdoorproject.org/reportedly-doge/; Tim Reid, *Exclusive: Musk aides lock workers out of OPM computer systems*, Reuters (Feb. 2, 2025), https://www.reuters.com/world/us/musk-aides-lock-government-workers-out-computer-systems-us-agency-sources-say-2025-01-31/; Vittoria Elliott, The Young, Inexperienced Engineers Aiding Elon Musk's Government Takeover, WIRED (Feb. 2, 2025), https://www.wired.com/story/elon-musk-government-young-engineers/; Natalie Alms, *Musk visits and asserts growing influence at GSA*, Nextgov/FCW (Jan. 30, 2025), https://www.nextgov.com/people/2025/01/musk-visits-and-asserts-growing-influence-gsa/402628.

- Amanda Scales;
- Ethan Shaotran;
- Thomas Shedd;
- Brad Smith; and
- Joanna Wischer.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the Agency's regulations. There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgent[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.   *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations. *See id.* Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[4]

The ACLU regularly publishes the *ACLU* magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to

---

[4] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

over 1 million donors. The ACLU also publishes regular updates and alerts via email to 4.8 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 6.6 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[5] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[6]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[5] *See, e.g.*, Press Release, ACLU, Government Releases New Court Opinions Highlighting Further Abuse of Warrantless FISA Surveillance Program (July 21, 2023); Press Release, ACLU, New Records Detail DHS Purchase and Use of Vast Quantities of Cell Phone Location Data (July 18, 2022), https://www.aclu.org/news/privacy-technology/new-records-detail-dhs-purchase-and-use-of-vast-quantities-of-cell-phone-location-data; Press Release, ACLU, ACLU Files FOIA Request Seeking Records Related to Detained Immigrants' Ability to Access Counsel (December 17, 2021), https://www.aclu.org/press-releases/aclu-files-foia-request-seeking-records-related-detained-immigrants-ability-access; Press Release, ACLU, ACLU Files FOIA Request to Uncover COVID Impact and Cost of Federal Executions (August 6, 2022), https://www.aclu.org/press-releases/aclu-files-foia-request-uncover-covid-impact-and-cost-federal-executions; Press Release, ACLU, New Records Detail How the FBI Pressures Police to Keep Use of Shady Phone Surveillance Technology a Secret (June 22, 2023), https://www.aclu.org/press-releases/new-records-detail-how-the-fbi-pressures-police-to-keep-use-of-shady-phone-surveillance-technology-a-secret; Press Release, ACLU, ACLU Announces Major Settlement in Family Separation Lawsuit (October 16, 2023), https://www.aclu.org/press-releases/aclu-announces-major-settlement-in-family-separation-lawsuit; Press Release, ACLU, In Win for Black Voters, Supreme Court Rejects Alabama's Appeal in Milligan and Reaffirms State Must Draw Second Opportunity District Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018),

[6] *See, e.g.*, Corin Faife, *Feds Are Tracking Phone Locations With Data Bought From Brokers*, The Verge (July 18, 2022), https://www.theverge.com/2022/7/18/23268592/feds-buying-location-data-brokers-aclu-foia-dhs; Jessica Votipka, ACLU Files Suit Against Grand Island School That Ended High School Newspaper, Journal Star (Mar. 31, 2023), https://journalstar.com/news/state-and-regional/crime-and-courts/aclu-files-suit-against-northwest-public-schools/article_4c514454-abc7-533f-b133-498c140cd030.html; Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill (Mar. 21, 2019), https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its*

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[7] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

*Behavioral Screen Program*, Intercept (Feb. 8, 2017), https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press (Jan. 18, 2017), https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post (Aug. 6, 2016), http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian (Mar. 17, 2016), https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR (Dec. 9, 2015), http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[7] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features. [8]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU website includes many features on information obtained through the FOIA. For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[9] The

---

[8] *See, e.g., ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray-foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[9] The Torture Database, ACLU, https://www.thetorturedatabase.org (last visited May 11, 2017). *See also, e.g., Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; ACLU, *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database; ACLU, *ACLU v. CIA - FOIA Case for Records Relating to Drone Killings*, ACLU Database, https://www.aclu.org/national-security/predator-drones-foia; ACLU, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process*, Free Future Blog (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-

ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. [10]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B.    *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, they pertain to whether federal agencies are violating federal laws, regulations, or policies by providing extraordinary access to sensitive information to individuals associated with or representing USDS. USDS activities are the subject of widespread and intense public controversy and media attention, with multiple new breaking news stories published daily, including about USDS access to sensitive information,[11] and USDS use of artificial intelligence tools to analyze federal data

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

details-zero-day-exploit-decisionmaking-process; ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights*, Free Future Blog (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; ACLU, *ACLU v. DOJ - FOIA Case for Records Relating to Killing of Three U.S. Citizens* (Dec. 30, 2016), https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; ACLU, *ACLU v. Dep't of Defense* (Aug.18, 2015), https://www.aclu.org/cases/aclu-v-department-defense; ACLU, *Mapping the FBI*, https://www.aclu.org/mappingthefbi, (last visited May 11, 2017); ACLU, *Bagram FOIA* (Apr. 18, 2013), https://www.aclu.org/cases/bagram-foia; ACLU, *CSRT FOIA*, https://www.aclu.org/national-security/csrt-foia, (last visited May 11, 2017); ACLU,*ACLU v. DOJ, Lawsuit to Enforce NSA Warrantless Surveillance FOIA* http://www.aclu.org/safefree/nsaspying/30022res20060207.html, (last visited May 11, 2017); ACLU, *Patriot FOIA¸* https://www.aclu.org/patriot-foia (last visited May 11, 2017); ACLU, *NSL Documents Released by DOD*, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088 (last visited May 11, 2017).

   [10] ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights*, Free Future Blog (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/ safefree/ olcmemos_2009_0305.pdf; *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

   [11] *See, e.g.*, Isaac Stanley-Becker, et al., *Musk's DOGE Agents Access Sensitive Personnel Data, Alarming Security Officials,* Wash. Post (Feb. 6, 2025), https://perma.cc/A7W5-7BBP; *Inside Musk's Aggressive Incursion Into the Federal Government*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html; Andrew Duehren, et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://perma.cc/R9RN-DEFE; Vittoria Elliott, et al., *A 25-Year-Old With Elon*

or records and make decisions.[12] USDS access to sensitive data has also been the subject of multiple lawsuits filed since January 20,[13] and members of Congress have urgently raised alarms.[14] The records sought relate to a matter of widespread and exceptional public and media interest in the access USDS has to sensitive information.

      In spite of the extraordinary public interest in the activities of USDS, USDS and federal agencies have released little information about what access to sensitive data has been granted to individuals associated with USDS, and with what protections, if any. Given the extraordinary interest and the lack of public information, there is an urgent need to inform the public about the access persons affiliated with or representing DOGE or USDS have to sensitive information held by government agencies and the use of AI tools to analyze large repositories of agency records. An extraordinary debate about unprecedented activity within federal agencies is happening now, and accurate public information about agency activities is urgently needed to inform that debate. Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E) and the Agency's implementing regulations.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## IV. Application for Waiver or Limitation of Fees

      The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C.

---

*Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025), https://perma.cc/LB74-HWC9; Lauren Irwin, *Senate Democrat: DOGE Has 'Burrowed Into the Private Information of Every American*,' The Hill (Feb. 6, 2025), https://perma.cc/NPS9-SLDK; *Musk's DOGE Granted Access to US Medicare and Medicaid Systems*, Reuters (Feb. 5, 2025), https://perma.cc/36N8-TPAB; Vittoria Elliott, *DOGE Will Allow Elon Musk to Surveil the US Government From the Inside*, WIRED (Jan. 24, 2025), https://www.wired.com/story/doge-elon-musk/.

[12] *See, e.g.*, Hannah Natanson et al., *Elon Musk's DOGE is Feeding Sensitive Federal Data into AI to Target Cuts*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/nation/2025/02/06/elon-musk-doge-ai-department-education/; Kate Conger et al., *Musk Allies Discuss Deploying A.I. to Find Budget Savings*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/technology/musk-allies-ai-government.html.

[13] *See, e.g.*, *Alliance for Retired Americans v. Bessent*, No. 25-313 (D.D.C. filed Feb. 3, 2025); Hurubie Meko, *State Attorneys General to Sue Over Musk's Access to Government Systems*, N.Y. Times (Feb. 6, 2025), https://www.nytimes.com/2025/02/06/nyregion/letitia-james-doge-suit.html.

[14] *See, e.g.*, Letter from Sen. Mark R. Warner et al. to Susie Wiles, White House Chief of Staff (Feb. 5, 2025), https://www.kelly.senate.gov/wp-content/uploads/2025/02/DOGE-Letter.pdf.

§ 552(a)(4)(A)(iii). The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, this Request concerns serious questions surrounding the extraordinary access to sensitive agency records by individuals associated with USDS. Little official information is publicly available regarding this topic, so the records sought are certain to contribute significantly to the public's understanding.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11

2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[15]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[16] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

\*       \*       \*

---

[15] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[16] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Nathan Freed Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
nwessler@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Sincerely,

Nathan Freed Wessler
Evelyn Danforth-Scott
Megan C. Keenan
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
nwessler@aclu.org

13

# Addendum: Recipient Agencies

**Department of Commerce**
Deputy Chief FOIA Officer
Office of Privacy and Open
Government
Room 52010
1401 Constitution Avenue, NW
Washington, D.C. 20230

**Census Bureau**
FOIA/PA Office
4600 Silver Hill Road
Washington, DC 20233-3700

**National Oceanic and Atmospheric Administration**
Mark Graff, FOIA Officer, Room
9719 - NOAA FOIA Office (SOU
10000)
1315 East-West Highway
Silver Spring, MD 20910

**Consumer Financial Protection Bureau**
CFPB, Attn: Chief FOIA Officer
1700 G Street, NW
Washington, DC 20552

**Department of Agriculture**
Alexis R. Graves
Departmental FOIA Officer
1400 Independence Avenue, SW
Room 4039-A
Washington, DC 20250-0706

**Food and Nutrition Service**
Kevin Lynch
1320 Braddock Place
Alexandria, VA 22314

**Department of Defense**
Defense Freedom of Information
Division
1155 Defense Pentagon
Washington, DC 20301-115

**Office of the Secretary and the Joint Staff**
OSD/JS FOIA Requester Service
Center, Office of Freedom of
Information
1155 Defense Pentagon
Washington, DC 20301-1155

**Department of Education**
FOIA Service Center, Office of
Secretary
400 Maryland Avenue, SW
Washington, DC 20202-4536

**Department of Health and Human Services**
Freedom of Information Act Office
Hubert H. Humphrey Building, Room
729H
200 Independence Avenue, SW
Washington, D.C. 20201

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Administration for Children and Families**
Freedom of Information Act Office
Mary E. Switzer Building, Room 4004
330 C Street, S.W.
Washington, DC 20201

**Centers for Disease Control and Prevention**
Roger Andoh, FOIA Officer, MS-D54
1600 Clifton Road, N.E.
Atlanta, GA 30333

**National Institutes of Health**
NIH FOIA Office, Building 31, Room 5B35
31 Center Drive, MSC 2107
Bethesda, MD 20892-2107

**Substance Abuse and Mental Health Services Administration**
FOIA Office,
5600 Fishers Lane, 18th Foor
Rockville, MD 20857

**Federal Emergency Management Agency**
Federal Emergency Management Agency, FOIA Officer,
500 C Street, SW, Room 840
Washington, DC 20472

**Department of Housing and Urban Development**
Chief, Room 10139
451 7th Street, SW
Washington, DC 20410-3000

**Center for Medicare and Medicaid Services**
Joseph Tripline, FOIA Officer,
Central Building Room C5-11-06
7500 Security Boulevard
Baltimore, MD 21244

**Food and Drug Administration**
FDA Division of Freedom of Information, Office of the Executive Secretariat, OC
5630 Fishers Lane, Room 1035
Rockville, MD 20857

**Office of the Secretary – Program Support Center**
Freedom of Information Act Office
Hubert H. Humphrey Building, Room 729H
200 Independence Avenue, SW
Washington, D.C. 20201

**Department of Homeland Security**
Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-065

**U.S. Citizenship and Immigration Services**
U.S. Citizenship & Immigration Services, National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010

**Bureau of Indian Affairs**
Justin Davis
MS-4660
1849 C Street, NW Washington, DC 20240

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

15

**National Park Service**
Nicholas Banco
1849 C Street, Room 2229
Washington, DC 20240

**Federal Bureau of Investigations**
Michael G. Seidel, Section Chief,
Record/Information Dissemination
Section
200 Constitution Drive
Winchester, VA 22602

**Department of Labor**
Office of the Solicitor
Division of Management and
Administrative Legal Services
200 Constitution Ave NW
Room N-2420
Washington, DC 20210

**Occupational Safety and Health
Administration**
Christopher Durso, FOIA Officer,
Room N3647
200 Constitution Avenue, NW
Washington, DC 20210

**U.S. Agency for International
Development**
1300 Pennsylvania Avenue, N.W.
USAID Annex, M/MS/IRD, Room
2.4.0A
Washington, DC 20523-2701

**Equal Employment Opportunity
Commission**
Michael L. Heise, Assistant Legal
Counsel, Equal Employment
Opportunity Commission, Office of
Legal Counsel, FOIA Programs, 131
M Street, N.E., Suite 5NW22B,
Washington, D.C. 20507

**Department of Justice**
FOIA/PA Mail Referral Unit, Justice
Management Division, Room 115,
LOC Building, Washington, D.C.
20530-0001

**Executive Office for US Attorneys**
Kevin Krebs, Assistant Director,
FOIA/Privacy Unit
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

**Mine Safety and Health
Administration**
Lanesia Washington, FOIA Officer,
Room 5W231
12th Street South
Arlington, VA 22202

**Department of State**
U.S. Department of State
Information Access Liaison Office,
A/SKS/IAP/IAL
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000

**Department of Veterans Affairs**
Department of Veterans Affairs
Freedom of Information Act Services
(005R1C)
811 Vermont Avenue, NW
Washington, DC 20420

**General Services Administration**
FOIA Contact, FOIA Requester
Service Center (LG)
1800 F. Street, NW
Washington, DC 20405

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Office of Management and Budget**
Tim Nusraty, FOIA Officer
725 17th Street NW, Room 9272
Washington, DC 20503

**Office of Personnel Management**
U.S. Office of Personnel
Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900

**Social Security Administration**
Social Security Administration
Office of Privacy and Disclosure
G-401 WHR
6401 Security Boulevard
Baltimore, Maryland 21235

**Department of the Treasury**
FOIA/PA Request
FOIA and Transparency
Department of the Treasury
Washington, D.C. 20220

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Bureau of the Fiscal Service**
FOIA Disclosure Office/Room 508B
3201 Pennsy Drive, Building E.
Landover, MD 20785

**Internal Revenue Service**
Internal Revenue Service, GLDS
Support Services Stop 211
P.O. Box 621506
Atlanta, GA 30362-3006

17

Exhibit B



# SOCIAL SECURITY

Refer to:
S9H: 2025-FOIA-00956

February 13, 2025

Ms. Sophie Feng
Mr. Nathan Freed Wessler
American Civil Liberties Union (ACLU)
125 Broad Street, 18th Floor
New York, NY  10004
sfeng@aclu.org

Dear Ms. Feng and Mr. Wessler:

I am responding to your requests for expedited processing and a fee waiver concerning your February 7, 2025 Freedom of Information Act (FOIA) request to the Social Security Administration (SSA), wherein you request the following records for the period beginning at noon Eastern Standard Time on January 20, 2025:

1. Any request by persons affiliated with or representing the Department of Government Efficiency (DOGE), also known as the United States DOGE Service (USDS) for access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records (including records of federal employees, contractors, and applicants), financial data, health data, or other sensitive data, and any response to such request;

2. Any decision, analysis or discussion about whether access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records, financial data, health data, or other sensitive data by persons affiliated with or representing DOGE or USDS is prohibited or constrained by statute, regulation, or rule. This includes but is not limited to any discussion of protections provided by the Privacy Act; the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule; the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act; taxpayer privacy laws including 26 U.S.C § 6103; the Family Educational Rights and Privacy Act (FERPA); and census record privacy laws including 13 U.S.C. §§ 9 & 214; and

3. Any proposed or actual use of artificial intelligence, including but not limited to services, models, or other software applications provided by xAI or Grok, by or at the direction or request of persons affiliated with or representing DOGE or USDS to analyze agency records or data.

You further state:

Page 2 – Ms. Feng and Mr. Wessler

For purposes of this request, "persons affiliated with or representing DOGE or USDS" includes, but is not limited to, (1) any individual employed by or volunteering with DOGE or USDS, including as a Special Government Employee; (2) any Special Government Employee who began work with a federal agency on or after January 20, 2025; (3) any employee hired by a federal agency since Jan. 20, 2025 who previously worked at Tesla, Inc.; X Corp.; Space Exploration Technologies Corporation (SpaceX); The Boring Company (TBC); or X.AI Corp.; or (4) the following named individuals, who have been publicly reported as being affiliated with or representing DOGE or USDS:

- Anthony Armstrong
- Riccardo Biasini
- Brian Bjelde
- Akash Bobba
- Edward Coristine
- Steve Davis
- Marko Elez
- Luke Farritor
- Nicole Hollander
- Gavin Kilger
- Gautier "Cole" Killian
- Michael Kratsios
- Tom Krause
- Matt Luby
- Nikhil Rajpal
- Rachel Riley
- Michael Russo
- Amanda Scales
- Ethan Shaotran
- Thomas Shedd
- Brad Smith
- Joanna Wischer

We provide expedited processing in three instances only:

- when there is an imminent threat to the life or safety of a person;
- when the requester is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities; or
- When the requester can show, in detail and to our satisfaction, that a prompt response is needed because the requester may be denied a legal right, benefit, or remedy without the requested information, and that it cannot be obtained elsewhere in a reasonable amount of time.

We are denying your request for expedited processing since it does not fall into any of these categories. We will process your request normally.

I reviewed your request for a fee waiver and I have decided not to waive or reduce the fee. We may waive or reduce the fee under our regulation at 20 C.F.R. § 402.85 if we find that waiver is in the public interest. We make this determination if we find that disclosure of the information meets both tests below:

- it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
- it is not primarily in the requester's commercial interest.

Our regulation (20 C.F.R. § 402.85(b)) lists factors we consider in analyzing whether disclosure is in the public interest. These factors include:

Page 3 – Ms. Feng and Mr. Wessler

- how the records pertain to the Federal government's operations or activities,
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public, and
- whether the contribution to public understanding would be significant.

Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors. Accordingly, applying the standards listed above, I cannot waive the fee.

We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act (20 C.F.R. § 402.80), *regardless* of the fee provisions in FOIA. We determined that your request is not directly related to the administration of the Act. Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.80).

We will send further correspondence when we determine what fees, if any, apply to your request.

Please note that this response is limited to the determination on your fee waiver and expedited processing requests; our office is still assessing your request as phrased and will provide subsequent correspondence on that determination.

If you have questions or would like further assistance with your request, you may contact our FOIA Public Liaison by email at FOIA.Public.Liaison@ssa.gov; by phone at 410-965-1727, by choosing Option 2; or facsimile at 833-795-0132.

You may also contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration for dispute resolution services. OGIS is an entity outside of the Social Security Administration that offers mediation services to resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road – OGIS, College Park, MD 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

If you disagree with this decision, you may file a written appeal with the Executive Director for the Office of Privacy and Disclosure, Social Security Administration, G-401 WHR, 6401 Security Boulevard, Baltimore, MD 21235. Your appeal must be postmarked or electronically transmitted to FOIA.Public.Liaison@ssa.gov within 90 days of the date of our response to your initial request. Please mark the envelope or subject line with "Freedom of Information Appeal."

Page 4 – Ms. Feng and Mr. Wessler

Thank you for your requests.

Sincerely,

Michelle L. Christ

Michelle L. Christ
Freedom of Information Officer