UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,

          Plaintiff,

     v.

UNITED STATES SOCIAL SECURITY
ADMINISTRATION, et al.,

          Defendants.

Civil Action No. 25-1217 (CRC)

**DEFENDANT SOCIAL SECURITY ADMINISTRATION'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Background ..................................................................................................................... 2

    I.      Freedom of Information Act ............................................................... 2

    II.    Plaintiff's FOIA Requests ................................................................... 3

    III.   The *American Federation* Litigation .................................................. 5

Legal Standards .............................................................................................................. 7

Argument ........................................................................................................................ 9

    I.      Preliminary Injunctions are Generally Inappropriate in FOIA Cases ..................... 9

    II.    Plaintiff Fails to Show It is Entitled to a Preliminary Injunction Here ................. 10

           A.     Plaintiff Fails to Show a Reasonable Likelihood of Success on the Merits ............................................................................. 10

           B.     Plaintiff Fails to Show an Irreparable Injury ............................................ 21

           C.     The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction ............................................................ 25

    III.   Plaintiff Should Be Ordered to Post Security in Connection with Any Injunctive Relief. ................................................................................. 28

Conclusion .................................................................................................................... 29

# TABLE OF AUTHORITIES

*ACLU v. Dep't of Homeland Sec.*,
  Civ. A. No. 20-10083 (PGG), 2021 WL 5449733 (S.D.N.Y. Nov. 19, 2021) ...................... 20

*Al-Fayed v. CIA*,
  254 F.3d 300 (D.C. Cir. 2001) ........................................................................... 13

*Al-Fayed v. CIA*,
  Civ. A. No. 00-2092, 2000 WL 34342564 (D.D.C. Sept. 20, 2000) ...................................... 10

*Allied Progress v. Consumer Fin. Prot. Bureau*,
  Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) .............. 7-8, 9-10, 26

*Am. Fed. of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*,
  Civ. A. No. 25-0596, 2025 WL 1167906 (D. Md. Apr. 22, 2025) ......................................... 17

*Am. Civil Liberties Union of N. Cal. v. Dep't of Just.*,
  Civ. A. No. 04-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2025) ................................ 11, 12

*Am. Civil Liberties Union v. Dep't of Just.*,
  321 F. Supp. 2d 24 (D.D.C. 2004) ....................................................................... 15

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
  897 F.3d 314 (D.C. Cir. 2018) ............................................................................ 7

*Baker v. Consumer Fin. Prot. Bureau*,
  Civ. A. No. 18-2403 (CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ...................... 26, 28

*Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.*,
  498 F. Supp. 3d 87 (D.D.C. 2020) .................................................................. 15, 17

*Ctr. for Pub. Integrity v. Dep't of Def.*,
  411 F. Supp. 3d 5–13 (D.D.C. 2019) .................................................................... 22

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 8

*Cheeseman v. Dep't of Def.*,
  Civ. A. No. 22-1743 (TJK), 2023 WL 4350031 (D.D.C. May 9, 2023) ................................ 8

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) ............................................................................ 9

*Cobell v. Norton*,
  391 F.3d 251 (D.C. Cir. 2004) ............................................................................ 7

*Daily Caller v. Dep't of State*,
  152 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................... 27

*Dallas Safari Club v. Bernhardt*,
    453 F. Supp. 3d 391 (D.D.C. 2020) ......................................................................... 8

*Democracy Forward Found. v. Off. of Mgmt. & Budget*,
    Civ. A. No. 25-0858 (SLS), 2025 WL 1078778 (D.D.C. Apr. 9, 2025) .......... 9, 13, 15, 23, 26

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ................................................................................. 28

*Dunlap v. Presidential Advisory Commission on Election Integrity*,
    286 F. Supp. 3d 96 (D.D.C. 2017) ........................................................................ 22

*Elec. Privacy Info. Ctr. v. Dep't of Def.*,
    355 F. Supp. 2d 98 (D.D.C. 2004) .......................................................................... 3

*Elec. Privacy Info. Ctr. v. Dep't of Just.*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ................................................................... 9, 25, 26

*Elec. Privacy Info. Ctr. v. Dep't of Just*,
    416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................ 23

*Food Mktg. Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019) ................................................................................. 10, 27, 28

*Friends of Animals v. Bureau of Land Mgmt.*,
    232 F.Supp.3d 53–60 (D.D.C. 2017) ........................................................................ 7

*Harrington v. FDA*,
    581 F. Supp. 3d 145 (D.D.C. 2022) ....................................................................... 13

*Heritage Found. v. Dep't of State*,
    Civ. A. No. 24-2862 (TJK), 2024 WL 4607501 (D.D.C. Oct. 29, 2024) ......................... 9, 24

*Heritage Found. v. EPA*,
    Civ. A. No. 23-0748 (JEB), 2023 WL 2954418 (D.D.C. Apr. 14, 2023) ........... 14, 22, 24, 26

*Landmark Legal Foundation v. EPA*,
    910 F. Supp. 2d 270 (D.D.C 2012) ........................................................................ 12

*Long v. Dep't of Homeland Sec.*,
    436 F. Supp. 2d 38 (D.D.C. 2006) ........................................................................ 10

*Munaf v. Green*,
    553 U.S. 674 (2008) ............................................................................................. 7

*Nat'l Conf. on Ministry to the Armed Forces v. James*,
    278 F. Supp. 2d 37 (D.D.C. 2003) ........................................................................... 9

*Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enf't*,
    236 F. Supp. 3d 910 (S.D.N.Y. 2017) ..................................................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................ 7

*Protect Democracy Proj. v. Dep't of Just.*,
    498 F. Supp. 3d 132 (D.D.C. 2020) .................................................... 15, 24

*Open Am. v. Watergate Special Prosecution Force*,
    547 F.2d 605 (D.C. Cir. 1976) ........................................................... 2, 21

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
    48 F. Supp. 3d 87 (D.D.C. 2014) ........................................................ 8

*Protect Democracy Proj. v. Dep't of Def.*,
    263 F. Supp. 3d 293 (D.D.C. 2017) .................................................... 26-28

*Sherley v. Sebelius*,
    689 F.3d 776–82 (D.C. Cir. 2012) ...................................................... 8

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390, 395 (1981) .................................................................... 8

*CREW v. U.S. DOGE Serv.*,
    Civ. A. No. 25-0511 (CRC), 2025 WL 752367 (D.D.C. Mar. 10, 2025) ....... 18, 21, 22, 23, 24

*Wadelton v. Dep't of State*,
    941 F. Supp. 2d 120 (D.D.C. 2013) .................................................... 3

**Statutes**

5 U.S.C. § 552 ............................................................................................ 2, 3, 18, 27

42 U.S.C. 1306 .......................................................................................... 3, 19

**Regulations**

20 C.F.R. § 402.60 .................................................................................... 2, 5, 18, 19, 21

20 C.F.R. § 402.65 .................................................................................... 1, 2, 3, 4, 5, 11, 18

20 C.F.R. § 402.70 .................................................................................... 3, 19

20 C.F.R. § 402.80 .................................................................................... 3, 19

20 C.F.R. § 402.90 .................................................................................... 3, 19, 20

89 Fed. Reg. 102,704 (Dec. 18, 2024) .................................................... 18-19

**Legislative History**

S. Rep. No. 140-272, 1996 WL 262861 .................................................. 19

Plaintiff American Civil Liberties Union ("Plaintiff") brought this Freedom of Information Act ("FOIA") case against Defendants Social Security Administration ("Defendant" or the "Administration") and the Department of Veterans Affairs. Plaintiff has moved this Court to issue a mandatory preliminary injunction against Defendant, requiring Defendant to grant expedited processing for Plaintiff's FOIA request, "fully process and produce all non-exempt records . . . on an expedited basis," and process records "at a rate of no less than 1,000 pages per month." Proposed Order, ECF No. 16-9. As argued more fully below and supported by the declaration of Sarah Reagan ("Reagan Decl."), the Court should deny Plaintiff's motion for a preliminary injunction because Plaintiff fails to meet the stringent requirements for a mandatory injunction. Indeed, each factor of the injunction analysis does not favor Plaintiff.

With respect to likelihood of success on the merits, Plaintiff has failed to show that its request meets the standard for "compelling need" set forth at 20 C.F.R. § 402.65(a). Most importantly, Plaintiff fails to show that the requested records here will become stale. Additionally, as a self-described "public interest law firm," it is not "primarily engaged in disseminating information." Similarly, Plaintiff fails to show irreparable harm because Plaintiff fails to provide even an approximate date by which these records will become stale. Moreover, a significant portion of the requested information has already been made available as a result of related litigation. Finally, the balance of equities tilts away from Plaintiff because Plaintiff has shown no need to jump ahead of the numerous other requests in the Administration's FOIA queues, including some of the 60 other Untied States DOGE Service ("DOGE")-related FOIA requests submitted to the Administration.

# BACKGROUND

## I.    Freedom of Information Act

Defendant ordinarily processes FOIA requests on a first-in, first-out basis. *See* 20 C.F.R. § 402.60(c) ("Unless granted expedited processing, we process FOIA requests in each track according to a first-in, first-out basis."); *accord Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (to ensure fairness amongst requesters, agencies should generally "assign[] all requests on a first-in, first-out basis," and courts should not enable plaintiffs to "gain[] access to Government records ahead of prior applicants for information" unless "a genuine need and reason for urgency" is shown by plaintiffs). In 1996, Congress amended FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Amendments of 1996 (EFOIA), Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051–52 (codified at 5 U.S.C. § 552(a)(6)(E)).

Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency," 5 U.S.C. § 552(a)(6)(E)(i)(II). Defendant's regulations provide for expedited processing of FOIA requests:

(1) When there is an imminent threat to the life or safety of a person;

(2) When the requester is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities; or

(3) When the requester can show, in detail and to our satisfaction, that a prompt response is needed because the requester may be denied a legal right, benefit, or remedy without the requested information, and that it cannot be obtained elsewhere in a reasonable amount of time.

20 C.F.R. § 402.65(a).

Expedition, when granted, entitles requesters to move ahead of requests filed previously by other persons but behind other requests previously granted expedited processing. *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 104 (D.D.C. 2004). The FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition," 5 U.S.C. § 552(a)(6)(E)(iii), but sets forth no specific timetables for processing any particular request as to which expedition is granted. *See also* 20 C.F.R. § 402.65(b) ("Requests granted expedited processing will be given priority and processed as soon as practicable."). "The requestor bears the burden of proof" with respect to expedition. *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013).

With respect to FOIA requests before the Social Security Administration, fees are assessed differently because "Section 1106(c) of the Social Security Act (42 U.S.C. 1306(c)) allows the agency to charge for FOIA requests that are not directly related to SSA's administration of the Social Security Act." 20 C.F.R. § 402.70(a)(1); *accord* 20 C.F.R. § 402.80 ("Section 1106(c) of the Social Security Act permits the agency to charge the full cost to process requests for information for purposes not directly related to the administration of program(s) under the Social Security Act. This may be done notwithstanding the fee provisions in FOIA, the Privacy Act, or any other provision of law."). Unlike the FOIA, Section 1106 does not contain fee limitations based on a requester's status or the stated purpose for the requested records. Thus, even where a FOIA requester might otherwise be entitled to have fees waived pursuant to the fee provisions in FOIA, under Section 1106, the requester may have to agree to pay an estimated fee before processing of a FOIA before the Administration begins. *See* 20 C.F.R. § 402.90(b).

## II.    <u>Plaintiff's FOIA Requests</u>

On February 7, 2025, Plaintiff submitted a Request to Defendant and other government agencies, requesting "[a]ny request by persons affiliated with or representing DOGE . . . for access

to any . . . system of records"; (2) "[a]ny decision, analysis or discussion about whether access to any . . . system of records . . . by persons affiliated with or representing DOGE . . . is prohibited or constrained by statute, regulation or rule"; and (3) "[a]ny proposed or actual use of artificial intelligence . . . by or at the direction or request of persons affiliated with or representing DOGE . . . to analyze agency records[.]" Pl.'s Mot. Ex. A, ECF No. 16-3 at 3–4. As part of the request, Plaintiff requested expedited processing. Plaintiff argued that it was "primarily engaged in disseminating information" because it sends a magazine to donors, sends email alerts to subscribers, issues press releases, and maintains a blog and website. Pl.'s Mot. Ex. A at 5–9, ECF No. 16-3. Plaintiff further argued that the "records are urgently needed to inform the public about actual or alleged government activity" because of the "urgent need to inform the public about the access persons affiliated with or representing DOGE or USDS have to sensitive information held by government agencies." Pl.'s Mot. Ex. A, ECF No. 16-3 at 7–11.

On February 13, 2025, Defendant denied Plaintiff's request for expedited processing because Plaintiff's request did not fall within any of the three categories comprising "compelling need" found at 20 C.F.R. § 402.65(a). Pl.'s Mot. Ex. B at 3, ECF No. 16-4. Having denied Plaintiff's request for expedited processing, Defendant placed Plaintiff's request in its regular processing queue to be handled in the order in which it was received. Pl.'s Mot. Ex. B at 3, ECF No. 16-4 ("We will process your request normally.").

On March 14, 2025, Plaintiff appealed the determination that expedited processing was not required for the request. *See* Pl.'s Mot. Ex. C, ECF No. 16-5. Citing to the request, Plaintiff argued that it was "primarily engaged in disseminating information." *Id.* at 2. Plaintiff further argued that there was "an urgency to inform the public about actual or alleged government activities"

> because the public lacks accurate information about the extent of USDS access to federal data systems, including in SSA, members of the public, lawmakers, and

courts face barriers to ensuring compliance with critical privacy laws and regulations, meaning the vulnerabilities to sensitive and confidential information may continue unabated until accurate information about USDS activities is released.

Pl.'s Mot. Ex. C at 8, ECF No. 16-5.

On April 21, 2025, Plaintiff filed its complaint in this case, alleging that Defendant violated the FOIA by denying Plaintiff's request for expedited processing and Plaintiff's request for a fee waiver by failing to search for records and by failing to make records available "promptly." Compl. ¶¶ 53–57. (Plaintiff also brought claims against the Department of Veterans Affairs that are not relevant to this motion. *See id.* ¶¶ 53–55, 58–59; *see also* Pl.'s Mot. at 10 (distinguishing between Defendant and the Department of Veterans Affairs)).

On May 7, 2025, Plaintiff filed the instant motion. *See* Pl.'s Mot., ECF No. 16.

As of this filing, Plaintiff's request to Defendant sits at number 411 out of a total of approximately 769 pending FOIA requests. *See* Reagan Decl. ¶¶ 6, 14. The Office of Privacy and Disclosure recently lost three experienced FOIA processors, leaving only seven FOIA processors who can process complex FOIA requests such as this one. *See* Reagan Decl. ¶ 8; 20 C.F.R. § 402.60(c)(2) (defining "complex" requests). While the Office of Privacy and Disclosure has also added three people to replace those three experienced processors, the new staff still need training before they could handle complex requests such as this. Reagan Decl. ¶ 8. Those individuals are responsible for processing FOIA requests, whether they are in litigation or not. *Id.*

## III.    The *American Federation* Litigation

On February 21, 2025, other persons, including the American Federation of State, County and Municipal Employees, filed suit against Defendant, Defendant's Acting Commissioner, the U.S. DOGE Service (the "Service"), and the U.S. DOGE Service Temporary Organization, arguing, among other things, that the Administration and the Acting Commissioner violated the

Privacy Act and the Administrative Procedure Act. *See* Compl., *Am. Fed. State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, Civ. A. No. 25-0596 (D. Md. Feb. 21, 2025), ECF No. 1.

On March 20, 2025, the district court entered a temporary restraining order barring Defendant, the Acting Commissioner, and the then-acting chief information officer "from granting access to any SSA system of record . . . to the Department of Government Efficiency ('DOGE'); the United States DOGE Service; the United States DOGE Service Temporary Organization; members of the DOGE Team . . . ; Elon Musk; Amy Gleason; and/or any DOGE affiliate." Order, *Am. Fed.*, *supra* (D. Md. Mar. 20, 2025), ECF No. 48.

With the court's permission, Defendants subsequently filed the administrative record under seal. *See, e.g.*, Order, *Am. Fed.*, *supra* (D. Md. Apr. 2, 2025), ECF No. 88.

To aid in public understanding of the issues underlying the dispute, Defendant proactively placed in its FOIA reading room the entire 623-page administrative record (as redacted) and the numerous declarations made by Defendant's Acting Commissioner, Deputy Commissioner of Human Resources, and Chief Information Officer. *See* Reagan Decl. ¶ 18; *FOIA Reading Room*, Soc. Sec. Admin., https://www.ssa.gov/foia/readingroom.html (last visited May 16, 2025).

On April 17, 2025, the district court entered a preliminary injunction prohibiting, among other things, Defendant and its "agents and employees" and others from "granting access to any SSA system of record" to "the Department of Government Efficiency ('DOGE') . . . and/or any DOGE Affiliate(s)," and prohibiting DOGE Defendants and Affiliates from "installing any software on [Administration] devices," or "accessing, altering, or disclosing any [Administration] computer or software code." Order at 1–2, *Am. Fed.*, *supra* (D. Md. Apr. 17, 2025), ECF No. 147.

Defendants appealed the preliminary injunction. *See* Notice of Appeal, *Am. Fed.*, *supra* (D. Md. Apr. 17, 2025), ECF No. 148. The Fourth Circuit declined to stay the injunction, which

remains in effect. *See* Order, *Am. Fed. of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin*, No. 25-1411 (4th Cir. Apr. 30, 2025), Doc. No. 20.

On May 2, 2025, the *American Federation* defendants filed a motion for a stay before the Supreme Court. *See* Application, *Soc. Sec. Admin. v. Am. Fed. of State, Cnty. & Mun. Emps.*, No. 24A1063 (U.S. May 2, 2025). The stay motion remains pending as of this filing. *See* https://www. supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24a1063.html.

**LEGAL STANDARDS**

Preliminary injunctive relief "is 'an extraordinary remedy never awarded as of right.'" *Friends of Animals v. Bureau of Land Mgmt.*, 232 F.Supp.3d 53, 59–60 (D.D.C. 2017) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, (2008)); *see Munaf v. Green*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an 'extraordinary and drastic remedy.'"). It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

To obtain a preliminary injunction, "[t]he moving party must make a 'clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'" *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)). The final two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although the D.C. Circuit has not yet definitively decided whether *Winter* abrogates the "sliding scale" approach for assessing these four factors previously applied in this Circuit, "[s]everal judges" on the Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Allied Progress v. Consumer Fin. Prot. Bureau*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263,

at *2 (D.D.C. May 4, 2017) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)). The D.C. Circuit has also emphasized that a showing of irreparable harm is an "independent prerequisite" for a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014).

By default, a preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)); *see also Univ. of Tex.*, 451 U.S. at 397 ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."). Thus, "[c]ourts in this Circuit have required the party seeking such a mandatory injunction to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020) (quoting *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016)). Moreover, as discussed in more detail below, "[p]reliminary injunctions are ordinarily not awarded in FOIA cases." *Cheeseman v. Dep't of Def.*, Civ. A. No. 22-1743 (TJK), 2023 WL 4350031, at *2 (D.D.C. May 9, 2023) (quoting *Ctr. for Pub. Integrity v. Dep't of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019)). Here, Plaintiff seeks to obtain its ultimate relief at an impracticable pace and therefore must make a heightened showing.

**ARGUMENT**

**I.    Preliminary Injunctions are Generally Inappropriate in FOIA Cases**

Even before considering the traditional four-factor test, the Court would be well within its discretion to deny Plaintiff's motion on the ground that preliminary injunctive relief is generally inappropriate in the context of a FOIA action.

The traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted). FOIA injunctions, as Plaintiff seeks here, depart from this purpose. Requiring agencies to produce documents within a specified period of time, as Plaintiff requests, "alter[s], rather than preserve[s], the status quo by commanding [a] positive act." *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted). Such mandatory injunctions are generally disfavored, and should only be issued in truly extraordinary circumstances, which FOIA suits rarely if ever pose. *See, e.g.*, *id.* (mandatory injunctions require "the moving party [to] meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction") (citations omitted)*; see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (quotation omitted)).

For all these reasons, "[p]reliminary injunctions in the FOIA context are extraordinarily rare," *Democracy Forward Found. v. Off. of Mgmt. & Budget*, Civ. A. No. 25-0858 (SLS), 2025 WL 1078778, at *1 (D.D.C. Apr. 9, 2025); *Heritage Found. v. Dep't of State*, Civ. A. No. 24-2862 (TJK), 2024 WL 4607501, at *4 (D.D.C. Oct. 29, 2024) ("[I]t is rare that any preliminary relief is appropriate in a FOIA case[.]"), and courts in this district routinely deny requests for preliminary injunctions in FOIA cases, *see, e.g.*, *Allied Progress*, 2017 WL 1750263, at *1 (denying request

for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm); *Al-Fayed v. CIA*, Civ. A. No. 00-2092, 2000 WL 34342564, *6 (D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests), *aff'd*, 254 F.3d 300 (D.C. Cir. 2001); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (given the "broad scope of plaintiff's requests," denying motion for preliminary injunction to compel processing within twenty days, and explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"). Appropriately handling complex FOIA requests like Plaintiff's takes time, and Defendant has a public obligation to ensure that exempt information is protected if reasonably foreseeable harm would result from its release, as the Supreme Court has emphasized. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) ("FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.' So, just as we cannot properly expand Exemption 4 beyond what its terms permit, we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." (citations and emphases omitted)).

## II.    <u>Plaintiff Fails to Show It is Entitled to a Preliminary Injunction Here</u>

### A.    **Plaintiff Fails to Show a Reasonable Likelihood of Success on the Merits**

Plaintiff seeks two separate forms of relief: expedited processing and a processing order of 1000 pages per month. Each is addressed in turn.

1. <u>Expedited Processing</u>

To show that Plaintiff is entitled to expedited processing, it must show that it fits one of the three prongs in 20 C.F.R. § 402.65(a):

(1) When there is an imminent threat to the life or safety of a person;

(2) When the requester is primarily engaged in disseminating information, and shows an urgency to inform the public about actual or alleged government activities; or

(3) When the requester can show, in detail and to our satisfaction, that a prompt response is needed because the requester may be denied a legal right, benefit, or remedy without the requested information, and that it cannot be obtained elsewhere in a reasonable amount of time.

20 C.F.R. § 402.65(a). Plaintiff has not asserted that the first or third prongs of the regulation apply. *See generally* Pl.'s Mot. Ex. A, ECF No. 16-3; Pl.'s Mot. Therefore, Plaintiff must show that it (i) "is primarily engaged in disseminating information," and (ii) that there is "an urgency to inform the public about actual or alleged government activities." 20 C.F.R. § 402.65(a)(2). Plaintiff has made neither showing.

First, ACLU has not proved that it "is primarily engaged in disseminating information." While ACLU has a "blog" and a "website" and publishes information it receives under FOIA, Pl.'s Mot. Ex. A, 6–9, it is clear that ACLU's primary activity is, as it describes itself, serving as the "largest public interest law firm." *How We Do It*, ACLU, https://www.aclu.org/about/aclu-history (last visited May 16, 2025). In light of the ACLU's own public self-depiction, ACLU's description of itself in this suit—not even mentioning legal activities in the Wessler Declaration ¶¶ 2–3 (ECF No. 16-2) and treating legal activities as purely incidental in the request (*see* Pl.'s Mot. Ex. A at 8)—strains credulity.

In *American Civil Liberties Union of Northern California v. Department of Justice*, Civ. A. No. 04-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2025), an American Civil Liberties Union

affiliate similarly "assert[ed] that it is an organization primarily engaged in disseminating information to the public, noting that it sends out a bi-monthly newsletter to 40,000 people, maintains a website, and issues right-to-know documents, press releases, brochures, and pamphlets on civil liberties." *Id.* at *8. But the court "agree[d] with defendants that while dissemination of information may be *a* main activity of ACLU-NC, there is no showing that it is *the* main activity." *Id.* at *14 (emphasis in original). Among other things, the defendants in that case argued that "the website of the national ACLU . . . indicate[s] that the primary activity of the organization is to litigate high-impact cases to defend and promote civil liberties" and that "the ACLU was 'dedicated to defending and expanding the civil liberties of all people,' and that it engages in activities to disseminate information '[i]n addition to the direct litigation for which the ACLU has been known over the past seven decades.'" *Id.* at *9.

Similarly, in *Landmark Legal Foundation v. EPA*, 910 F. Supp. 2d 270, 272–73, 275–76 (D.D.C 2012), the court determined that "a 'national public interest law firm'" was not primarily engaged in information dissemination, and emphasized that, following "Congressional and D.C. Circuit direction," district courts must be "cautious in deeming non-media organizations as persons primarily engaged in information dissemination." *See also Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 910, 816–17 (S.D.N.Y. 2017) (similar).

As noted above, just as in *American Civil Liberties Union of Northern California*, Plaintiff's website continues to emphasize its legal work. As of May 9, 2025, the main headline is "Defend the rights of all people nationwide: With immigrant rights, trans justice, reproductive freedom, and more at risk, we're in courts and communities across the country to protect everyone's rights — and we need you with us." ACLU, https://www.aclu.org (last visited May 16, 2025).

Plaintiff's history page describes "[t]he ACLU" as follows:

> The ACLU today is the nation's largest public interest law firm, with a 50-state network of staffed, autonomous affiliate offices. We appear before the United States Supreme Court more than any other organization except the U.S. Department of Justice. About 100 ACLU staff attorneys collaborate with about 2,000 volunteer attorneys in handling close to 2,000 cases annually.

"How We Do It," ACLU, https://www.aclu.org/about/aclu-history (last visited May 16, 2025). Thus, while Plaintiff may disseminate information to the public, it is primarily a law firm engaged in the practice of law.

More importantly, Plaintiff has failed to show there is "an urgency to inform the public about actual or alleged government activities" with respect to the processing of this FOIA request by the Administration. When evaluating whether there is an "urgency," "courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001). This is a "stringent test for obtaining special treatment," *Harrington v. FDA*, 581 F. Supp. 3d 145, 151 (D.D.C. 2022), and these factors show that "immense public importance" is not enough. *Democracy Forward*, 2025 WL 1078778, at *1. A plaintiff also must show "a sufficiently imminent event" as the basis for expedition. *Id.*

Applying the non-exclusive factors in turn, Plaintiff fails to show that it is likely to prevail. Defendant does not dispute the third factor: that Plaintiff's request "concerns federal government activity." But Plaintiff fails to show either the first or second factors applies here.

With respect to the first factor, "[c]ourts often look to objective markers like the volume of news articles and media reports to discern whether there is a current exigency." *Id.* at *7. Defendant does not dispute the volume of news stories Plaintiff cited regarding the Service and reporters' concerns about access to sensitive information generally. *See* Pl.'s Mot. at 14. But volume of news

stories alone cannot show an "exigency." Were it otherwise, any FOIA request touching on sports or popular entertainment would relate to an exigency. An "exigency" is "[a] state of urgency; a situation requiring immediate action." *Exigency*, Black's Law Dictionary (12th ed. 2024). Nor can Plaintiff point to news stories about the Service that do not relate to the Service's access to Administration systems of record. *See* Wessler Decl. ¶ 7 & n.1; *cf. Heritage Found. v. EPA*, Civ. A. No. 23-0748 (JEB), 2023 WL 2954418, at *3 (D.D.C. Apr. 14, 2023) ("[W]hile the general topic of the train derailment is a matter of current exigency, Plaintiffs have not shown that their specific requests within that topic are."). Further, the *American Federation* litigation shows there is no urgency here. As noted, the Administration is subject to a preliminary injunction prohibiting it from granting the Service, or Service affiliates, access to any Administration system of records that contains personally identifiable information. Further, the administrative record and associated declarations posted in the FOIA Reading Room[1] further provide a significant amount of information about the access the Administration's DOGE Team has had to Administration data.

Plaintiff's motion also fails because Plaintiff cannot show that "the consequences of delaying a response would compromise a significant recognized interest." A "plaintiff seeking to establish that a particular delay would compromise recognized interests must do more than gesture at the general decline in the documents' value over time. Instead, she may need to identify a specific end point at which the information's value drops off altogether — *i.e.*, the conclusion of a process such as a legislative vote, impeachment proceeding, national census, court case, or the like." *Heritage Found.*, 2023 WL 2954418, at *4.

---

[1] Located at https://www.ssa.gov/foia/resources/proactivedisclosure/2025/AR%20Pt.%201.pdf, https://www.ssa.gov/foia/resources/proactivedisclosure/2025/AR%20Pt.%202.pdf, and https://www.ssa.gov/foia/resources/proactivedisclosure/2025/AR%20Pt.%203.pdf.

"Courts have denied expedition by preliminary injunction when requestors have failed to allege a sufficiently imminent event." *Democracy Forward*, 2025 WL 1078778, at *8 (citing cases). It is Plaintiff's burden to "provide concrete evidence that the event is imminent." *Id.*

Plaintiff's own cases underscore this point and contrast starkly with the circumstances here. In *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29–31 (D.D.C. 2004) (cited at Pl.'s Mot. at 15), the information sought was tied to expiration of provisions of the Patriot Act. In *Protect Democracy Project v. Department of Justice* , 498 F. Supp. 3d 132, 140 (D.D.C. 2020) (cited at Pl.'s Mot. at 15–16), the request was "time-sensitive" because it sought to inform the public before Election Day, which was "less than a week" away. And the court in *Brennan Center for Justice at NYU School of Law v. Department of Commerce*, 498 F. Supp. 3d 87, 100 (D.D.C. 2020), concluded that it was "the rare case where after a date certain, the value of the information sought by the [requester] to inform the public about these matters would be materially lessened or lost" because the information related to a January 25, 2021 certification of the number of representatives to which each state was entitled.

Plaintiff seems to believe that any FOIA request that touches the Service is entitled expedition. For instance, in the request, Plaintiff points broadly to press interest and questions about the United States DOGE Service generally. Pl.'s Mot. Ex. A at 9–10. In its administrative appeal, Plaintiff asserted that there was urgency "because the public lacks accurate information about the extent of USDS access to federal data systems, including in [the Social Security Administration]." Pl.'s Mot. Ex. B at 8, ECF No. 16-5.

Critically, Plaintiff fails, in its motion, to show current urgency about the Service's access to Administration systems. It is no longer true that the "public lacks accurate information" about the Service's Access to Administration systems. The administrative record in the *American*

*Federation* case contains much of this information, including the onboarding agreements and training provided to the members of the Administration's DOGE Team, as well as records about specific access granted. For instance,

- AFSCME Case 000001–08 contains an authorization to detailees and Special Government employees among others to access specifically identified records;

- AFSCME Case 000009–18 and 000030–32 contains decisions on a death data improvement project submitted by the Administration's DOGE Team;

- AFSCME Case 000019–29 contains approvals granted in responses to requests for data access by members of the Administration's DOGE Team;

- AFSCME Case 000033–51 and 000080–86 contains agreements between the Department of Labor and the Social Security Administration with respect to the detailing of two Administration DOGE team members;

- AFSCME Case 000052–71 contains an agreement for a detailee from the National Aeronautics and Space Administration;

- AFSCME Case 000072–75 contains an agreement for a detailee from the Office Personnel Management;

- AFSCME Case 000076–86 contains an agreement for a detailee from the General Services Administration;

- AFSCME Case 000087–108 contains the Administration's agreement with the U.S. DOGE Service governing the detailing of staff from DOGE to the Administration;

- AFSCME Case 000529–45 contains several expert or consultant appointment request and certification forms.

- AFSCME Case 000546–55 contains Standard Form 50s reflecting the appointment of and the appointment affidavits of Administration DOGE Team members; and

- AFSCME Case 000558–605 and 000611–615 contains training acknowledgements completed by the Administration's DOGE Team members.

Additionally, the Administration has made publicly available in its FOIA reading room several declarations from the *American Federation* litigation that describe DOGE's access (or lack thereof) to Administration systems. In a March 24, 2025 declaration, the then-Acting Commissioner testified, among other things,

As of Monday, March 24, 2025, SSA revoked all SSA DOGE Team members' access to SSA systems containing personally identifiable information (PII) or systems of record, including the Enterprise Data Warehouse, Numident, Master Beneficiary Record, and Supplemental Security Record. See Order ¶ 1.a. The DOGE Defendants have never had access to SSA systems of record.

Dudek Decl. ¶ 4 (footnote omitted), *available at* https://www.ssa.gov/foia/resources/proactive disclosure/2025/Dudek%20Decl.%203.24.25.pdf. He further testified that "SSA has directed DOGE Team members and DOGE Affiliates to delete all nonanonymized PII in their possession or control, if any, to the extent obtained from prior access to an SSA system." *Id.* ¶ 7.

More recently, the then-Acting Commissioner testified about Administration policies in a declaration that made similar representations. *See* Dudek Decl., *Am. Fed.*, *supra* (D. Md. Apr. 23, 2025), ECF No. 155-1. This declaration outlined actions the Administration had taken to comply with the Temporary Restraining Order and subsequent Preliminary Injunction Order. *See id.*

Finally, the Court's order in *American Federation* represents an authoritative public explanation of current limits on members of the Administration DOGE Team. Among other things, Administration personnel cannot grant access to any Administration system of records containing personally identifying information to any Administration DOGE Team member. Order ¶ 1(a), *Am. Fed.*, *supra* (D. Md. Apr. 17, 2025). Administration DOGE Team members were required to "disgorge and delete all non-anonymized [personally identifying information] data in their possession or under their control" that they received from the Administration. *Id.* ¶ 1(b). The Administration DOGE Team can receive redacted or anonymized data after being provided "all training that is typically required of individuals granted access to [Administration] data systems." *Id.* ¶ 2; *see also Am. Fed. of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, Civ. A. No. 25-0596, 2025 WL 1167906, at *2 (D. Md. Apr. 22, 2025) (describing the injunction).

Plaintiff suggests that the fact that a minority of the other agencies granted expedited processing means that the Administration should do so here. *See* Pl.'s Mot. at 6–7 (noting that the

- 17 -

request was sent "to more than 40 federal government agencies" and that eleven agencies granted expedited processing). But Plaintiff provides no explanation for why Defendant should go along with the apparent minority view. In any event, as discussed at length above, Defendant is differently situated from other federal agencies due to the *American Federation* temporary restraining order and subsequent preliminary injunction. Thus, there is not a potential of ongoing access to personally identifying information here. *Cf. Citizens for Resp. & Ethics in Wash. ("CREW") v. U.S. DOGE Serv.*, Civ. A. No. 25-0511 (CRC), 2025 WL 752367, at *14 (D.D.C. Mar. 10, 2025) ("The USDS records sought are 'directly tied to [ ] current, ongoing' actions by USDS, which 'are of the highest national concern.'"). Plaintiff has failed to show that processing this FOIA request according to normal processing procedures would compromise the public's interest in timely information regarding the Service's access to Administration data.

  2.  1000 Pages Per Month

 If Plaintiff does not obtain a preliminary injunction with respect to expedited processing, then its demand for 1000 pages per month is premature. *See* 20 C.F.R. § 402.60(c). But even if Plaintiff obtains a preliminary injunction with respect to expedited processing, its request remains premature and Plaintiff fails to show a likelihood of success on the merits because Plaintiff provides no basis for its request of 1,000 pages per month.

 The FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition," 5 U.S.C. § 552(a)(6)(E)(iii), but sets forth no specific timetables for processing any particular request as to which expedition is granted. *See also* 20 C.F.R. § 402.65(b) ("Requests granted expedited processing will be given priority and processed as soon as practicable."). That is, if Plaintiff's request were expedited, it would be placed in the expedited queue. *See* 20 C.F.R. § 402.60 (identifying three tracks: "Simple," "Complex," and "Expedited processing"); Availability of Information and Records to the Public, 89 Fed. Reg.

102,704, 102,706 (Dec. 18, 2024). ("Section 402.60(c), clarifies that there are three multi-track types: 'FOIA requests are categorized simple, complex, or expedited.'"); *cf.* Electronic Freedom of Information Improvement Act of 1995, S. Rep. No. 104-272, at 17 (1996), *available at* 1996 WL 262861 ("The goal is not to get the request for expedited access processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur.").

First, because Plaintiff has failed to show that its request is required to be expedited, it has necessarily failed to show that it is entitled to preference ahead of the more than 400 pending requests received prior to this one. *See* Reagan Decl. ¶ 14.

Even when Plaintiff's request gets to the top of the queue, there are other prerequisites that the Administration would have to complete before any discussion about a production schedule becomes suitable. Unlike with respect to other agencies that are processing requests per the FOIA fee schedule, unless Plaintiff's fee waiver request is fully granted on appeal, Plaintiff would be required to certify that it is willing to pay the costs of processing before the Administration would begin the search for record(s). *See* 42 U.S.C. § 1306(c); 20 C.F.R. §§ 402.70(a)(1), 402.90; 20 C.F.R. § 402.80 ("Section 1106(c) of the Social Security Act permits the agency to charge the full cost to process requests for information for purposes not directly related to the administration of program(s) under the Social Security Act. This may be done notwithstanding the fee provisions in FOIA, the Privacy Act, or any other provision of law."). Defendant's Office of Privacy and Disclosure issues "a fee notice to the requester for the processing of their request for records that includes an estimated fee based on the time we estimate it will take to process the record(s) requested." 20 C.F.R. § 402.90(a). "The requester must [then] agree to pay the estimated fee provided within the fee notice and provide the agency with payment information within 30

calendar days from the date of our fee notice." 20 C.F.R. § 402.90(b). Once the requester has agreed to pay the estimated fee, the Administration would conduct the search and begin gathering potentially responsive records. Thus, it remains premature to discuss processing rates.

Even if it were appropriate to discuss processing rates, Plaintiff provides no basis for its assumption that "no less than 1,000 pages per month" represents the rate of production that is "as soon as practicable." Plaintiff does not explain how that makes sense given current Administration resources and FOIA demands, and the Administration would not be obligated to agree to such an unreasonable production schedule. *See* Reagan Decl. ¶ 16 (explaining the agency's processing capacity); *cf. ACLU v. Dep't of Homeland Sec.*, Civ. A. No. 20-10083 (PGG), 2021 WL 5449733, at *1 (S.D.N.Y. Nov. 19, 2021) ("Given the effect of the COVID-19 pandemic on staffing at the ICE FOIA Office and the rapid increase in the Office's workload, requiring ICE to process 1,000 pages of potentially responsive material per month is not practicable."). Indeed, Plaintiff gives no reason at all for that proposed number. *See* Pl.'s Mot. at 20. This is especially confusing because Plaintiff is apparently satisfied to receive 18 pages a month from another agency. *See id.* at 10.

More importantly, one thousand pages is out of line with other court-ordered production schedules. *See, e.g.*, *Proj. for Privacy & Surveillance Accountability, Inc. v. Office of Dir. of Nat'l Intel.*, Civ. A. No. 21-1217 (TSC) (D.D.C. Apr. 19, 2022), Min. Order (approving, over a plaintiff's objection, agency's processing rate of 100 pages per month); *Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec.*, Civ. A. No. 19-3544 (APM) (D.D.C. Feb. 1, 2022), Min. Order (declining to increase processing rate of 300 pages to 500 pages per month); *Ctr. for Reproductive Rights v. Dep't of State,* Civ. A. No. 18-2217 (DLF) (D.D.C. Apr. 3, 2019), Min. Order (denying a plaintiff's request for a 1,000 page per month processing rate; ordering a 300 page per month processing rate).

To the extent Plaintiff relies on the production schedule in this Court's *CREW* case, it ignores a key distinction on this issue (as well as others discussed herein). At the time the Court ordered the U.S. DOGE Service to process 1,000 pages per month, the Court noted that the Service "is apparently not processing any other requests" and thus it would not "impose much of a burden on the department to expediently process CREW's request." *CREW*, 2025 WL 752367, at *16.

As explained in the Declaration of Sarah Reagan, a rate of no more than 100 pages per month would be appropriate if the Court decided to set a production schedule. Reagan Decl. ¶ 16; *cf.* 20 C.F.R. § 402.60 ("FOIA requests are determined to be unreasonably burdensome when processing the FOIA request would significantly interfere with the ongoing operation of the agency's programs."). Even prior to recent restructuring efforts, the Office of Privacy and Disclosure FOIA staff consisted of only ten analysts, and they have since lost three of those experienced analysts. *See* Regan DECL ¶ 8. Further, the Office of Privacy and Disclosure has over 400 requests pending in the complex track ahead of this request. *See Open Am.*, 547 F.2d at 615 ("Congress intended to guarantee access to Government agency documents on an equal and fair basis"). Given current workload and staffing levels, processing 1,000 pages a month on this single FOIA request would be an undue burden on the Office of Privacy and Disclosure FOIA staff and would come at the expense of other requests in the queue.

**B.    Plaintiff Fails to Show an Irreparable Injury**

Even if Plaintiff could show a likelihood of success on the merits, it must also show an irreparable injury. *See CREW*, 2025 WL 752367, at *14 ("Because CREW seeks preliminary relief, the Court must also consider whether delay in processing its request on an expedited basis would cause irreparable harm.").

"The touchstone for the FOIA irreparable-harm analysis is thus whether a plaintiff can show a specific need for records in advance of an upcoming event that, once past, would leave the

information with little to no relevance." *Heritage Found.*, 2023 WL 2954418, at *5. Unable to

even suggest anything relevant to that "touchstone," Plaintiff offers its own, lax test in which any

matter "of national importance" appears to necessitate immediate disclosure. Pl.'s Mot at 16–18

("Irreparable harm continues with each day[.]").

Unsurprisingly, Plaintiff's own cases counsel in favor of the established irreparable injury

analysis that is applicable here. In *Center for Public Integrity v. Department of Defense*, 411 F.

Supp. 3d 5, 12–13 (D.D.C. 2019) (cited at Pl.'s Mot. at 16), Plaintiff needed the information before

"the impeachment proceedings conclude." *Dunlap v. Presidential Advisory Commission on*

*Election Integrity*, 286 F. Supp. 3d 96, 109–10 (D.D.C. 2017) (cited at Pl.'s Mot. at 16), concerned

mandamus under the Federal Advisory Committee Act—not the FOIA. In any event, the value of

the documents in *Dunlap* had a clear time limit. If Plaintiff received the documents after the

commission to which he was appointed concluded its business, he would be unable to participate

in the commission's work. *Cf. Dunlap*, 286 F. Supp. 3d 96 at 109–10 (explaining that the injunction

was necessary to ensure that plaintiff could participate fully on the committee).

In *CREW*, the Court seemingly concluded there was irreparable harm without a deadline

for four reasons, none of which is present here. First, the U.S. DOGE Service in that case was

engaged in "current, ongoing actions." *CREW*, 2025 WL 752367, at *14. Here, an injunction bars

the Administration DOGE Team from accessing personally identifying information, installing

software, or taking action with regard to Administration computer or software code. Order at 1–2,

*Am. Fed.*, *supra* (D. Md. Apr. 17, 2025). Second, based on recent events, the Court concluded that

the Service could take action on largescale plans quickly. *CREW*, 2025 WL 752367, at *15

("USDS appears able to do this in part because of its access to many agenc[ies'] IT systems, which

help the department carry out its objectives at warp speed."). Here, again, the injunction blocks

such action. Moreover, whether or not the Service or the Administration might ultimately perform an act during the pendency of the request does not create an irreparable harm. *See Democracy Forward*, 2025 WL 1078778, at *9 ("The Court is also not convinced that information about the [Reduction in Force] plans will become stale after the anticipated future widespread firings. . . . [O]n the current record, there is no reason to believe that this interest will evaporate."). Third, at the time of the *CREW* decision, little was known about the Service. *See CREW*, 2025 WL 752367, at *15 (asserting an interest in Service records because the administrator's name "was not even released until February 25" and because the Service did not "appear to have released much public information about its other personnel"). By contrast, here the Administration has not only made records public in the litigation as part of the Administrative Record and as part of declarations, but has proactively posted those court filings on the agency's FOIA Reading Room for easy public access via the agency's website. Finally, and most importantly, the Court expressed concern that without expedited FOIA processing, the requested information would never be released because the Service disputed that it was an agency subject to FOIA. *Id.* at *14 ("If the Court does not grant preliminary relief to CREW, records responsive to the USDS request will not be released anytime soon, if ever. As the government stated at oral argument, USDS is not currently processing CREW's request because it does not believe itself to be an agency."). Here, there is no dispute that the Administration will process Plaintiff's request. The only dispute is about timing.

*Electronic Privacy Information Center v. Department of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (cited at Pl.'s Mot. at 16), does adopt a capacious definition of irreparable injury requiring only that a plaintiff be at risk of not "obtaining in a timely fashion information vital to the current and ongoing debate." But subsequent cases have concluded that that analysis was mistaken. *See, e.g.*, *CREW*, 2025 WL 752367, at *9 ("[T]hat case largely relied on a 'presumption

of agency delay raised by failing to respond to an expedited request within twenty days,' which the D.C. Circuit has since called into question[.]" (citation omitted)); *Heritage Found.*, 2024 WL 4607501, at *13 ("[T]o the extent either decision suggests otherwise, *Heritage Foundation* and more recent cases confirm that '[t]he touchstone for the FOIA irreparable-harm analysis is . . . a specific need for records in advance of an upcoming event that, once past, would leave the information with little to no relevance.'").

ACLU also asserts that it "suffered great and actual harm" merely because it "frequently relies on information obtained through FOIA." Pl.'s Mot. at 16. Were that relevant, every repeat FOIA requester would have irreparable harm every time it was denied expedited processing. *See, e.g.*, *Heritage Found.*, 2023 WL 2954418, at *5 ("Every requester would always rather have her records sooner rather than later. Under Plaintiffs' logic, any requester who suffers even a one-day delay in any FOIA case could show irreparable harm. That cannot be the standard.").

Moreover, when assessing whether Plaintiff would suffer an irreparable injury, the Court should consider the injury caused by the marginal disclosure of additional information on a subject about which much is already known. For instance, in *Protect Democracy Project*, the Court found irreparable harm in part because it was "uncertain whether there is any information currently available to the public" about the subject of the request. *Prot. Democracy Proj.*, 498 F. Supp. 3d at 142–43. Similarly, in this Court's *CREW* opinion, the Court found irreparable harm because there did not appear to be any alternative way of obtaining the requested information. *CREW*, 2025 WL 752367, at *15 ("'Moreover, absent an expedited response to Plaintiff's FOIA request, it is not clear to the Court that the public' or Congress 'would otherwise have access to this relevant information.'"). Here, by contrast, as discussed above, the litigation record in *American*

*Federation*, publicly posted on the Administration's website, largely explains the Service's past and present access to Administration records.

Finally, the scope of any irreparable injury would be limited to the information that Plaintiff could actually obtain via the FOIA request. In *Electronic Privacy Information Center v. Department of Justice*, 15 F. Supp. 3d 32, 46 (D.D.C. 2014), the court noted that a "claim to be injured—much less 'irreparably' so—if the [National Security Division] withholds documents that that [Plaintiff] is not entitled to access in the first instance, and even full-throated protest regarding allegedly unreasonable processing delays does not alter that reality." Here, Plaintiff's request seeks, among other things, "[a]ny decision, analysis or discussion about whether access to any . . . system of records . . . by persons affiliated with or representing DOGE or USDS is prohibited or constrained by statute, regulation, or rule." To the extent that Plaintiff seeks "analysis or discussion" about possible legal concerns and not final "decision[s]," such documents would almost certainly fall within the heartland of Exemption 5 pursuant to the attorney-client privilege or the deliberative process privilege.

Moreover, Plaintiff fails to offer any argument whatsoever that it would suffer an irreparable injury related to the excessive processing rate that it has requested. In sum, for the foregoing reasons, Plaintiff has failed to show an irreparable injury from having its request processed according to the Administration's normal FOIA processing schedule.

## C. The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction

Along with alleged harm to Plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiff would be in the public interest or would harm nonlitigants: ""Congress' rationale for a narrow application is clear: Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing

procedure would unfairly disadvantage other requestors who do not qualify for its treatment." *Democracy Forward*, 2025 WL 1078778, at *1. Thus, when "issuing the requested injunction would just allow [plaintiffs] to jump over other FOIA requesters in line," "courts have on this basis found the balance of equities and public interest to weigh against plaintiffs." *Heritage Found.*, 2023 WL 2954418, at *6; *Baker v. Consumer Fin. Prot. Bureau*, Civ. A. No. 18-2403 (CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (a "preliminary injunction ordering the immediate processing and release of the requested records" "would harm the approximately 100 other requesters . . . in line ahead of Plaintiff and would erode the proper functioning of the FOIA system"). The same logic applies with equal force to Plaintiff's arbitrary demand for 1000 pages per month.

Plaintiff does not address this, merely asserting that the government would not be harmed by processing its request because Plaintiff sees that processing as a statutory duty. *See* Pl.'s Mot. at 18–19. If Defendant has a duty to process Plaintiff's records according to Plaintiff's preferred timetable, other requesters have similar subject expectations that would be disappointed. The proposed injunction would not further compliance with the statute. *See Allied Progress v. Consumer Fin. Prot. Bureau*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *7 (D.D.C. May 4, 2017) ("[A]s recognized in *Al-Fayed*, given the finite resources available to agencies, for every FOIA request that is expedited, another one must be moved back in the queue.").

Indeed, Courts have consistently recognized that disruption to the normal processing schedules constitutes real harm to the public interest and is inconsistent with FOIA's scheme. *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs."); *Protect Democracy Proj. v. Dep't of Def.*, 263 F.

Supp. 3d 293, 303 (D.D.C. 2017) ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it."). All of Plaintiff's claims that the request would serve FOIA's underlying purpose, Pls. Mot. at 19, are therefore unavailing.

Further, granting Plaintiff's request for a burdensome and extraordinary processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with the FOIA exemptions. *See Food Mktg. Inst.*, 588 U.S. at 439. The exemptions listed in Section 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records—for example, classified information, individuals' private information, and records the disclosure of which would interfere with effective law enforcement, 5 U.S.C. §§ 552(b)(1), (6), (7). Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised. *See* H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.").

Ordering Defendants to disclose records subject to super-expedited processing, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather based on Plaintiff's preferred schedule, threatens to risk disclosure of statutorily exempt material. *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015) ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of

inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Proj.*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker*, 2018 WL 5723146, at *5 ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."). As noted above, much of the material has to be reviewed pursuant to Exemption 5. Additionally, Exemption 6 would likely require additional redactions, and other exemptions likewise may apply. The public interest requires that time be afforded for that careful analysis to be properly conducted. *See Food Mktg. Inst.*, 588 U.S. at 439.

## III.    **Plaintiff Should Be Ordered to Post Security in Connection with Any Injunctive Relief.**

For the reasons stated above, Defendant submits that the Court can and should deny Plaintiff's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

* * *

**CONCLUSION**

For these reasons, Plaintiff's motion should be denied

Dated: May 16, 2025                           Respectfully submitted,

                                              JEANINE FERRIS PIRRO
                                              United States Attorney


                                              By: _____*/s/ Brian J. Levy*_____
                                                  BRIAN J. LEVY
                                                  Assistant United States Attorney
                                                  601 D Street, NW
                                                  Washington, DC 20530
                                                  (202) 252-6734

                                              *Attorneys for the United States of America*