UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES SOCIAL SECURITY ADMINISTRATION, et al.,<br><br>Defendants. | Civil Action No. 25-1217 (CRC) |

**DECLARATION OF SARAH REAGAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Sarah Reagan, FOIA and Transparency Division Director for the Office of Privacy and Disclosure in the Office of Law and Policy at the Social Security Administration (SSA), do hereby declare as follows:

1. I am employed at SSA as the FOIA and Transparency Division Director for the Office of Privacy and Disclosure (OPD), within the Office of Law and Policy. As part of my duties and responsibilities, I supervise the FOIA workload administered by OPD. As such, I have personal knowledge of the procedures SSA employs in handling FOIA requests for records pursuant to 5 U.S.C. § 552. I have been employed by SSA since August 2008, and in this position since November 20, 2021.

2. As the FOIA and Transparency Division Director, I am familiar with how the FOIA request that is the subject of this litigation has been handled by OPD and the basis for decisions made regarding this request.

3.    SSA employs a "centralized" approach for handling all FOIA requests and appeals at the administrative level. Aside from a subset of simple requests handled by the Office of Central Operations, Division of Earnings and Business Services (DEBS), SSA's FOIA requests are processed by OPD, rather than component-level FOIA offices.

4.    SSA receives a large volume of FOIA requests. For example, in fiscal year 2024, SSA (DEBS and OPD) received a total of 12,582 initial requests and 911 appeals;[1] the prior fiscal year, SSA received a total of 10,130 initial requests and 951 appeals.[2] For fiscal year 2025, as of May 12, 2025, SSA had received a total of 9,597 requests for processing, including initial requests, appeals, consultations, and referrals. FOIA requests are generally processed in the order in which they are received.

**OPD's Current FOIA Workload and Staffing Levels**

5.    Of the 9,597 requests mentioned above, OPD has received over 2,100 FOIA matters for processing, including initial requests, appeals, consultations, and referrals.

6.    As of May 12, 2025, OPD had 769 pending FOIA requests. Of those pending requests, approximately 60 are seeking records related to the Department of Government Efficiency ("DOGE") and/or DOGE activities at SSA.

7.    For fiscal year 2025, as of May 14, 2025, SSA had received 153 requests for expedited processing.

8.    In fiscal year 2024, the OPD FOIA staff handling both simple and complex tracks

---

[1] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2024, p. 9-10, *available at* https://www.ssa.gov/foia/annual_reports/2024/FY2024-%20FOIA%20Annual%20Report%20Final.pdf.

[2] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2023, p. 8-10, *available at* https://www.ssa.gov/foia/annual_reports/2023/FY2023-%20FOIA%20Annual%20Report%20Final.pdf.

consisted of 11 full-time FOIA employees: 10 analysts and a Division Director. OPD recently lost 3 of those experienced FOIA analysts who left SSA. Through restructuring efforts, OPD absorbed an additional 3 analysts; however, these analysts are new to the FOIA process, are still being trained, and are only currently handling requests in the simple track.

**Plaintiff's FOIA Request**

9. On February 7, 2025, Plaintiff submitted the FOIA request that is the subject of this motion via SSA's FOIAXpress Public Access Link. The request sought the following records for the period beginning at noon Eastern Standard Time on January 20, 2025:

1. Any request by persons affiliated with or representing the Department of Government Efficiency (DOGE), also known as the United States DOGE Service (USDS) for access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records (including records of federal employees, contractors, and applicants), financial data, health data, or other sensitive data, and any response to such request;

2. Any decision, analysis or discussion about whether access to any data repository, database, system of records, computer matching program, code base, or other system containing personally identifiable information (PII), personnel records, financial data, health data, or other sensitive data by persons affiliated with or representing DOGE or USDS is prohibited or constrained by statute, regulation, or rule. This includes but is not limited to any discussion of protections provided by the Privacy Act; the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule; the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act; taxpayer privacy laws including 26 U.S.C § 6103; the Family Educational Rights and Privacy Act (FERPA); and census record privacy laws including 13 U.S.C. §§ 9 & 214; and

3. Any proposed or actual use of artificial intelligence, including but not limited to services, models, or other software applications provided by xAI or Grok, by or at the direction or request of persons affiliated with or representing DOGE or USDS to analyze agency records or data.

The request further stated:

For purposes of this request, "persons affiliated with or representing DOGE or USDS"

includes, but is not limited to, (1) any individual employed by or volunteering with DOGE or USDS, including as a Special Government Employee; (2) any Special Government Employee who began work with a federal agency on or after January 20, 2025; (3) any employee hired by a federal agency since Jan. 20, 2025 who previously worked at Tesla, Inc.; X Corp.; Space Exploration Technologies Corporation (SpaceX); The Boring Company (TBC); or X.AI Corp.; or (4) the following named individuals, who have been publicly reported as being affiliated with or representing DOGE or USDS:

- Anthony Armstrong
- Riccardo Biasini
- Brian Bjelde
- Akash Bobba
- Edward Coristine
- Steve Davis
- Marko Elez
- Luke Farritor
- Nicole Hollander
- Gavin Kilger
- Gautier "Cole" Killian
- Michael Kratsios
- Tom Krause
- Matt Luby
- Nikhil Rajpal
- Rachel Riley
- Michael Russo
- Amanda Scales
- Ethan Shaotran
- Thomas Shedd
- Brad Smith
- Joanna Wischer

Plaintiff also requested expedited processing and a fee waiver.

10. An acknowledgement email was sent by OPD to Plaintiff the same day, February 7, 2025, assigning tracking number 2025-FOIA-00956. The acknowledgement email explains that upon receipt FOIA requests are categorized as either simple or complex, depending on the nature of the request and the estimated processing time. This request was categorized as a complex request.

11. On February 13, 2025, SSA issued a decision denying Plaintiff's requests for expedited processing and fee waiver, explaining that the requests did not meet the criteria set forth in SSA's FOIA regulations.

12. On March 24, 2025, Plaintiff appealed the denial of expedited processing and fee waiver for request 2025-FOIA-00956. The appeal was entered into SSA's FOIA case management solution on March 25, 2025. An acknowledgement email was sent by OPD the same day the appeal was entered, assigning tracking number 2025-APP-00478.

13. As of the date of this Declaration, OPD has not issued a decision on the appeal.

14. Plaintiff's FOIA request remains pending in OPD's FOIA processing queue. As of May 13, 2025, there were 410 pending complex requests that were received prior to this request.

15. While OPD has not yet begun processing Plaintiff's request, OPD anticipates many of the records would be exempt from Disclosure under the FOIA Exemption 5.

16. Given the current workload and onboarding of new FOIA analysts, OPD estimates that once this records search is completed, it could process approximately 100 pages per month. We expect that once our new FOIA analysts are fully trained we will have the ability to process additional pages per month.

**SSA's Proactive Disclosure of Records Pertaining to DOGE Access to SSA Data**

17. SSA maintains an Electronic FOIA Reading Room on its public website where it places materials, such as frequently requested records and other records the agency has determined to proactively disclose. Posted records may include those provided under agency discretion and not required pursuant to FOIA.

18. On April 25, 2025, OPD posted records that the agency had prepared and filed in a lawsuit against the agency that concerns access to SSA data by SSA's DOGE Team, *American Federation of State, County and Municipal Employees, AFL-CIO, et al., v. Social Security Administration*, 1:25-cv-00596-ELH (D. Md. 2025).

19. SSA posted the entirety of the administrative record and agency declarations filed in that case, with appropriate redactions, in the Electronic FOIA Reading Room. These documents are labeled "AFL-CIO Filings" and can be found in the FOIA Reading Room under

Proactive Disclosures (Current Year). *See* FOIA Reading Room, *available at* https://www.ssa.gov/foia/readingroom.html (last visited May 13, 2025).

      20.    While OPD has not yet begun processing Plaintiff's request, OPD believes that many of the records disclosed in the reading room would be responsive to Plaintiff's request.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on May 16, 2025, in Baltimore, Maryland.

*Sarah Reagan*
Sarah Reagan
FOIA & Transparency Division Director
Office of Privacy and Disclosure
Social Security Administration