**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES SOCIAL SECURITY ADMINISTRATION and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>*Defendants*. | Case No. 1:25-cv-01217-CRC<br><br>**HEARING SCHEDULED FOR MAY 29, 2025** |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.   A Preliminary Injunction Is Appropriate Here............................................................ 2

    II.  The ACLU Is Likely to Succeed on the Merits........................................................... 3

        A.  The ACLU Is Primarily Engaged in Disseminating Information. .................... 3

        B.  There Is an Urgent Need to Inform the Public About USDS's Operations. ..................................................................................................... 6

    III. ACLU Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief. ............... 9

    IV. The Balance of Equities and the Public Interest Weigh in Favor of Issuing a Preliminary Injunction. ............................................................................................ 13

    V.  A 1,000 Page-Per-Month Production Schedule Is Appropriate Here.......................... 16

    VI. This Court Should Deny Defendant SSA's Request for the ACLU to Post Security. ................................................................................................................... 17

CONCLUSION.................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Northern California v. Department of Justice*,
   No. C 04-4447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005)......................................5, 6

*Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001)..............................................................................................6, 8

*American Federation of State, County and Municipal Employees v. Social Security
   Administration*,
   No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025)......................................................11

*American Federation of State, County, and Municipal Employees v. Social Security
   Administration*,
   __ F. Supp. 3d __, No. ELH-25-0596, 2025 WL 1206246 (D. Md. Apr. 17, 2025)...........8, 12

*American Immigration Council v. U.S. Department of Homeland Security*,
   470 F. Supp. 3d 32 (D.D.C. 2020)..........................................................................................10

*American Oversight v. U.S. Department of State*,
   414 F. Supp. 3d 182 (D.D.C. 2019)..........................................................................................3

*Brennan Center for Justice v. Department of Commerce*,
   498 F. Supp. 3d 87 (D.D.C. 2020).......................................................................................9, 14

*Center for Biological Diversity v. U.S. Environmental Protection Agency*,
   279 F. Supp. 3d 121 (D.D.C. 2017)..........................................................................................13

*Center for Public Integrity v. U.S. Department of Defense*,
   411 F. Supp. 3d 5 (D.D.C. 2019)......................................................................................passim

*Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*,
   __ F. Supp. 3d __, No. 25-cv-511 (CRC), 2025 WL 752367, (D.D.C. Mar. 10, 2025)...passim

*Clemente v. FBI*,
   71 F. Supp. 3d 262 (D.D.C. 2014)...........................................................................................16

*Democracy Forward Foundation v. Office of Management and Budget*,
   __ F. Supp. 3d __, No. 25-858 (SLS), 2025 WL 1078778 (Apr. 9, 2025)................................7

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999)...................................................................................................17

*Electronic Privacy Information Center v. Department of Justice*,
   416 F. Supp. 2d 30 (D.D.C. 2006).......................................................................................3, 15

*Federal Prescription Service, Inc. v. American Pharmaceutical Association*,
 636 F.2d 755 (D.C. Cir. 1980) ................................................................................ 17

*Heritage Foundation v. U.S. Environmental Protection Agency*,
 No. 23-748 (JEB), 2023 WL 2954418 (D.D.C. Apr. 14, 2023) ................................... 9, 10, 14

*Judicial Watch, Inc. v. U.S. Department of Energy*,
 191 F. Supp. 2d 138 (D.D.C. 2002) .......................................................................... 16

*Landmark Legal Foundation v. EPA*,
 910 F. Supp. 2d 270 (D.D.C. 2012) ........................................................................... 5

*League of United Latin American Citizens v. Executive Office of the President*,
 No. CV 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ........................... 17, 18

*National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*,
 236 F. Supp. 3d 810 (S.D.N.Y. 2017) ......................................................................... 6

*Natural Resources Defense Council v. Department of Energy*,
 191 F. Supp. 2d 41 (D.D.C. 2002) ............................................................................ 17

*NLRB v. Robbins Tire & Rubber Co.*,
 437 U.S. 214 (1978) .................................................................................................... 3

*Protect Democracy Project, Inc. v. U.S. Department of Defense*,
 263 F. Supp. 3d 293 (D.D.C. 2017) ...................................................................... 7, 9, 10, 12

*Protect Democracy Project, Inc. v. U.S. Department of Justice*,
 498 F. Supp. 3d 132 (D.D.C. 2020) ...................................................................... 6, 7, 15

*Seavey v. Department of Justice*,
 266 F. Supp. 3d 241 (D.D.C. 2017) ......................................................................... 16

*Social Security Administration v. American Federation of State, County, and Municipal Employees*,
 No. 24A1063 (U.S.) (application for stay filed May 2, 2025) ....................................... 11

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
 489 U.S. 749 (1989) .................................................................................................. 13

*Washington Post v. Department of Homeland Security*,
 459 F. Supp. 2d 61 (D.D.C. 2006) ......................................................................... 2, 10

**Statutes**

20 C.F.R. § 402 ................................................................................................................ 14

5 U.S.C. § 552 ......................................................................................................... 1, 6, 8, 13

## Other Authorities

*About CREW*, https://www.citizensforethics.org/about/ .................................................. 4

Emily Peck, *DOGE Efforts Face Pushback at Social Security*, Axios (May 21, 2025)................ 3

*Exigency*, Black's Law Dictionary (12th ed. 2024) ......................................................... 7

H.R. Rep. No. 104–795, at 26, 1996 U.S.C.C.A.N. 3448, 3469................................................. 6

Hannah Natanson & Lisa Rein, *Inside DOGE's Push to Defy a Court Order and Access Social Security Data*, Wash. Post (Apr. 15, 2025) ...................................................11

Jeanne Sahadi, *DOGE Wants Access to Your Tax and Social Security Data. These Two Laws Are Supposed to Protect You*, CNN (Feb. 25, 2025) ...................................... 8

Meryl Kornfield, Lisa Rein & Hannah Natanson, *When Government Thinks You're Dead, It Upends Lives. DOGE May Make It Worse.*, Wash. Post (Apr. 23, 2025)...........................11

Michael Sainato, *'I Have to Worry Each Month': Social Security Cuts Incite Fears of Payment Disruptions*, The Guardian (May 20, 2025)............................................... 3

Social Security Administration, *FOIA Reading Room* ................................................. 8

Stephen Fowler & Jude Joffe-Block, *How DOGE May Have Improperly Used Social Security Data to Push Voter Fraud Narratives*, NPR (Apr. 11, 2025), ...................................11

## Rules

Federal Rule of Civil Procedure 65(c) ............................................................................. 17

## INTRODUCTION

Plaintiff American Civil Liberties Union ("ACLU") seeks the timely release of records concerning the so-called Department of Government Efficiency ("DOGE") and the United States DOGE Service's ("USDS") access to data systems maintained by Defendant Social Security Administration ("SSA"). As both parties acknowledge, *see* Mem. Supp. Pl.'s Mot. Prelim. Inj., ECF No. 16-1, at 9 [hereinafter PI Br.]; Def. SSA's Opp'n Pl.'s Mot. Prelim. Inj., ECF No. 20, at 13–14 [hereinafter Opp.], there is a fervent, ongoing national debate about USDS access to Americans' most sensitive personal data. This Court should grant the ACLU's motion because the records sought are urgently needed to inform this debate.

The government offers three arguments in opposition, none of which undermine the need for preliminary relief. First, the government claims that the ACLU is unlikely to prevail on the merits because it is not "primarily engaged in disseminating information," and there is not an urgent need for the information requested. Both assertions are incorrect. The government mistakenly conflates the ACLU, the plaintiff in this case and an organization that conducts public education as a primary activity, with the ACLU *Foundation*, a separate corporate entity organized under a different provision of the tax code engaged in a distinct set of primary activities. As it explained in the FOIA request and the motion for preliminary injunction, the ACLU is primarily engaged in the dissemination of information for purposes of FOIA. 5 U.S.C. § 552(a)(6)(E)(v). Further, the extensive media coverage and congressional inquiry into USDS access to government systems—fueled by the scope of the injuries inflicted on the public by improper access to and dissemination of highly-sensitive personal data—demonstrates that there is an urgent need for these records. The availability of different records produced over the course of different litigation does not undermine that urgency, let alone divest Defendant SSA of its statutory obligations under the FOIA.

Second, the government argues that the ACLU will not suffer irreparable harm because there is currently a preliminary injunction barring USDS access to certain SSA systems. But whatever the agency's current activities may be, that argument has no bearing on its retrospective document-production obligations. As courts have recognized, parties suffer irreparable harm when the government unduly delays satisfying its obligations under FOIA. This is especially true here, where the information sought will inform public and legislative debate.

Third, the government contends that granting the ACLU's expedited processing request would undermine the public interest because it would allow the ACLU to bypass other requestors in the FOIA queue and potentially result in the inadvertent disclosure of exempt information. On the contrary, granting the ACLU's motion is within the public interest because it will ensure that these records, as well as other similarly situated FOIA requests, are timely processed. Moreover, the government cannot evade its statutory obligations by relying on vague assertions that an inadvertent release of exempt materials *might* occur when processing the ACLU's request.

Because the ACLU is likely to succeed on the merits, faces immediate and irreparable harm absent injunctive relief, and seeks disclosure in the public interest, the Court should grant the ACLU's motion.

## ARGUMENT

## I.    A Preliminary Injunction Is Appropriate Here.

The government begins by citing the general practice of courts to disfavor preliminary injunctive relief in FOIA litigation. Opp. at 9–10. However, the government notably fails to address the exception to this general practice. Courts in this District have repeatedly granted preliminary injunctive relief where disclosure is necessary "to inform the public on a matter of extreme national concern." *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019); *see also Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006); *Elec. Priv. Info. Ctr.*

*v. Dep't of Just.*, 416 F. Supp. 2d 30 (D.D.C. 2006); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182 (D.D.C. 2019). This case falls plainly within that exception.

The ACLU's FOIA request seeks records that are necessary to inform a fevered and still intensifying public debate about USDS access to Americans' highly sensitive personal information. New press coverage is published virtually daily, including since Plaintiff filed its opening brief.[1] Members of Congress have raised alarms. PI Br. at 14. And, organizations and private citizens have increasingly called upon the government to permanently stop USDS from accessing SSA's systems. *Id*.

The records the ACLU seeks go to the heart of this important issue. Any further delay in processing these records would harm the public interest and undermine the core purpose of FOIA. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." (citation omitted)).

The ACLU's motion fits squarely within the line of cases where courts have granted preliminary injunctive relief because "the records are sought to inform an imminent public debate." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 10.

## II.     The ACLU Is Likely to Succeed on the Merits.

### A.     The ACLU Is Primarily Engaged in Disseminating Information.

In its opening brief, the ACLU explained how disseminating information to the press and to the public is critical to the ACLU's work and among its primary activities. PI Br. at 11–13. The

---

[1] *See, e.g.*, Emily Peck, *DOGE Efforts Face Pushback at Social Security*, Axios (May 21, 2025), https://perma.cc/3UGL-5XNH; Michael Sainato, *'I Have to Worry Each Month': Social Security Cuts Incite Fears of Payment Disruptions*, The Guardian (May 20, 2025), https://perma.cc/QZS3-TYRU.

government's response argues that the ACLU cannot be primarily engaged in disseminating information because its website also discusses its significant engagement in legal advocacy. Opp. at 11–13. This is wrong as a matter of law. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, __ F. Supp. 3d __, No. 25-cv-511 (CRC), 2025 WL 752367, at *13 (D.D.C. Mar. 10, 2025) [hereinafter *CREW*] (finding the organization CREW to be primarily engaged in disseminating information based on representation that it "'routinely disseminates information obtained through FOIA to the public,' including on its website"); *About CREW*, https://www.citizensforethics.org/about/ (last visited May 23, 2025) (describing CREW's work "[u]sing bold legal actions" and listing examples of organization's litigation). And it is wrong on the facts. The government conflates Plaintiff ACLU, which is not a litigation organization, with the nonparty ACLU *Foundation*, which is. Although sometimes colloquially referred to jointly as the "ACLU," the American Civil Liberties Union and the American Civil Liberties Union Foundation are different legal entities, as explained in the Request:

> The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

Wessler Decl. Ex. A, ECF No. 16-3, at 2 n.1.[2] In selectively quoting generic language from the shared website of the ACLU and ACLU Foundation, the government elides the distinction between these two entities. Opp. at 11 (citing ACLU website description of organization as the nation's "largest public interest law firm"). But as public materials, including the organizations' signed tax

---

[2] The ACLU Foundation was also a signatory to the Request, but is not a party to this lawsuit.

filings posted to their website, make clear, Plaintiff ACLU does not litigate.[3] Instead, its three primary activities, in order of resource expenditure, are affiliate support, *public education*, and legislative advocacy. Wessler Suppl. Decl. Ex. A at 2; *see also* Wessler Suppl. Decl. ¶¶ 3, 7. That public education function is achieved "through newsletters, its comprehensive website, advertisements, op-ed articles, media interviews, publications, social media, and numerous meetings and workshops." Wessler Suppl. Decl. Ex. A at 2; Wessler Suppl. Decl. ¶ 4; *see also* Wessler Decl. ¶¶ 2–5. It is the ACLU Foundation, by contrast, that runs a major "litigation program," in addition to also conducting public education. Wessler Suppl. Decl. Ex. C. at 2; Wessler Supp. Decl. ¶ 9. For all the reasons explained in the ACLU's opening brief and in the FOIA Request, disseminating information to the press and to the public is a critical and primary part of the ACLU's activities.

The government also ignores the multiple examples cited in the ACLU's opening brief where courts in this District have found similar organizations to be "primarily engaged in disseminating information." PI Br. at 13. Instead, the government largely relies, Opp. at 11–12, on a case from the Northern District of California, where the court held that the plaintiff—an entity affiliated with but legally and programmatically entirely separate from the Plaintiff here—was not entitled to expedited processing because it had failed to show that its FOIA requests provided evidence of a "current exigency" or "widespread and exceptional media interest." *ACLU of N. Cal. v. Dep't of Just.*, No. C 04-4447 PJH, 2005 WL 588354, at *12 (N.D. Cal. Mar. 11, 2005). Then, in *dicta*, the court expressed skepticism that dissemination of information was "*the* main activity" of the plaintiff. *Id.* at *14. In that single, non-binding district court opinion, the court posited that

---

[3] For that reason, the government's reliance on *Landmark Legal Foundation v. EPA*, 910 F. Supp. 2d 270, 272 (D.D.C. 2012), which addressed the status of a "national public interest law firm," is misplaced. Opp. at 12.

a requester cannot have multiple primary activities, *id.* at *14, but the standard in this District for "primarily engaged in disseminating information" does *not* require that information dissemination be the requestor's "sole occupation." *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020); *accord* H.R.Rep. No. 104–795, at 26, 1996 U.S.C.C.A.N. 3448, 3469.

The last case cited by the government, this time from the Southern District of New York, is also distinguishable. Most tellingly, it was decided on a meager factual record—there, the plaintiffs pointed only to their websites, whereas here, the ACLU has provided extensive detail and examples of how it disseminates information. *Compare Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 817 (S.D.N.Y. 2017), *with* PI Br. at 11–13 *and* Wessler Decl. Ex. A at 5–9. That robust evidentiary record amply demonstrates that the ACLU's main activities are education and legislative advocacy—activities for which the ACLU's dissemination of information is critical.

**B.    There Is an Urgent Need to Inform the Public About USDS's Operations.**

In determining whether there is an "urgency to inform the public concerning actual or alleged Federal Government activity," 5 U.S.C. § 552(a)(6)(E)(v), courts consider the following factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Protect Democracy Project*, 498 F. Supp. 3d at 139–40 (quoting *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001)). The government does not dispute that the Request satisfies the third factor. Opp. at 13.

On the first factor, that the Request "concerns a matter of current exigency to the American public," the government first tries to argue that the numerous news articles cited in the Request and the appeal are irrelevant because volume alone does not make an exigency. However, as the

government acknowledges, "[c]ourts often look to objective markers like the volume of news articles and media reports to discern whether there is a current exigency." Opp. at 13 (alteration in original) (citing *Democracy Forward Found. v. Off. of Mgmt. & Budget*, __ F. Supp. 3d __, No. 25-858 (SLS), 2025 WL 1078778, at *7 (Apr. 9, 2025)). The volume of news articles about USDS operations within Defendant SSA is an indicator of the current exigency. *See, e.g.*, *Democracy Forward Found.*, 2025 WL 1078778, at *7 (finding that the plaintiff "provided no shortage of articles" and that "easily favor[ed]" the plaintiff); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) ("[O]ne need look no further than the widespread media attention . . . ."); *CREW*, 2025 WL 752367, at *13 ("This 'widespread media attention' suggests a matter of urgency." (quoting *Protect Democracy Project*, 498 F. Supp. 3d at 140)).

The government's other attempts to minimize the widespread media attention are also unavailing. The government tries to characterize the ACLU's cited news articles as akin to reporting on sports or entertainment rather than "a situation requiring immediate action," Opp. at 14 (quoting *Exigency*, Black's Law Dictionary (12th ed. 2024)), but that misses the ongoing question of whether USDS access to or use of sensitive information held by SSA would violate federal laws, regulations, or policies and endanger the privacy and security of the many millions of Americans whose information is at issue. The Request also seeks records to shed light on USDS's operations, which "doubtless 'concern a matter of current exigency' to the public." *CREW*, 2025 WL 752367, at *13. The government also tries to discount any article that does not mention specifically accessing Defendant SSA's record systems, but the articles viewed as a whole show both that there is a general exigency concerning USDS access to federal agencies' systems and that USDS access to the SSA's systems is part of that exigency. The articles that explicitly discuss

access to Defendant SSA's systems situate the concern within the greater situation of USDS access to agency systems.[4]

The government's reliance on the *American Federation of State, County and Municipal Employees v. Social Security Administration* (*AFSCME*) litigation for this part of the analysis is also misplaced. Opp. at 14 (discussing the preliminary injunction granted by *AFSCME v. Soc. Sec. Admin.*, __ F. Supp. 3d __, No. ELH-25-0596, 2025 WL 1206246 (D. Md. Apr. 17, 2025), and the administrative record related to that case). The administrative record from that litigation was filed with the court on April 9, and a redacted version was made publicly available via the SSA's FOIA Reading Room on April 25, nearly three months after the ACLU submitted its Request and one month after the ACLU's appeal of the SSA's denial of expedited processing.[5] Courts review denials of expedited processing "based on the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), so the documents released in response to the *AFSCME* litigation are relevant only to the question of irreparable harm.[6]

Similarly, the government cannot rely on the *AFSCME* administrative record to argue that the Request failed to show that "the consequences of delaying a response would compromise a significant recognized interest," *Al-Fayed*, 254 F.3d at 310. *See* Opp. at 15–18 (listing documents from the public version of the *AFSCME* administrative record and representations that no DOGE

---

[4] *See, e.g.*, Jeanne Sahadi, *DOGE Wants Access to Your Tax and Social Security Data. These Two Laws Are Supposed to Protect You*, CNN (Feb. 25, 2025), https://perma.cc/54ZC-QVYH (cited by Wessler Decl. Ex. C, ECF No. 16-5, at 3 n.2) ("Efforts by DOGE to get access to the reams of "personally identifiable information" (PII) on individuals housed at the IRS, Social Security Administration, Office of Personnel Management, Department of Education and other federal agencies – not to mention the federal payments system at Treasury – are now the subject more than a dozen lawsuits.").

[5] *See* Soc. Sec. Admin., *FOIA Reading Room*, https://www.ssa.gov/foia/readingroom.html.

[6] If the Court were to consider that litigation in assessing whether the Request demonstrated a compelling need, the litigation only underscores the extraordinary public interest in the subject of the Request. *See infra* Part IV. And as discussed below, the ACLU's Request seeks significant information beyond what was produced to the public in the *AFSCME* administrative record. *See infra* Part III.

personnel have access to SSA systems).[7] The government's remaining argument under this factor is that there is not a specific date after which the information sought by the Request would become stale. Opp. at 14–15. Although courts have at times relied on such cutoff dates to conclude that a significant recognized interest may be compromised, it is not required that such a date exist. *Heritage Found. v. U.S. Env't Prot. Agency*, No. 23-748 (JEB), 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023) ("To be clear, the Court does not hold that a definite end-date is necessary to show that delay would compromise a significant recognized interest."). Indeed, courts have recognized the harm in substantially delaying the production of information "vital to the current and ongoing debate surrounding the legality of a high-profile government action." *CREW*, 2025 WL 752367, at *13 (cleaned up) (quoting *Protect Democracy Project*, 263 F. Supp. 3d at 299); *see also, e.g.*, *Protect Democracy Project*, 263 F. Supp. 3d at 299 ("Being closed off from such a debate is itself a harm in an open democracy.").

## III.    ACLU Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief.

The ACLU has also shown that it will suffer irreparable harm. As explained in its opening brief, "courts have concluded that a delay in processing of a FOIA request would cause irreparable harm" in FOIA cases involving "ongoing proceedings of national importance." *Brennan Ctr. for Just. v. Dep't of Com.*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020) (citation omitted); *CREW*, 2025 WL 752367, at *14. The government argues that this cannot be the case because then every FOIA requester could claim harm when an agency fails to follow its statutory duties. Opp. at 24. But

---

[7] The government also counters the fact that eleven agencies have already granted expedited processing by characterizing this as "the apparent minority view." Opp. at 18. At the time of this filing, there are only ten agencies, including the SSA, that have denied expedited processing and not finished processing the Request. Appeals remain pending with eight of these. The rest of the agencies have either not responded, finished processing, referred the Request to other agencies, or merged their request with another agency's. *See* Wessler Suppl. Decl. ¶¶ 10–14.

"when expedited treatment is statutorily proscribed, the specter of information becoming stale and of little value, increases." *Wash. Post*, 459 F. Supp. 2d at 74 (citation omitted).

In laying out the standard for irreparable harm, the government overstates the "requirement" for an upcoming event that would make the records time sensitive. *See* Opp. at 21–22. Although courts do sometimes rely on such a cutoff date, *e.g.*, *Heritage Found.*, 2023 WL 2954418, at *4, courts have concluded in other cases that a substantial delay in processing would cause irreparable harm even absent some looming cut-off date or deadline. *See, e.g.*, *CREW*, 2025 WL 752367, at *14; *Protect Democracy Project*, 263 F. Supp. 3d at 300; *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020); *Ctr. for Pub. Integrity*, 411 F. Supp. at 12–13 (D.D.C. 2019) ("The Court finds that the lack of a precise end-date for the impeachment proceedings is not detrimental to Plaintiff's claim of irreparable harm."). That makes good sense: since the purpose of a FOIA request is to learn more about government activity, it cannot possibly be the case that a requester must *already know* sufficient facts about such activity as to be able to allege injury before a date certain to secure expedited processing. The urgency and salience of the ongoing public debate is sufficient.

And the fact that there are 410 complex requests ahead of the ACLU's, Reagan Decl. ¶ 14, ECF No. 20-1, suggests that a lack of expedited processing would cause a substantial delay. "FOIA was created to foster public awareness, and failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R.Rep. No. 93–876, at 6 (1974)).

The government also relies heavily on the preliminary injunction in *AFSCME* to argue that there is nothing ongoing about USDS access to SSA's systems. However, the preliminary injunction in *AFSCME* only serves to underscore the ongoing and evolving nature of the issue.

Although the preliminary injunction remains in effect at the time of this filing, there are (as the government notes) a pending en banc appeal in the Fourth Circuit, *see* No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) (en banc) (denying stay), and a fully briefed motion for stay before the Supreme Court, which is ripe for decision at any time, No. 24A1063 (U.S.) (application for stay filed May 2, 2025). Given those ongoing appellate proceedings, there is no way of knowing for how long the preliminary injunction may remain in effect. In addition, by its terms, the preliminary injunction permits USDS personnel to access SSA data and records under certain circumstances, meaning that it is by no means the categorical bar that the government claims. Order ¶¶ 2–3, *AFSCME*, No. 25-cv-596 (D. Md. Apr. 17, 2025) (ECF No. 147); *see also* Status Report & Certification at 2, No. 25-cv-596 (D. Md. Apr. 23, 2025) (ECF No. 155) (SSA representing that "while the Court's Preliminary Injunction Order remains in effect, before providing access to systems or records containing PII to any DOGE Defendant, SSA DOGE Team member, or DOGE Affiliate, SSA will ensure compliance with the requirements of paragraphs 2 and 3 of the Court's Preliminary Injunction Order"). Moreover, as Plaintiff's opening brief explains, PI Br. at 6, 17–18, & 17 n.17, the press has reported that USDS personnel have gone to great lengths to circumvent the court order,[8] and the extent to which Defendant SSA's data continues to be accessed is unclear.[9] For example, it is unknown whether the court order was violated when someone without the appropriate permissions added approximately 6,000 immigrants to the Defendant SSA's Death Master File.[10] Consequently, it is still possible for USDS

---

[8] Hannah Natanson & Lisa Rein, *Inside DOGE's Push to Defy a Court Order and Access Social Security Data*, Wash. Post (Apr. 15, 2025), https://perma.cc/F2GR-46FR.

[9] Stephen Fowler & Jude Joffe-Block, *How DOGE May Have Improperly Used Social Security Data to Push Voter Fraud Narratives*, NPR (Apr. 11, 2025), https://perma.cc/A4N9-L4L9; Meryl Kornfield, Lisa Rein & Hannah Natanson, *When Government Thinks You're Dead, It Upends Lives. DOGE May Make It Worse.*, Wash. Post (Apr. 23, 2025), https://perma.cc/MN48-A5ZA.

[10] Kornfield et al., *supra* note 9.

to "take action on largescale plans quickly," Opp. at 22, despite the *AFSCME* preliminary injunction. This continued possibility for USDS access to sensitive information increases the risk of irreparable harm "because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back." *Protect Democracy Project*, 263 F. Supp. 3d at 301 (citation omitted).

The redacted *AFSCME* administrative record that Defendant SSA posted online also does not sufficiently mitigate the irreparable harm that ACLU faces without expedited processing. *Contra* Opp. at 14–18, 22–23. The administrative record does not provide all records that would be responsive to the Request, for at least several reasons. First, the *AFSCME* litigation only addresses USDS *access to* SSA data, and thus the administrative record does not encompass records that would be responsive to the Request's demand for information on USDS's plans to use artificial intelligence to analyze or process SSA data. *See AFSCME*, 2025 WL 1206246, at *1–2 (discussing litigation's challenge to USDS personnel's "unlimited access to the SSA records"); Wessler Decl. Ex. A at 3–4 (FOIA Request seeking records on "[a]ny proposed or actual use of artificial intelligence" by USDS personnel). Second, the *AFSCME* administrative record focuses on SSA's *grant* of access to USDS personnel, not on USDS personnel's actions while they had access and how they used or planned to use SSA data. *See* Certification of Administrative Record at 1, *AFSCME*, No. 25-cv-596 (D. Md. Apr. 9, 2025) (ECF No. 121-1); *see also AFSCME*, 2025 WL 1206246, at *45 (describing the plaintiffs' APA claims as challenging the SSA's "decision to provide the DOGE Team with expansive access to SSA record systems"). Third, the administrative record was filed on April 9, 2025, *see AFSCME*, No. 25-cv-596 (D. Md. Apr. 9, 2025) (ECF No. 121), and thus does not encompass more recent records that would be captured in a search pursuant to the ACLU's request. *See Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 279 F. Supp.

3d 121, 141 (D.D.C. 2017) (discussing prevailing rule that reasonable cut-off date for searches is date the search is conducted, not date the FOIA request is submitted). Fourth, the redactions in the publicly released version of the administrative record do not bear any label that would allow a reader to discern the basis for redacting, and it is likely that at least some of the redactions in this record would not fall within FOIA's specific exemptions. *See* 5 U.S.C. § 552(b). Indeed, to the extent the redactions are justified by the protective order entered in that case, Protective Order, *AFSCME*, No. 25-cv-596 (D. Md. Apr. 18, 2025) (ECF No. 152), they rest on a very different ground from the limited authority to withhold information under FOIA. Nor does the ACLU have a way to challenge those redactions while it waits for the Request to be processed.

Finally, the government argues that there would be no irreparable harm because much of the requested information would be exempt from disclosure. Although there may very well be exempt information in the records sought, the Request seeks non-exempt information, and without knowing more about the contents of the records, it would be premature to declare that all of the sought records are exempt from FOIA. *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13.

## IV. The Balance of Equities and the Public Interest Weigh in Favor of Issuing a Preliminary Injunction.

Both the balance of equities and public interest favor injunctive relief. A preliminary injunction would serve the public interest by shedding light on "what the[] government is up to." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (citation omitted). This is especially true, here, where public interest is high but information is scarce.[11] The government's arguments to the contrary rely on conclusory statements that are legally and factually inaccurate.

---

[11] As discussed above, *supra* Part III, the *AFSCME* administrative record is limited in several aspects, such as its focus on only the grant of access to SSA systems.

First, the government contends that granting the ACLU's expedited processing request would undermine the public interest by permitting it to "jump over other FOIA requesters in line." Opp. at 26 (citing *Heritage Found.*, 2023 WL 2954418, at *6). Set aside that the agency's *own regulations*, by supplying the circumstances under which expedited processing is appropriate, contemplate that some requestors will see their requests fulfilled before others. *See* 20 C.F.R. § 402.65. In any event, courts have consistently rejected this rationale where there is an urgent need to inform the public about alleged or actual government conduct. *See, e.g.*, *Brennan Ctr. for Just.*, 498 F. Supp. at 103; *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14.

In *Brennan Center*, a nonprofit organization sought expedited processing of records related to the 2020 Census in advance of congressional reapportionment. A court within this District expressly rejected the government's charge that such expedited processing would harm "other parties in the FOIA queue," holding that "hardship on other FOIA requesters is not a bar to relief." *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 103 (citing *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14). The court further observed that to the extent responsive documents overlap with those requested by others, "the hardship imposed on other requesters will be diminished." *Id*.

This case is materially analogous. The ACLU seeks expedited processing of records related to USDS's access to Defendant SSA's database systems. The government does not—nor can it— dispute that USDS's actions have garnered substantial public interest. Opp. at 13–14. Instead, the government relies on generalized assertions that granting expedited processing would disadvantage other FOIA requesters. *Id*. at 26. But courts have made clear that speculative harm to others does not preclude relief where, as here, the public interest strongly supports expedited processing. *See, e.g.*, *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 103; *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14. The asserted burden on the FOIA queue is outweighed by the compelling need for

timely public access to these records to inform ongoing debate. Further, the government's own submissions suggest that processing the ACLU's Request may reduce its burden. According to the Reagan Declaration, Defendant SSA has "approximately 60" pending FOIA requests seeking records concerning the "Department of Government Efficiency ('DOGE') and/or DOGE activities at SSA." Reagan Decl. ¶ 6. To the extent these requests overlap, Defendant SSA may reduce its own burden and any potential harm to other requestors by processing the ACLU's FOIA request.

Second, the government asserts that processing the ACLU's Request on its "preferred schedule" would "compromise the public interest" by increasing the risk of inadvertent disclosures of exempt material. Opp. at 27; *see also* Reagan Decl. ¶ 15 ("While OPD has not yet begun processing Plaintiff's request, OPD anticipates many of the records would be exempt from Disclosure under the FOIA Exemption 5"). This argument fails as both a legal and factual matter. Courts have routinely rejected the government's reliance on speculative assertions that expedited processing might lead to the inadvertent release of exempt records. *See Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 42 ("Vague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further—government openness and accountability."); *see also Protect Democracy Project,* 498 F. Supp. 3d at 144. Here, Defendant SSA offers no concrete evidence to explain why this *particular* Request poses a heightened risk of inadvertent disclosure. Defendant SSA only relies on a generalized reference to anticipated exemptions and routine processing concerns. Absent sufficient evidence, a potential risk of inadvertent disclosures cannot override the ACLU's urgent need to obtain these records.

Finally, the government misrepresents the ACLU's position. The ACLU does not seek to impose a "preferred schedule." Opp. at 27. Rather, the ACLU seeks expedited processing consistent with the agency's obligations under FOIA. The ACLU is open to conferring with the

government to establish a reasonable production schedule that balances the agency's administrative needs with the ACLU's urgent need to inform the public about USDS's actions.

## V.    A 1,000 Page-Per-Month Production Schedule Is Appropriate Here.

The main relief the ACLU seeks is an order directing expedited processing of the Request. PI Br. at 20. Should the Court grant that relief, the ACLU has suggested that a processing rate of 1,000 pages of potentially responsive records per month would effectuate the public's interest in timely access to the requested information. *Id.* The government contends that a 1,000 page-per-month production rate is both unreasonable and "out of line with other court-ordered production." Opp. at 20. Although neither assertion is correct, the ACLU would be satisfied with an order granting expedited processing and directing SSA to provide a timely estimate of the volume of potentially responsive records, after which the parties could attempt to come to an agreement on a reasonable monthly processing volume, and could seek the Court's assistance if negotiations fail.

In evaluating the reasonableness of a proposed FOIA processing rate, courts generally consider the total volume of responsive records. Where a large volume of records means that a lower production rate would cause undue delay, courts have routinely ordered higher monthly page counts. *See, e.g.*, *Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241, 246–48 (D.D.C. 2017); *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 140–41 (D.D.C. 2002).[12]

Nonetheless, it is firmly within this Court's discretion to order a 1,000 page-per-month processing schedule. Contrary to the government's claims, courts in this District have not hesitated to direct agencies to process records at rates equal to or higher than the rate contemplated here. *See, e.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (5,000 pages per month); *Nat.*

---

[12] Here, the government proposes an extremely low 100 page-per-month production rate without even disclosing the total volume of responsive records. Opp. at 21. Indeed, the government admits that it has not begun processing the ACLU's FOIA Request. Reagan Decl. ¶ 15. It offers no justification for the proposed production rate other than vague resource constraints. *Id.* ¶ 16.

*Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 42, 43 n.5 (D.D.C. 2002) (ordering the majority of 7,500 pages to be processed within thirty-two days). Indeed, just last month, this Court ordered a 1,000 page monthly production schedule in *CREW*. Min. Order, No. 25-cv-511 (D.D.C. Apr. 10, 2025). The Court held that such a pace was warranted because the records sought were important and "'directly tied to [] current, ongoing' actions by USDS, which 'are of the highest national concern.'" *CREW*, 2025 WL 752367, at *14 (alteration in original) (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12). That same logic applies here. The ACLU seeks records concerning USDS's access to data systems maintained by Defendant SSA—an issue that has attracted considerable public and Congressional attention. Timely disclosure of these records is necessary to facilitate informed public and legislative debate. *See Nat. Res. Def. Council*, 191 F. Supp. 2d at 43 (ordering speedy processing in part because "[i]t is hardly any secret that Congress will shortly be considering these complex policy issues").

In short, a 1,000 page-per-month production rate is both reasonable and well-supported by prior cases.

## VI.    This Court Should Deny Defendant SSA's Request for the ACLU to Post Security.

This Court should exercise its broad discretion to deny the government's request for an injunction bond under Federal Rule of Civil Procedure 65. The government rightly points out that district courts have "broad discretion . . . to determine the appropriate amount of an injunction bond." Opp. at 28 (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)); *see* Fed. R. Civ. P. 65(c). However, the government fails to address that "district courts have the discretion to 'dispense with any security requirement whatsoever' when there has been no showing that the absence of a bond would prejudice the defendants." *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025 WL 1187730, at *61 (D.D.C. Apr. 24, 2025) (quoting *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980).

Here, the government has made no showing, whatsoever, that an injunction would cause undue prejudice or impose substantial monetary or material injury.

More generally, there is a longstanding exception to the security requirement in public-interest cases, like this one, which require plaintiff to comply with its statutory obligations. Numerous courts within this District have determined that plaintiffs are not required to post a bond to secure an injunction against federal agencies or officers. *See, e.g.*, *League of United Latin Am. Citizens*, 2025 WL 1187730, at *62 (collecting cases). This case is no different. The ACLU brings this action against Defendant SSA to compel a federal agency to fulfill its statutory obligations and process its Request.

Accordingly, the Court should exercise its discretion to deny Defendant SSA's request for an injunction bond.

## CONCLUSION

For the foregoing reasons, the ACLU respectfully requests that this Court grant the motion for a preliminary injunction.

Dated: May 23, 2025                                    Respectfully submitted,

                                                      /s/ Lauren Yu

                                                      Lauren Yu*
                                                      Nathan Freed Wessler*
                                                      AMERICAN CIVIL LIBERTIES UNION
                                                          FOUNDATION
                                                      125 Broad Street, 18th Floor
                                                      New York, NY 10004
                                                      (212) 549-2500
                                                      lyu@aclu.org
                                                      nwessler@aclu.org

                                                      Megan C. Keenan (DC Bar No. 1672508)
                                                      Michelle Fraling (DC Bar No. 90017463)

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
915 15th Street NW, 6th Floor
Washington, DC 20005
(917) 710-3245
mkeenan@aclu.org
michelle.fraling@aclu.org

Evelyn Danforth-Scott*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
edanforth-scott@aclu.org

*Counsel for Plaintiff*

* Admitted *pro hac vice*