# Exhibit B

145768

| Form **1024** | **Application for Recognition of Exemption** | OMB No. 1545-0057 |
|---|---|---|
| (Rev. August 1993) | **Under Section 501(a)** | Expires 5-31-96 |
| Department of the Treasury<br>Internal Revenue Service | **or for Determination Under Section 120** | If exempt status is approved, this application will be open for public inspection |

Read the instructions for each Part carefully.
**A User Fee must be attached to this application.**
If the required information and appropriate documents are not submitted along with Form 8718 (with payment of the appropriate user fee), the application may be returned to the organization.
Complete the Procedural Checklist on page 5 of the instructions.

**Part I. Identification of Applicant (Must be completed by all applicants; also complete appropriate schedule.)**
Submit only the schedule that applies to your organization. Do not submit blank schedules.

Check the appropriate box below to indicate the section under which the organization is applying:

a ☐ Section 501(c)(2)—Title holding corporations (Schedule A, page 7)
b ☒ Section 501(c)(4)—Civic leagues, social welfare organizations (including certain war veterans' organizations), or local associations of employees (Schedule B, page 8)
c ☐ Section 501(c)(5)—Labor, agricultural, or horticultural organizations (Schedule C, page 9)
d ☐ Section 501(c)(6)—Business leagues, chambers of commerce, etc. (Schedule C, page 9)
e ☐ Section 501(c)(7)—Social clubs (Schedule D, page 11)
f ☐ Section 501(c)(8)—Fraternal beneficiary societies, etc., providing life, sick, accident, or other benefits (Schedule E, page 13)
g ☐ Section 501(c)(9)—Voluntary employees' beneficiary associations (Parts I through IV and Schedule F, page 14)
h ☐ Section 501(c)(10)—Domestic fraternal societies, orders, etc. not providing life, sick, accident, or other benefits (Schedule E, page 13)
i ☐ Section 501(c)(12)—Benevolent life insurance assns., mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations (Schedule G, page 15)
j ☐ Section 501(c)(13)—Cemeteries, crematoria, and like corporations (Schedule H, page 16)
k ☐ Section 501(c)(15)—Mutual insurance companies or associations, other than life or marine (Schedule I, page 17)
l ☐ Section 501(c)(17)—Trusts providing for the payment of supplemental unemployment compensation benefits (Parts I through IV and Schedule J, page 18)
m ☐ Section 501(c)(19)—A post, organization, auxiliary unit, etc., of past or present members of the Armed Forces of the United States (Schedule K, page 19)
n ☐ Section 501(c)(20)—Trust/organization for prepaid group legal services (Parts I, II, and Schedule M, page 23) See Change To Note on page 1 of the instructions.
o ☐ Section 501(c)(25)—Title holding corporations or trusts (Schedule A, page 7)
p ☐ Section 120—Qualified group legal services plans (Part I and Schedule L, page 21) See Change To Note on page 1 of the instructions.

| 1a Full name of organization (as shown in organizing document)<br>American Civil Liberties Union, Inc. | **REC'D WITH REMITTANCE** | 2 Employer identification number<br>(if none, see Specific Instructions)<br>13 : 4921750 |
|---|---|---|
| 1b c/o Name (if applicable) | **DEC 0 6 1995** | |
| 1c Address (number and street)<br>132 West 43rd Street | **DIR. INT. REV. EPEO-SPB**<br>**BROOKLYN, N.Y.** | |
| 1d City or town, county, state, and ZIP code<br>New York, NY 10036 | 3 Name and telephone number (including area code) of person to be contacted during business hours if more information is needed<br>Jerome D. Sorkin | 202, 662-5569 |
| 4 Month the annual accounting period ends<br>December | 5 Date incorporated or formed<br>October 28, 1993 | 6 Activity codes (see back cover)<br>430    480    516 |
| 7 Did the organization previously apply for recognition of exemption under this Code section or under any other section of the Code?<br>If "Yes," attach an explanation. | | ☐ Yes  ☒ No |
| 8 Has the organization filed Federal income tax returns or exempt organization information returns? . . . . . .<br>If "Yes," state the form numbers, years filed, and Internal Revenue office where filed.<br>Form 990, 1994, Hicksville, New York | | ☒ Yes  ☐ No |

9 Check the box for the type of organization. BE SURE TO ATTACH A CONFORMED COPY OF THE CORRESPONDING DOCUMENTS TO THE APPLICATION BEFORE MAILING.

a ☒ Corporation—Attach a copy of the Articles of Incorporation (including amendments and restatements) showing approval by the appropriate state official; also attach a copy of the bylaws. **See Exhibit A.**
b ☐ Trust—Attach a copy of the Trust Indenture or Agreement, including all appropriate signatures and dates.
c ☐ Association—Attach a copy of the Articles of Association, Constitution, or other creating document, with a declaration (see instructions) or other evidence that the organization was formed by adoption of the document by more than one person. Also include a copy of the bylaws.

If this is a corporation or an unincorporated association that has not yet adopted bylaws, check here . . . . . . ▶ ☐

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization, and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

**PLEASE SIGN HERE** ▶ _[signature]_  REPRESENTATIVE  11-29-95
(Signature)    (Title or authority of signer)    (Date)

13-387/3600

Form 1024 (Rev. 8-83)                                                                    Page 2

**Part II. Activities and Operational Information (Must be completed by all applicants other than those applying under section 120.)**

1   Provide a detailed narrative description of all the activities of the organization—past, present, and planned. Do not merely refer to or repeat the language in the organizational document. Describe each activity separately in the order of importance. Each description should include, as a minimum, the following: (a) a detailed description of the activity including its purpose; (b) when the activity was or will be initiated; and (c) where and by whom the activity will be conducted.

   See Exhibit B. . .

2   List the organization's present and future sources of financial support, beginning with the largest source first.

   Membership dues, gifts from foundations, gifts from individuals.

Form 1024 (Rev. 8-93)                                                                Page **3**

## Part II. Activities and Operational Information (continued)

**3**  Give the following information about the organization's governing body:

| **a** Names, addresses, and titles of officers, directors, trustees, etc. | **b** Annual compensation |
|---|---|
| See Exhibit E. | None of the officers or directors of the ACLU are compensated for their services. |

**4**  If the organization is the outgrowth or continuation of any form of predecessor, state the name of each predecessor, the period during which it was in existence, and the reasons for its termination. Submit copies of all papers by which any transfer of assets was effected.

See Exhibit F.

**5**  If the applicant organization is now, or plans to be, connected in any way with any other organization, describe the other organization and explain the relationship (e.g., financial support on a continuing basis; shared facilities or employees; same officers, directors, or trustees).

See Exhibit H.

**6**  If the organization has capital stock issued and outstanding, state: (1) class or classes of the stock; (2) number and par value of the shares; (3) consideration for which they were issued; and (4) whether any dividends have been paid or whether your organization's creating instrument authorizes dividend payments on any class of capital stock.

N/A

**7**  State the qualifications necessary for membership in the organization; the classes of membership (with the number of members in each class); and the voting rights and privileges received. If any group or class of persons is required to join, describe the requirement and explain the relationship between those members and members who join voluntarily. Submit copies of any membership solicitation material. Attach sample copies of all types of membership certificates issued.

See Exhibit I.

**8**  Explain how your organization's assets will be distributed on dissolution.

On dissolution, the American Civil Liberties Union, Inc. will distribute its assets as permitted under the District of Columbia Nonprofit Corporate Act and under Section 501(c)(4) of the Internal Revenue Code.

Form 1024 (Rev. 8-93)                                                                                                  Page 4

## Part II. Activities and Operational Information (continued)

**9**  Has the organization made or does it plan to make any distribution of its property or surplus funds to shareholders or members? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☒ No
If "Yes," state the full details, including: (1) amounts or value; (2) source of funds or property distributed or to be distributed; and (3) basis of, and authority for, distribution or planned distribution.

**10**  Does, or will, any part of your organization's receipts represent payments for services performed or to be performed? .  ☐ Yes  ☒ No
If "Yes," state in detail the amount received and the character of the services performed or to be performed.

**11**  Has the organization made, or does it plan to make, any payments to members or shareholders for services performed or to be performed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☒ No
If "Yes," state in detail the amount paid, the character of the services, and to whom the payments have been, or will be, made.

**12**  Does the organization have any arrangement to provide insurance for members, their dependents, or others (including provisions for the payment of sick or death benefits, pensions, or annuities)? . . . . . . . . . . . . .  ☐ Yes  ☒ No
If "Yes," describe and explain the arrangement's eligibility rules and attach a sample copy of each plan document and each type of policy issued.

**13**  Is the organization under the supervisory jurisdiction of any public regulatory body, such as a social welfare agency, etc.? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☒ No
If "Yes," submit copies of all administrative opinions or court decisions regarding this supervision, as well as copies of applications or requests for the opinions or decisions.

**14**  Does the organization now lease or does it plan to lease any property? . . . . . . . . . . . . . . . . . . .  ☒ Yes  ☐ No
If "Yes," explain in detail. Include the amount of rent, a description of the property, and any relationship between the applicant organization and the other party. Also, attach a copy of any rental or lease agreement.

See Exhibit J.

**15**  Has the organization spent or does it plan to spend any money attempting to influence the selection, nomination, election, or appointment of any person to any Federal, state, or local public office or to an office in a political organization? . .  ☐ Yes  ☒ No
If "Yes," explain in detail and list the amounts spent or to be spent in each case.

**16**  Does the organization publish pamphlets, brochures, newsletters, journals, or similar printed material? . . . . .  ☒ Yes  ☐ No
If "Yes," attach a recent copy of each.
See Exhibit K.

Form 1024 (Rev. 8-93) Page 5

**Part III. Financial Data (Must be completed by all applicants other than those applying under section 501(c)(20) or 120.)**
Complete the financial statements for the current year and for each of the 3 years immediately before it. If in existence less than 4 years, complete the statements for each year in existence. If in existence less than 1 year, also provide proposed budgets for the 2 years following the current year.

**A. Statement of Revenue and Expenses** See Note 1

| Revenue | (a) Current Tax Year From 1/1/95 To 9/30/95 | (b) 1994 | (c) 1993 | (d) 1992 | (e) Total |
|---|---|---|---|---|---|
| 1 Gross dues and assessments of members | 6,862,176 | 9,798,997 | 9,011,367 | 8,821,713 | 34,494,253 |
| 2 Gross contributions, gifts, etc. | | | | | |
| 3 Gross amounts derived from activities related to the organization's exempt purpose (attach schedule) | | | | | |
| 4 Gross amounts from unrelated business activities (attach schedule) | | | | | |
| 5 Gain from sale of assets, excluding inventory items (attach schedule) | | | | | |
| 6 Investment income (see instructions) | 21,284 | 107,448 | 49,283 | 55,899 | 233,914 |
| 7 Other revenue (attach schedule) See Note 2 | 173,367 | 162,473 | 112,366 | 106,114 | 554,320 |
| 8 Total revenue (add lines 1 through 7) | 7,056,827 | 10,068,918 | 9,173,016 | 8,983,726 | 35,282,487 |
| **Expenses** | | | | | |
| 9 Expenses attributable to activities related to the organization's exempt purposes. | | | | | |
| 10 Expenses attributable to unrelated business activities | | | | | |
| 11 Contributions, gifts, grants, and similar amounts paid (attach schedule). | | | | | |
| 12 Disbursements to or for the benefit of members (attach schedule) | See Note 3 | | | | |
| 13 Compensation of officers, directors, and trustees (attach schedule) | | 231,450 | 227,226 | | 458,676 |
| 14 Other salaries and wages. | 1,521,156 | 1,439,125 | 1,428,119 | 1,609,968 | 5,998,368 |
| 15 Interest | | | | | |
| 16 Occupancy. | 30,000 | 55,000 | 55,000 | 55,000 | 195,000 |
| 17 Depreciation and depletion | | | | | |
| 18 Other expenses (attach schedule) See Note 4 | 6,030,615 | 7,786,539 | 7,576,489 | 7,317,190 | 28,710,87 |
| 19 Total expenses (add lines 9 through 18) | 7,581,771 | 9,512,114 | 9,286,834 | 8,982,158 | 35,362,877 |
| 20 Excess of revenue over expenses (line 8 minus line 19) | (524,944) | 556,804 | (113,818) | 1,568 | (80,390) |

**B. Balance Sheet (at the end of the period shown)**

| Assets | | Current Year as of 9/30/95 |
|---|---|---|
| 1 Cash. | 1 | 228,959 |
| 2 Accounts receivable, net | 2 | 4,847,172 |
| 3 Inventories | 3 | |
| 4 Bonds and notes receivable (attach schedule) | 4 | |
| 5 Corporate stocks | 5 | |
| 6 Mortgage loans (attach schedule) | 6 | |
| 7 Other investments (attach schedule) See Note 5 | 7 | 2,101,278 |
| 8 Depreciable and depletable assets (attach schedule) | 8 | |
| 9 Land. | 9 | |
| 10 Other assets (attach schedule) | 10 | |
| 11 Total assets | 11 | 7,177,409 |
| **Liabilities** | | |
| 12 Accounts payable | 12 | 3,983,572 |
| 13 Contributions, gifts, grants, etc., payable | 13 | |
| 14 Mortgages and notes payable (attach schedule) | 14 | |
| 15 Other liabilities (attach schedule) | 15 | |
| 16 Total liabilities. | 16 | 3,983,572 |
| **Fund Balances or Net Assets** | | |
| 17 Total fund balances or net assets | 17 | 3,193,8 |
| 18 Total liabilities and fund balances or net assets (add line 16 and line 17) | 18 | 7,177,409 |

If there has been any substantial change in any aspect of the organization's financial activities since the end of the period shown above, check the box and attach a detailed explanation. ▶ ☐

Form : 024 (Rev. 8-93)                                                                                      Page 6

## Part IV. Notice Requirements (Sections 501(c)(9) and 501(c)(17) Organizations Only)
### See Change To Note on page 1 of the Instructions

**1**  Section 501(c)(9) and 501(c)(17) organizations:

Are you filing Form 1024 within 15 months from the end of the month in which the organization was created or formed
as required by section 505(c)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes □ No

If "Yes," skip the rest of this Part.

If "No," answer question 2.

**2**  If you answer "No" to question 1, are you filing Form 1024 within 27 months from the end of the month in which the
organization was created or formed? . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes □ No

If "Yes," your organization qualifies under section 4.01 of Rev. Proc. 92-85, 1992-42, I.R.B. 32, for an automatic
12-month extension of the 15-month filing requirement. Do not answer questions 3 through 5.

If "No," answer question 3.

**3**  If you answer "No" to question 2, has the organization been contacted by the IRS regarding its failure to file Form 1024
within 27 months from the end of the month in which the organization was created or formed? . . . . . . . . □ Yes □ No

If "No," your organization qualifies for an extension of time to apply under the "reasonable action and good faith"
requirements of section 5.01 of Rev. Proc. 92-85. Do not answer questions 4 and 5.

If "Yes," answer question 4.

**4**  If you answer "Yes" to question 3, does the organization wish to request relief from the 15-month filing requirement? . □ Yes □ No

If "Yes," give the reasons for not filing this application prior to being contacted by the IRS. See Specific
Instructions, Part IV, Line 4, before completing this item. Do not answer question 5.

If "No," answer question 5.

**5**  If you answer "No" to question 4, your organization's qualification as a section 501(c)(9) or 501(c)(17) organization can
be recognized only from the date this application is filed with the key District Director. Therefore, does the organization
want us to consider its application as a request for recognition of exemption as a section 501(c)(9) or 501(c)(17)
organization from the date the application is received and not retroactively to the date the organization was created or
formed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes □ No

Form 1024 (Rev. 9-93)                                                                                    Page **7**

**Schedule A    Organizations described in section 501(c)(2) or 501(c)(25) (Title holding corporations or trusts)**

1   State the complete name, address, and employer identification number of each organization for which title to property is held and the number and classes of shares of the applicant organization's stock held by each organization.

2   State whether the annual excess of revenue over expenses is or will be turned over to the organization for which title to property is held and, if not, the purpose for which the excess (income) is or will be held.

3a  In the case of a corporation described in section 501(c)(2), state the purpose of each organization for which title to property is held (as shown in its governing instrument) and the Code sections under which each is classified as exempt from income tax.

3b  In the case of a corporation or trust described in section 501(c)(25), state the basis whereby each shareholder is described in section 501(c)(25)(C).

## Instructions

**Line 1.**—Provide the requested information on each organization for which the applicant organization holds title to property. Also indicate the number and types of shares of the applicant organization's stock that are held by each.

**Line 2.**—For purposes of this question, "excess of revenue over expense" is all of the organization's income for a particular tax year less operating expenses.

**Line 3a.**—Give the exempt purpose of each organization that is the basis for its exempt status and the Internal Revenue Code section that describes the organization (as shown in its IRS determination letter).

**Line 3b.**—Indicate if the shareholder is one of the following:
  1. A qualified pension, profit-sharing, or stock bonus plan that meets the requirements of the Code;
  2. A government plan;
  3. An organization described in section 501(c)(3); or
  4. An organization described in section 501(c)(25).

Form 1024 (Rev. 8-83)                                                    Page 8

**Schedule C**   Organizations described in section 501(c)(4) (Civic leagues, social welfare organizations (including posts, councils, etc., of veterans' organizations not qualifying or applying for exemption under section 501(c)(19)) or local associations of employees.)

1   Has the Internal Revenue Service previously issued a ruling or determination letter recognizing the applicant organization (or any predecessor organization listed in Item 4 of Part II) to be exempt under section 501(c)(3) and later revoked that recognition of exemption on the basis that the applicant organization (or its predecessor) was carrying on propaganda or otherwise attempting to influence legislation or on the basis that it engaged in political activity?  . . . . . . .   ☐ Yes ☒ No

If "Yes," indicate the earliest tax year for which recognition of exemption under section 501(c)(3) was revoked and the IRS district office that issued the revocation.

2   Does the organization perform or plan to perform (for members, shareholders, or others) services, such as maintaining the common areas of a condominium; buying food or other items on a cooperative basis; or providing recreational facilities or transportation services, job placement, or other similar undertakings?  . . . . . . . . . .   ☐ Yes ☒ No

If "Yes," explain the activities in detail, including income realized and expenses incurred. Also, explain in detail the nature of the benefits to the general public from these activities. (If the answer to this question is explained in Part II (pages 2, 3, and 4), enter the page and item number here.)

3   If the organization is claiming exemption as a homeowners' association, is access to any property or facilities it owns or maintains restricted in any way?  . . . . . . . . . . . . . . . . .   ☐ Yes ☒ No

If "Yes," explain.

4   If the organization is claiming exemption as a local association of employees, state the name and address of each employer whose employees are eligible for membership in the association. If employees of more than one plant or office of the same employer are eligible for membership, give the address of each plant or office.

N/A

COVINGTON & BURLING
1201 PENNSYLVANIA AVENUE, N. W.
P. O. BOX 7566
WASHINGTON, D.C. 20044-7566
(202) 662-6000

TELEFAX: (202) 662-6291
TELEX: 80-593 (COVLING WSH)
CABLE: COVLING

LEGONFIELD HOUSE
CURZON STREET
LONDON W1Y 8AS
ENGLAND
TELEPHONE 071-495-5655
TELEFAX 071-495-3101

BRUSSELS CORRESPONDENT OFFICE
44 AVENUE DES ARTS
BRUSSELS 1040 BELGIUM
TELEPHONE 32-2-512-9890
TELEFAX 32-2-502-1598

JEROME D. SORKIN
DIRECT DIAL NUMBER
(202) 662-5569

November 29, 1995

````
REC'D WITH REMITTANCE

DEC 0 6 1995

DIR. INT. REV. EXEMPT
BROOKLYN, N.Y.
````

Internal Revenue Service
EP/EO Division
P.O. Box 1680, GPO
Brooklyn, NY  11202

Re:  Application for Recognition of Exemption
for The American Civil Liberties Union, Inc.

To Whom It May Concern:

Enclosed please find Form 1024, Application for Recognition of Exemption for the American Civil Liberties Union, Inc., a District of Columbia nonprofit corporation with its national headquarters in New York City.  Also enclosed are a Form 8718 (User Fee For Exempt Organization Determination Letter Request), a check in the amount of $465, and a Form 2848 (Power of Attorney).

If you have any questions regarding the application, please contact me at the address and phone number listed above.

Thank you for your assistance in this matter.

Sincerely,

Jerome D. Sorkin

Enclosure

cc:  Ms. Delince
     Mr. Halvorson
     Mr. Hoffenberg

Notes To Part III.  Financial Data
Form 1024 -- Application for Recognition of Exemption
for the American Civil Liberties Union, Inc.


Note 1:

As discussed in Exhibits B and F, the applicant is the ACLU,
a District of Columbia nonprofit corporation. The ACLU is the
successor to the American Civil Liberties Union, Inc., a New
York not-for-profit corporation, incorporated in 1927.

The New York and District of Columbia corporations merged,
effective September 19, 1994.  The Statement of Revenue and
Expenses reflects the financial data of the New York cor-
poration until the date of the merger and of the District of
Columbia corporation after the merger.


Note 2, Line 7 (Other Revenue)

All of the ACLU's "other revenue" is "List Rental Revenue" --
revenues received by the ACLU from organizations that have
used the ACLU's membership list for solicitation or other
purposes.


Note 3, Line 13 (Compensation of Officers, Directors and Trustees)

|  | 1994 | 1993 |
|---|---|---|
| Ira Glasser,<br>Executive Director | $130,250 | $127,950 |
| Alma Montclair,<br>Assistant Secretary &<br>Treasurer | $101,200 | $ 99,276 |
| Total | $231,450 | $227,226 |

Note 5, Line 7 (Other Investments)

| | |
|---|---|
| Fidelity Spartan Money Market Fund | $1,049,927 |
| The Reserve Fund (Money Market) | 232,054 |
| U.S. Treasury Notes | 500,313 |
| D.F.A. Mutual Fund | 318,984 |
| Total | $2,101,278 |

**Notes To Part III. Financial Data**
**Form 1024 -- Application for Recognition of Exemption**
**for the American Civil Liberties Union, Inc.**

Note 4, Line 18 (Other Expenses):

|  | 1/1-9 | 1994 | 1993 | 1992 | TOTALS |
|---|---|---|---|---|---|
| Pension Plan Contributions | 103, | 143,418 | 125,382 | 149,229 | 521,129 |
| Other Employee Benefits | 210,963 | 244,820 | 285,459 | 313,507 | 1,054,749 |
| Payroll Taxes | 107,198 | 114,504 | 120,029 | 105,065 | 446,796 |
| Supplies | 24,108 | - | - | 39,409 | 63,517 |
| Telephone | 213,559 | 210,482 | 172,835 | 175,121 | 771,997 |
| Postage & Shipping | 847,368 | 1,075,988 | 967,000 | 839,852 | 3,730,208 |
| Equipment Rental & Maintenance | 14,302 | 20,810 | 27,101 | 12,923 | 75,136 |
| Printing & Publications | 519,936 | 686,586 | 597,173 | 502,908 | 2,306,603 |
| Travel | 212,538 | 234,776 | 210,639 | 252,569 | 910,522 |
| Courier | 15,547 | 16,060 | - | 18,253 | 49,860 |
| Consultants & Outside Services | 183,303 | 290,666 | 291,280 | 322,549 | 1,087,798 |
| Membership Lists | 223,233 | 384,137 | 412,822 | 201,368 | 1,221,560 |
| Computer | 33,811 | 23,905 | 26,915 | 32,937 | 117,568 |
| Mailing | 117,004 | 193,476 | 152,239 | 143,908 | 606,627 |
| Miscellaneous | 137,228 | 146,897 | 173,981 | 82,107 | 540,213 |
| Conferences | 700 | 10,585 |  |  | 11,285 |
|  |  |  |  |  |  |
| Payments To Affiliates | 3,066,717 | 3,989,449 | 4,013,634 | 4,125,485 | 15,195,285 |
| **TOTAL** | 6,030,615 | 7,786,539 | 7,576,489 | 7,317,190 | 28,710,833 |

List of Exhibits to Form 1024
Application for Recognition of Exemption
for the American Civil Liberties Union, Inc.

Exhibit A     (1) Articles of Incorporation, (2) Articles of
              Merger and (3) By-Laws.

Exhibit B     Answer to Part II, Question 1.

Exhibit C     Letter, dated May 27, 1994, verifying that the
              American Civil Liberties Union, Inc. (New York
              not-for-profit- corporation) is tax-exempt
              under Section 501(c)(4) of the Internal Revenue
              Code.

Exhibit D     1994-1995 Annual Report for the American Civil
              Liberties Union, Inc.

Exhibit E     List of Officers and Directors of the American
              Civil Liberties Union, Inc.

Exhibit F     Answer to Part II, Question 4.

Exhibit G     Certificate of Incorporation for the American
              Civil Liberties Union, Inc., dated November 7,
              1927.

Exhibit H     Answer to Part II, Question 5.

Exhibit I     Answer to Part II, Question 7.

Exhibit J     Answer to Part II, Question 14.

Exhibit K     Samples of pamphlets, brochures, newsletters,
              journals, etc.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
BUSINESS REGULATION ADMINISTRATION



## CERTIFICATE

*THIS IS TO CERTIFY* that all applicable provisions of the DISTRICT OF COLUMBIA NONPROFIT CORPORATION ACT have been complied with and accordingly, this *CERTIFICATE of INCORPORATION* is hereby issued to

*A.C.L.U., INC.*

as of *OCTOBER 26TH, 1993*.

Hampton Cross
Director

Barry K. Campbell
Administrator
Business Regulation Administration

Patricia L. Evans
Assistant Superintendent of Corporations
Corporations Division

Sharon Pratt Kelly
Mayor

**ARTICLES OF INCORPORATION**
**OF**
**A.C.L.U., INC.**

We, the undersigned natural persons of the age of eighteen years (18) or more, acting as incorporators of a corporation under Title 29, Chapter 5 of the District of Columbia Code ("District of Columbia Nonprofit Corporation Act") adopt the following Articles of Incorporation for such Corporation:

**FIRST:** The name of the Corporation is:

A.C.L.U., Inc.

**SECOND:** The period of its duration is perpetual.

**THIRD:** The purpose for which the Corporation is organized is to maintain and advance civil liberties, including, without limitation, the freedoms of association, press, religion, and speech, and the rights to the franchise, to due process of law, and to equal protection of the laws for all people throughout the United States and its possessions or subject to its jurisdiction. The Corporation's objects shall be sought wholly without political partisanship.

The Corporation shall serve as a nonprofit corporation and in furtherance of the purposes hereinabove set out, shall have the power to solicit, accept, and receive funds from any person, organization, or other entity, including but not limited to other nonprofit, charitable or educational organizations, profit-making corporations, and individuals.

Consistent with the objectives and purposes set forth hereinabove, the Corporation may exercise all powers available to

FILED    OCT 2 8 199?

BY: _____

corporations formed under the District of Columbia Nonprofit Corporation Act, subject to the restrictions, if any, contained in these Articles of Incorporation and the Corporation's Bylaws, including full power and authority to take and hold by bequest, devise, gift, grant, purchase, lease, or otherwise any property, real or personal, tangible or intangible, or any individual interest therein, without limitation as to amount or value; to sell, convey or otherwise dispose of any such property and to invest, reinvest, or deal with the principal or income thereof in such manner as, in the judgment of the directors, will best promote the purposes of the Corporation.

Notwithstanding any other provision of these Articles of Incorporation, the Corporation shall exercise only such powers and shall conduct or carry on only such activities as are consistent with the exempt status of organizations described in Section 501(c)(4) of the Internal Revenue Code of 1986 (or the corresponding provision of any succeeding statute).

FOURTH:    Upon dissolution or final liquidation the Corporation may make distributions as permitted under the District of Columbia Nonprofit Corporation Act and under Section 501(c)(4) of the Internal Revenue Code of 1986 (or the corresponding provision of any succeeding statute).

FIFTH: The Corporation shall neither authorize nor issue shares of stock, and no dividends shall be declared.

SIXTH: The affairs of the Corporation shall be managed by its Board of Directors. The number of the directors shall be

- 2 -

fixed in the Bylaws of the Corporation, except that they shall be not less than three (3) in number.

SEVENTH: The designation of the classes of members of the Corporation and the manner of election and appointment and the qualifications and rights of the members of each class are set forth in the Bylaws of the Corporation. Affiliate Voting Members shall be entitled to vote in any election of the Board of Directors of the Corporation and in any referendum vote on a Board of Directors action or a rejection or adoption of a proposed amendment to the Bylaws of the Corporation or a decision not to adopt a Binding Recommendation (as such Binding Recommendation may be described in the Bylaws of the Corporation), in the manner and to the extent provided in the Bylaws of the Corporation. Affiliate Voting Members shall also be entitled to vote in connection with the amendment of these Articles of Incorporation as provided in Article Eleventh hereof.   The Board Voting Members shall be entitled to vote in any election of the Board of Directors of the Corporation, in the manner and to the extent provided in the Bylaws of the Corporation.   Biennial Conference Delegates shall be entitled to vote on all matters before a Biennial Conference (as such conference may be described in the Bylaws of the Corporation), in the manner and to the extent provided in the Bylaws of the Corporation.   General Members of the Corporation shall have no voting rights in their capacity as members to vote for the election of directors, or in connection with any matter, except in connection with election of the boards of directors of Affiliates

- 3 -

(as such term is defined in Article Twelfth hereof), in the manner
and to the extent provided in the Bylaws of the Corporation.

EIGHTH: The address, including street and number, of the
initial registered office of the Corporation is 1025 Vermont
Avenue, N.W., Washington, D.C. 20005 and the name of the initial
registered agent at such address is CT Corporation System.

NINTH: The number of directors constituting the initial
Board of Directors of the Corporation is eighty-three (83) and the
names and addresses, including street and number, if any, of the
persons who are to serve as directors until their successors are
elected and shall qualify are:

FRANK ASKIN
Rutgers Law School
Constitutional     Litigation
Clinic
15 Washington Street
Newark, NJ 07102

RICHARD AXELROD
Box 189, 33 Main Street
St. Johnsbury, VT 05819

ALICE BENDHEIM
1542 W. McDowell Road
Phoenix, AZ 85007

JUDITH BENDICH
Bendich, Stobaugh & Strong
506 Second Avenue, #2010
Seattle, WA 98104

ANN K. BENFIELD
1113 Holly Springs Drive
Louisville, KY 40242

VIVIAN BERGER
20 West 64th Street, #32D
New York, N.Y. 10023

A. STEPHEN BOYAN, JR
UMBC Political Science Dept.
5401 Wilkens Avenue
Baltimore, MD 21228

JEFFREY O. BRAMLETT
3900 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

JAY BRAUSE
POB 104682
Anchorage, AK 99510

BARBARA A. BRENNER
Remcho, Johansen & Purcell
220 Montgomery Street, Suite
800
San Francisco, CA 94104

JOHN CARROLL
5 Paquin Road
Barrington, RI 02806

KENNETH B. CLARK
615 Broadway
Hastings on Hudson, NY 10706

- 4 -

JAMES CRAWFORD
1600 Market Street, #3600
Philadelphia, PA 19103

DAVID DRACHSLER
3313 Carolina Place
Alexandria, VA 22305

DAN EDWARDS
POB 21635
Billings, MT 59104

ELLEN FEINGOLD
1791 Beacon Street
Waban, MA 02168

JAMES E. FERGUSON, II
700 E. Stonewall Street, #730
Charlotte, N.C 28202

JOYCE S. FISKE
1286 S. Sycamore Avenue
Los Angeles, CA 90019

ROGER W. FONSECA
1500 Amfac Building
700 Bishop St.
Honolulu, HI 96813

MARY ELLEN GALE
559 Evergreen Dr.
Pasadena, CA 91105

ELIZABETH GARST
1009 Court
Adel, IA 50003

SHELLEY GEBALLE
19 Flying Point Road
Stony Creek, CT 06405

DIANE GERAGHTY
344 Palos
Glencoe, IL 60022

ANTHONY GRIFFIN
1115 Moody
Galveston, TX 77550

RICARDO GUARNERO
13241 S.W. 261st Place
Vashon Island, WA 98070

JEREMIAH GUTMAN
275 Seventh Avenue, Suite 1776
New York, NY 10001

FRANKLYN S. HAIMAN
824 Ingleside Place
Evanston, IL 60201

JAMES HALL, JR.
Hall, First, Patterson, S.C.
322 E. Michigan Avenue, Suite 600
Milwaukee, WI 53202

MARGIE PITTS HAMES
2671 Rivers Road, NW
Atlanta, GA 30305

DAVID HARRIS
Lowenstein, Sandler, KF&B
65 Livinston Avenue
Roseland, NJ 07068

MARK HENRICKSEN
210 N. Choctaw
El Reno, OK 73036

SUSAN N. HERMAN
Brooklyn Law School
250 Joralemon Street
Brooklyn, N.Y. 11201

EDWARD ICE
2647 Windsor
Troy, MI 48098

WOODY KAPLAN
The Kaplan Group
250 Boylston Street
Chestnut Hill, MA 02167

ROBERT KAPP
Hogan & Hartson
555 13th Street, N.W., #9W-300
Washington, D.C. 20004

GARA LaMARCHE
411 Dean Street
Brooklyn, N.Y. 11217

- 5 -

JOAN LASKOWSKI
222 E. Navajo
West Lafayette, IN 47906

DENISE LeBOEUF
Loyola Death Penalty
Resource Center
210 Baronne Street, Suite 608
New Orleans, LA 70112

STEPHEN E. LEE
2901 North Central, #2000
Phoenix, AZ 85001

MICKI LEVIN
1700 N. Woodward, #205
Bloomfield Hills, MI 48302

ROSLYN LITMAN
Litman, Litman, Harris, Brown
and Watzman
3600 One Oxford Centre
Pittsburgh, PA 15219

JOSEPH P. LYNCH
4021 West Eighth Street
Little Rock, AR 72204

JOAN MAHONEY
7237 Terrace Street
Kansas City, MO 64114

NANCY MAIHOFF
POB 85
Montgomery, WV 25136

RICHARD MAIMAN
30 Glenwood Avenue
Portland, ME 04103

MARTIN MARGULIES
79 High Rock Road
Sandy Hook, CT 06482

ELIZABETH M. McGEEVER
Prickett Jones Elliott Kristol
& Schnee
1310 King Street
Wilmington, DE 19899

JON MEYER
Backus, Meyer & Solomon
116 Lowell
Manchester, NH 03101

MICHAEL MEYERS
New York Civil Rights Coalition
3 West 35th Street, Penthouse
New York, NY 10001

E. WALTER MILES
11474 Caminito Garcia
San Diego, CA 92131

OLINDA MOYD
1774 East West Hwy
Silversprings, MD 20910

WENDY C. NAKAMURA
1515 Second Avenue, #108
San Diego, CA 92101

SLATER E. NEWMAN
315 Shepherd Street
Raleigh, NC 27607

ROLLAND O'HARE
1000 Farmer
Detroit, MI 48226

CHARLENE ORCHARD
1724 Winsor Street
Salt Lake City
Utah 84105

R. SAMUEL PAZ
1112 S. Garfield Avenue
Alhambra, CA 91801

ROBERT B. REMAR
Kirwan, Goger, Chesin & Parks,
P.C.
2600 GLG Grand
75 Fourteenth Street
Atlanta, GA 30309

WILLIAM P. REYNARD
958 Lincoln Street
Denver, CO 80203

- 6 -

EDMUND H. ROBINSON
Shimel, Ackerman, Theos, Spar &
Robinson
122 Church Street
Charleston, SC 29401

TRISH ROSE
129 W. 2nd Street
Hutchinson, KS 67504

GEORGE RUDIAK
2244 Edgwood Ave
Las Vegas, NV 89102

DAVID RUDOVSKY
924 Cherry Street
Philadelphia, PA 19107

MARGARET RUSSELL
Santa Clara University School
of Law
Santa Clara, CA 95053

SHELDON SCHAFFER
2633 Alta Glen Dr.
Birmingham, AL 35243

RAYMOND SCHOWERS
POB 1945
Albuquerque, NM 87103

STEPHEN L. SILBERMAN
5005 Meadow Oaks Park Drive
Jackson, MS 39211

MATTHEW STARK
444 Penn Ave. South
Minneapolis, MN 55405

BRYAN A. STEVENSON
114 N. Hull Street
Montgomery, AL 36104

THOMAS B. STODDARD
76 West 86th Street
New York, NY 10024

NADINE STROSSEN
New York Law School
57 Worth Street
New York, N.Y. 10013

PHILIPPA STRUM
124 West 79th Street
New York, NY 10024

FRANK SUSMAN
Susman,   Schermer,   Rimmel   &
Shifrin
7711 Carondelet Avenue
St. Louis, MO 63105

JOHN M. SWOMLEY
6148 N.W. Wales Road
Kansas City, MO 64151

ALLAN H. TERL
346 City View Drive
Fort Lauderdale, FL 33311

GWEN THOMAS
3528 S. Richfield Street
Aurora, CO 80013

CATHERINE S. TRAVIS
Weiss, Jensen, Ellis & Botteri
2300 U.S. Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204-3626

SAM WALKER
121 South 50th Avenue
Omaha, NE 68132

LELAND WARE
6348 Washington
St. Louis, MO 63130

CHARLES WATTS
Vanderbilt   University   Law
School
21st Avenue South
Nashville, TN 37240

DAVID WAXSE
Shook, Hardy & Bacon
POB 25128
Overland Park, KS 66225

BENSON WOLMAN
115 South Drexel Ave.
Columbus, OH 43209

- 7 -

RICHARD ZACKS
123 Dyer Street
Providence, RI 02903

MONICA ZUCKER
3825 Northeast 155th Place
#403, Seattle, WA  98155

TENTH:  The name and address, including street and number, if any, of each incorporator is:

NADINE STROSSEN
New York Law School
57 Worth Street
New York, N.Y. 10013

IRA GLASSER
ACLU National Office
132 West 43rd Street
New York, NY  10025

ALMA MONTCLAIR
ACLU National Office
132 West 43rd Street
New York, NY  10023

ELEVENTH:  Amendments to these Articles of Incorporation may be made as provided by law.  For the purpose of the approval required by members, only Affiliate Voting Members shall be entitled to vote.

TWELFTH:  The Corporation may establish or recognize non-profit organizations which shall be known as "Affiliates," as provided in the Bylaws of the Corporation, and the members of which shall be General Members of the Corporation.

- 8 -

**THIRTEENTH:** General Members shall have no right to inspect or copy the books and records of the Corporation except as may be authorized by the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the incorporators hereof have signed these Articles of Incorporation on this _13_ day of _____, 1993.

_Nadine Strossen_
Nadine Strossen

_Ira Glasser_
Ira Glasser

_Alma Montclair_
Alma Montclair

Incorporators

- 9 -

State of _____ )
                 ) ss.
County of _____ )

On this *18* day of *October*, 1993, before me personally appeared *Kelli Warren, Sue Gerar*, and *Ann Matthei*, to me known to be the persons named in and who executed the foregoing Articles of Incorporation as incorporators, and severally acknowledged that they executed the same freely and for the intents and purposes therein stated.

MAXINE LOWELL
NOTARY PUBLIC, State of New York
No. 4766827
Qualified in Suffolk County
Cert. Filed in New York County
Commission Expires October 31, 19?5

_____
Notary Public

My commission expires: _____

- 10 -

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
BUSINESS REGULATION ADMINISTRATION



# CERTIFICATE

***THIS IS TO CERTIFY*** that all applicable provisions of the DISTRICT OF COLUMBIA NONPROFIT CORPORATION ACT have been complied with and accordingly, this ***CERTIFICATE of MERGER*** is hereby issued to

## *AMERICAN CIVIL LIBERTIES UNION, INC. (N.Y.)*

### *MERGED INTO:*
*A.C.L.U., INC. (D.C.) AND NAME CHANGED TO:*
*AMERICAN CIVIL LIBERTIES UNION, INC.*
as of *September   19th , 1994* .

Hampton Cross
Director

Barry K. Campbell
Administrator
Business Regulation Administration

*Desiree M. Jones*
Desiree M. Jones
Act. Asst. Superintendent of Corporations
Corporations Division

Sharon Pratt Kelly
Mayor

### ARTICLES OF MERGER
### OF
### AMERICAN CIVIL LIBERTIES UNION, INC.
#### (a New York Not-for-Profit Corporation)
### INTO
### A.C.L.U., INC.
#### (a District of Columbia Nonprofit Corporation)

### UNDER SECTION 546 OF THE NOT-FOR-PROFIT
### CORPORATION LAW

The undersigned, Nadine Strossen and Alma Montclair, being the President and Secretary of American Civil Liberties Union, Inc., a corporation duly organized and existing under and by virtue of the laws of the State of New York, and Nadine Strossen and Alma Montclair, being the President and Secretary of A.C.L.U., Inc., a corporation duly organized and existing under and by virtue of the laws of the District of Columbia, hereby certify:

1.      The names of the constituent corporations are American Civil Liberties Union, Inc. ("Old ACLU") and A.C.L.U., Inc. ("New ACLU").

2.      The Plan of Merger is set forth as Exhibit A attached hereto.

3.      The Plan of Merger was approved by a majority vote of the Board of Directors of Old ACLU at a meeting on January 22, 1993 and by a referendum vote by the members of the Affiliate boards of directors on August 31, 1993.  Members of the Old ACLU have no voting rights in their capacity as members.

4.      The Plan of Merger was approved by a majority vote of the Board of Directors of New ACLU at a meeting on January 22, 1994.  Prior to the effective time of the merger of Old ACLU into New ACLU, the New ACLU had no members.

5.      As set forth in the Plan of Merger, the Articles of Incorporation of New ACLU will be amended to change the name of New ACLU to "American Civil Liberties Union, Inc." and the name of the surviving corporation will be American Civil Liberties Union, Inc.

FILED

SEP 19

BY: _____

EXHIBIT A

## PLAN OF MERGER

### OF

### AMERICAN CIVIL LIBERTIES UNION, INC.
(a New York Not-for-Profit Corporation)

### INTO

### AMERICAN CIVIL LIBERTIES UNION, INC.
(a District of Columbia Nonprofit Corporation)

## ARTICLE I

### NAMES OF CONSTITUENT CORPORATIONS AND OF SURVIVING CORPORATION

The names of the constituent corporations are American Civil Liberties Union, Inc. (a New York not-for-profit corporation) ("Old ACLU") and American Civil Liberties Union, Inc. (a District of Columbia non-profit corporation) ("New ACLU" or the "Surviving Corporation"). The name of the surviving corporation is American Civil Liberties Union, Inc.

## ARTICLE II

The membership, including their number, classification, and voting rights, as to each constituent corporation, are described as follows:

*1.*    *Old ACLU.*  Members have no voting rights in their capacity as members. Members of the Affiliate Boards are entitled to vote in any election of the Board of Directors of Old ACLU and in any referendum vote on a Board of Directors action or a rejection or adoption of a proposed amendment to the Bylaws of Old ACLU or a decision not to adopt a Binding Recommendation of the Biennial Conference. Members of the Board

are entitled to vote in any election of the Board of Directors of Old ACLU. Biennial Conference Delegates shall be entitled to vote on all matters before a Biennial Conference.

2. *New ACLU.* Affiliate Voting Members shall be entitled to vote in any election of the Board of Directors of New ACLU and in any referendum vote on a Board of Directors action or a rejection or adoption of a proposed amendment to the Bylaws of New ACLU or a decision not to adopt a Binding Recommendation (as such Binding Recommendation may be described in the Bylaws of New ACLU). Affiliate Voting Members shall also be entitled to vote in connection with the amendment of the Articles of Incorporation of New ACLU. The Board Voting Members shall be entitled to vote in any election of the Board of Directors of New ACLU, in a manner and to the extent provided in the Bylaws of New ACLU. Biennial Conference Delegates shall be entitled to vote on all matters before a Biennial Conference (as such conference may be described in the Bylaws of New ACLU), in the manner and to the extent provided in the Bylaws of New ACLU. General Members of New ACLU shall have no voting rights in their capacity as members to vote for the election of directors, or in connection with any matter, except in connection with election of the boards of directors of Affiliates, in the manner and to the extent provided in the Bylaws of New ACLU.

The name of the surviving corporation is American Civil Liberties Union, Inc.

### ARTICLE III

### TERMS AND CONDITIONS OF PROPOSED MERGER

The manner and basis of converting membership of Old ACLU into membership in the Surviving Corporation shall be as follows:

On the effective date of the merger of the Old ACLU into the Surviving Corporation, the separate existence of Old ACLU shall cease, all then current members of Old ACLU shall become General Members of the Surviving Corporation, all then current members of the boards of the Affiliates shall become Affiliate Voting members, all then current members of the Board of Directors shall become Board Voting Members, and all then biennial conference delegates shall become Biennial Conference Delegates, and the Surviving Corporation shall succeed to all of the properties, rights, and other assets, and shall assume all of the liabilities and obligations of Old ACLU, without further action by either corporation.  There are no holders of capital, certificates or subventions.

### ARTICLE IV

### AMENDMENTS OR CHANGES IN CERTIFICATE OF
### INCORPORATION OF SURVIVING CORPORATION

On the effective date of the merger of Old ACLU into the Surviving Corporation, the Articles of Incorporation and the Bylaws of New ACLU shall become the Articles of Incorporation and Bylaws of the Surviving Corporation, except that Article First of the Articles of Incorporation of New ACLU shall be amended by deleting therefrom the present Article FIRST and substituting therefor the following new Article FIRST:

- 3 -

FIRST: The name of the Corporation is: American Civil Liberties Union, Inc.

## ARTICLE V

### AMENDMENTS BY SURVIVING FOREIGN CORPORATION
### REGARDING SERVICE OF PROCESS AND SUIT

Because the surviving corporation is to be a foreign corporation, organized and existing under and by virtue of the laws of the District of Columbia, the following statement of agreements on the part of said surviving corporation will, under section 906(d)(2)(D) of the Not-for-Profit Corporation Law, be required to be set forth in the certificate of merger which is to be delivered to the Department of State for filing:

"The surviving corporation, American Civil Liberties Union, Inc., hereby agrees that it may be served with process in the State of New York in any action or special proceeding for the enforcement of any liability or obligation of any domestic corporation or of any foreign corporation previously amenable to suit in the State of New York which is a constituent corporation in this merger, and American Civil Liberties Union, Inc. further agrees that it may be sued in the State of New York in respect of any property transferred or conveyed to it as provided in paragraph (c) of section 207 of the Not-for-Profit Corporation Law, or the use made of such property, or any transaction in connection therewith."

## ARTICLE VI

### MISCELLANEOUS PROVISIONS

1.    *Effective Date of Merger.* The proposed merger shall become effective upon the filing of the Certificate of Merger by the Department of State.

2.    *Abandonment of Plan.* Notwithstanding approval of the Plan by the members of either of the constituent corporations, if at any time prior to the filing of the Certificate of Merger by the Department of State it becomes the opinion of the board of

- 4 -

directors of either of the constituent corporations that events or circumstances have occurred which render it inadvisable to consummate the merger, this Plan of Merger shall be deemed abandoned. The filing of the Certificate of Merger shall conclusively establish that no action to terminate this Plan has been taken by the board of directors of either of the constituent corporations.

## ARTICLE VII

## ADOPTION OF PLAN OF MERGER

This Plan has been duly approved and adopted by the Board of Directors of each constituent corporation.

- 5 -

ORGANIZATIONAL POLICIES

Policy #501

## BYLAWS OF A.C.L.U. INC.

### ARTICLE I

### NAME

Section 1. **Name**. The name of the corporation shall be A.C.L.U., Inc. (hereinafter the "Union").

### ARTICLE II

### OFFICES

Section 1. **Registered Office**. The registered office of the Union shall be located at such place in the District of Columbia as the Board of Directors of the Union (the "Board") may decide. The registered agent of the Union shall be appointed by and serve at the pleasure of the Board.

Section 2. **Other Offices**. The Union may also have offices at such other places both within and without the District of Columbia as the Board, may determine or the business of the Union may require. The national headquarters (the "National Office") shall be maintained in the City, County and State of New York or at such other place as may be determined by the Board.

### ARTICLE III

### MEMBERS AND CLASSES OF MEMBERS

Section 1. **Classes**. Members of the Union shall consist of two classes, General Members and Voting Members, who may be Affiliate Voting Members, Board Voting Members, or Biennial Conference Delegates (collectively, "Voting Members").

Section 2. **General Members**. A general member of the Union shall be an individual paying such membership dues as may be prescribed by the Board (a "General Member"). General Members shall have no right to vote in such capacity for the election of the Board, or in connection with any other matter, except as provided in Article VI, Sections 1 and 4 of these Bylaws in connection with election of the boards of directors of the Affiliates (as such term is hereinafter defined in Article VI).

Section 3. **Voting Members**.
(a) **Affiliate Voting Members**. The "Affiliate Voting Members" shall be all of the members of the boards of the Affiliates during the time they hold office. The Affiliate Voting Members shall be entitled to vote in any election of directors of the Board of the Union, any referendum vote on a Board decision not to adopt a Binding Recommendation pursuant to Article VIII, Section 4, any referendum vote on a Board rejection

- 436 -

or adoption of a proposed amendment to these Bylaws pursuant to
Article IX, Sections 1 and 2 of these Bylaws or any referendum
vote on a Board action pursuant to Article X, Section 1 of these
Bylaws.  Affiliate Voting Members shall also be entitled to vote
in connection with the amendment of the Articles of Incorporation
of the Union as provided therein.

    **(b)  Board Voting Members**.  The members of the Board of
Directors of the Union shall be entitled to vote in any election
of directors of the Board.

    **(c)  Biennial Conference Delegates**.  (i)  The Biennial
Conference Delegates ("Delegates") shall be the following:  (a)
all members of the Board, (b) all members of the National
Advisory Council (as defined in Article VII), and (c) the
Affiliate Delegates, as provided in subsection (ii) below.  The
Delegates shall be entitled to vote on all matters before a
Biennial Conference (as such term is hereinafter defined in
Article VIII), but only during the Conference for which they have
been elected or during which they serve on the Board or National
Advisory Council.  Delegates to a Biennial Conference shall not
in such capacity have power to vote in any election or on any
subject not before a Biennial Conference.

    (ii) The individuals selected by Affiliates to be
Delegates shall be General Members of the Union, and the number
of such Delegates from each Affiliate shall be determined
according to the following formula:

| No. of members in Affiliate | Voting Delegates |
|---|---|
| 1-499 | 1 |
| 500-1199 | 2 |
| 1200-2199 | 3 |
| 2200-3499 | 4 |
| 3500-6499 | 5 |
| 6500-9999 | 6 |
| 10,000-13,999 | 7 |
| 14,000-up | 8 |

    **Section 4.  Notice of Meetings**.  Written or printed
notice stating the place, day, and hour of a meeting and, in case
of a special meeting, the purpose or purposes for which the
meeting is called, shall be delivered not less than 10 nor more
than 120 days before the date of the meeting, either personally
or by mail, by or at the direction of the President, or the
Secretary, or the persons calling the meeting, to each member
entitled to vote at such meeting (whether Affiliate Voting
Members, Board Voting Members, or Biennial Conference Delegates).
If mailed, such notice shall be deemed to be delivered when
deposited in the United States mail addressed to a member at his
or her address as it appears on the records of the Union, with
postage thereon prepaid.  The attendance of a member at any
meeting shall constitute a waiver of notice of such meeting,
except where a member attends a meeting for the purpose of
objecting to the transaction of any business because the meeting
is not lawfully called or convened.

- 437 -

Section 5.  **Suspension; Removal**.  A General Member may
be suspended or removed from the Union, or a prospective General
Member may be excluded, by vote of a majority of the directors in
office.  In such event, the General Member or prospective General
Member shall be entitled to a hearing, at the request of such
General Member or prospective General Member.  The hearing shall
be conducted pursuant to such procedures as the Board may adopt.

## ARTICLE IV

### DIRECTORS

Section 1.  **General**.  (a)  The affairs of the Union
shall be managed by or under the direction of the Board, which
may exercise all such powers of the Union and do such acts and
things as may be permitted by law to be done by a District of
Columbia not-for-profit corporation.

(b)  Notwithstanding anything in these Bylaws to the
contrary, pursuant to the nonprofit corporation law of the
District of Columbia, the Board shall have the exclusive power
and authority to manage the financial and administrative affairs
of the Union and shall have the power to elect, by resolution,
not to adopt, without the right of the Affiliate Voting Members
to vote on, any Binding Recommendation, amendment to these Bylaws
or referendum on action taken by the Board, which would result in
a policy or decision which (i) is ultra vires or does not conform
to the object of the Union as stated in its Articles of
Incorporation, (ii) contravenes the nonprofit corporation law of
the District of Columbia, (iii) threatens the continuation of the
Union's business, (iv) unduly interferes with the power and
authority of the Board to manage the financial and administrative
affairs of the Union, or (v) is inconsistent with the exempt
status of the Union under Section 501(c)(4) of the Internal
Revenue Code of 1986, as amended (or the corresponding provision
of any succeeding statute).

Section 2.  **Eligibility**.  All directors must be General
Members of the Union.  Directors of the Union need not be
residents of the District of Columbia.  No person who is a paid
employee of the Union, or any of its Affiliates, subsidiaries, or
related bodies  shall be eligible to be a candidate for or serve
as a member of the Board.

Section 3.  **Number**.  The number of directors con-
stituting the Board shall be eighty-three (83), and shall consist
of Affiliate Representatives, At-large Representatives and Ex-
Officio Representatives (as such terms are hereinafter defined),
subject to Article IX, Section 3.

Section 4.  **Election and Term**.  The Board shall consist
of the following persons:

(a)  **Affiliate Representatives**.  There shall be the
same number of Affiliate Representatives as there are Affiliates.
The Affiliate Representatives on the Board shall be elected by

- 438 -

their respective Affiliate boards (the "Affiliate
Representatives") to serve for terms of one to three years from
the date of their election, with such terms to be determined in
the discretion of the respective Affiliate board electing such
Affiliate Representatives.

(b)  <u>At-Large Representatives</u>.  There shall be thirty
directors who shall be elected at-large (the "At-large Represent-
atives") in the following manner:

(1)  Nominations shall be made by the Nominating.
Committee after seeking suggestions from all General
Members of the Union.  The Nominating Committee shall
circulate its list of nominees for the Board at least
four weeks prior to the closing date set by the Nomi-
nating Committee for nominations by petition.  Further
nominations may be made by petition of any five members
of the Board, any ten members of the National Advisory
Council, the boards of any three Affiliates, or any
fifty General Members of the Union.

(2)  The electors of the At-large Representatives
shall be the following persons, voting by mail:

a.    The members of the boards of the
Affiliates, voting individually and each casting
as many votes as there are members of his or her
Affiliate divided by that Affiliate's actual board
membership; and

b.    The members of the Board, voting indivi-
dually and each casting as many votes as one-third
of the membership of the Union divided by the
actual membership of the Board. provided that a
member of the Board who is also a member of an
Affiliate board may choose in which capacity to
vote, but shall not vote in more than one
capacity.

The terms of At-large Representatives shall be three
years, beginning when their election is certified by the
Executive Director pursuant to policies adopted by the Board, and
ending on the third subsequent annual certification of at-large
elections.  No more than one-third of any At-large
Representatives, exclusive of vacancies, shall be elected in any
one year.  A vacant term of one or two years may be filled at an
annual election.

(c)  <u>Ex-Officio Representatives</u>.  There shall also be
the following ex-officio members:

(i)  The treasurer of the Union, if he or she is
not an Affiliate or an At-large Representative, and

(ii)  the chairperson of the National Advisory
Council.

(d)  <u>Term</u>.  Each director shall hold office until his or
her successor is duly elected and qualified, or until his or her
earlier resignation or removal.

Section 5.  <u>Vacancies</u>.  (a)  Any vacancy among the At-large
Representatives arising between annual elections may be filled by
a majority vote of the directors then in office, although less
than a quorum, or by a sole remaining director.  If no such

- 439 -

majority vote of directors is obtained, a run-off election shall
be held between the two nominees receiving the most votes.  If
there are no directors in office, then an election of directors
may be held in the manner provided by statute.
        (b)  Any vacancy among the Affiliate Representatives
arising between annual elections may be filled by the respective
Affiliate.
        (c)  Each director filling a vacancy shall hold office
only until the next annual election and his or her successor is
duly elected and qualified, or until his or her earlier resigna-
tion or removal.

        **Section 6.  Resignation.**  A director may resign at any
time by delivering written notice to the President or Secretary
of the Union.  The resignation of any director shall take effect
at the time specified therein; and, unless otherwise specified
therein, the acceptance of such resignation shall not be
necessary to make it effective.  Absence by any director from
three consecutive regular meetings of the Board, without the
grant of leave of absence by the Board, shall constitute a
resignation from the Board, provided that the Board, in its
discretion, may reinstate any director who has resigned in such
manner.

        **Section 7.  Suspension; Removal.**  A member of the Board
may not be suspended or removed because of substantive policy
disagreements.  A member of the Board may be suspended or removed
only for violations of fiduciary responsibilities.  In such
event, the director is entitled to a hearing before the Board at
his or her request.  The hearing shall be conducted pursuant to
such procedures as the Board may adopt.

        **Section 8.  Regular Meetings.**  An annual meeting of the
Board shall be held at such time and at such place, within or
without the District of Columbia, as may be determined by the
Board.  Regular meetings of the Board may be held at such time
and at such place as shall be determined by the Board, but the
Board shall hold no fewer than four meetings during each calendar
year.  In the event of a grave organizational or national
emergency, the Board may cancel no more than one Board meeting in
any year, by resolution stating the reasons for such
cancellation, adopted by vote of three-quarters of the directors
present, provided that a quorum for purposes of such vote will be
a majority of the directors in office.  Such vote may be taken at
a meeting by telephone or by unanimous consent, pursuant to
Sections 12 and 13 of this Article IV.

        **Section 9.  Quorum; Voting; Agenda.**  (a)  One-third of
the directors in office shall constitute a quorum, except as
provided in Article VIII, Section 4(a) (Decision not to adopt a
Binding Recommendation) and in Article IX (Amendment of Bylaws).

        (b)  Members of the National Advisory Council and
Affiliate boards shall be entitled to attend and, with consent of
the Board, to participate in discussion at regular meetings of

- 440 -

the Board pursuant to procedures adopted by the Board, but shall not be entitled to vote. On request of any three directors, the Board vote on any motion shall be taken by name and be so recorded in the minutes. The affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board, except where the act of a greater number is required by law or by these Bylaws.

(c)  By petition, any resolution adopted by the boards of any five Affiliates shall be placed upon the agenda of the next following meeting of the Board for action.

Section 10.  **Special Meetings**.  Special meetings of the Board may be called by the President or the Executive Committee.

Section 11.  **Notice**.  Meetings of the Board or any committee thereof, may be held within or without the District of Columbia upon reasonable notice to each director or committee member, as the case may be. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board need be specified in the notice or waiver of notice of such meeting. The attendance of a director at any meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 12.  **Electronic Participation**.  Pursuant to procedures adopted by the Board, any or all directors may participate in a meeting of the Board or a committee of the Board by means of conference telephone or by any means of communication by which all persons participating in the meeting are able to communicate with one another, and such participation shall constitute presence in person at such meeting.

Section 13.  **Action Without Meeting**.  Any action required or permitted to be taken at a meeting of the Board, or any committee thereof, may be taken without a meeting if all members of the Board, or any committee thereof, consent thereto in writing. Such writing or writings shall be submitted to the Secretary and shall be filed with the minutes of proceedings of the Board or the Committee, as the case may be.

Section 14.  **Committees**.

(a)  Committees other than the Executive Committee may be designated by a resolution adopted by the Board. The general counsel do not constitute a committee.

(b)  Members of committees need not be directors and shall be appointed by the President, subject to the approval of the Board.

(c)  The designation and appointment of any such committee shall not operate to relieve the Board, or any individual director, of any responsibility imposed upon it or the director by law.

(d)  Unless otherwise specified in a resolution of the Board or these Bylaws, at all meetings of each committee of the

- 441 -

Board, a majority of the total number of members of the committee shall constitute a quorum for the transaction of business, each member of the committee shall have one vote, and the affirmative vote of a majority of the members of the committee present at any meeting at which there is a quorum shall be the act of the committee.

**Section 15. Executive Committee.** (a) The Executive Committee shall have and may exercise all the power and authority of the Board in the management and affairs of the Union as to any matters which require disposition in intervals between meetings of the Board. The Executive Committee shall promptly report its actions to the Board.
(b) The Executive Committee shall consist of the President of the Union and ten additional members of the Board. The general counsels, treasurer of the Union, and treasurer of the ACLU Foundation if not elected members of the Executive Committee, shall be ex officio members of the Executive Committee, without vote. The Executive Director and any staff member whom he or she designates shall attend and shall be permitted to participate in the meetings of the Executive Committee but shall not be permitted to vote.
(c) Nominations for membership on the Executive Committee shall be made by the Special Nominating Committee. The report of the Special Nominating Committee shall be distributed within a reasonable period prior to the meeting at which the election of the Executive Committee is to be held. Additional nominations may be made by any member of the Board.
(d) The election of the members of the Executive Committee shall be held at a regular meeting of the Board. The members shall be selected under a method of preferential voting adopted by the Board, provided that after a slate of nominees is selected by the Board pursuant to such method of preferential voting, the Board will vote a second time on the entire slate in order to elect the slate. Such election shall require an affirmative vote by a majority of the directors in office.
(e) The terms of all elected Executive Committee members shall be two years. No more than five members shall be elected in any year, except as may be necessary to fill any vacancies.
(f) Any vacancy in the Executive Committee arising between annual elections may be filled at a regular meeting of the Board by a majority vote of the directors in office.
(g) An Executive Committee member will hold office until his or her successor is duly elected and qualified, or until his or her earlier resignation or removal.

**Section 16. Nominating Committee.** (a) The Nominating Committee shall be responsible for nominations of persons to be elected to the National Advisory Council and to the Board.
(b) The Nominating Committee shall consist of five persons: two members of the Nominating Committee shall be members of Affiliate boards, two members shall be members of the Board, and one shall be a member of the National Advisory Council. Nominations for the Nominating Committee shall be made

- 442 -

by the President, and the Nominating Committee shall be elected
by resolution adopted by a majority of the directors present and
voting at a meeting at which a quorum is present, and one person
shall be designated as chairperson.  Such election shall be held
at the first meeting of the Board after the annual election of
At-Large Representatives of the Union.

(c)  The terms of the members of the Nominating
Committee shall be one year.  No more than two members of the
Nominating Committee shall be appointed for a second consecutive
term and none shall be appointed for more than two consecutive
terms.

Section 17.  **Special Nominating Committee**.  (a)  The
Special Nominating Committee shall be responsible for nominating
officers of the Union (other than the Executive Director) and the
National Advisory Council and the members of the Executive
Committee.

(b)  The Special Nominating Committee shall consist of
at least three but no more than five members of the Board who
shall be nominated by the President, and shall be appointed by a
resolution adopted by a majority of the directors present at a
meeting at which a quorum is present.  Members of the Special
Nominating Committee shall serve for one-year terms.

Section 18.  **Biennial Conference Committee**.
(a)  The Biennial Conference Committee shall act as an
advisory committee to the Board and shall not have the  authority
to act in place of the Board.  The Biennial Conference Committee
shall be responsible for overall planning and conduct of each
Biennial Conference:

(1)  It shall act as an arrangements committee
with respect to a Biennial Conference, receiving from
Affiliates, the Board, the National Advisory Council,
and other interested parties suggestions and proposals
in respect to the program, agenda, and structure of the
Conference.

(2)  It shall establish and propose for adoption
by each Biennial Conference an agenda and such rules as
it considers necessary or appropriate.

(b)  The Biennial Conference Committee shall consist of
seven persons to be appointed by the President of the Union,
subject to the approval of the Board.  The President will appoint
the Chair of the Biennial Conference Committee.  Appointment of
the Biennial Conference Committee shall take place at the next
Board meeting following a Biennial Conference.  No more than
three of the seven members of the Biennial Conference Committee
shall be members of the Board, and one shall be a member of the
National Advisory Council.  The remaining members of the Biennial
Conference Committee shall be recommended by the immediately
preceding Biennial Conference.  The members of the Biennial
Conference Committee shall hold office until their successors are
chosen and qualified or until their earlier removal, resignation
or death.  No member of the Biennial Conference Committee shall
be appointed for more than two consecutive terms, and no more

- 443 -

than three members shall be appointed for a second consecutive term.

Section 19. **Compensation of Directors**. The members of the Board shall not be compensated for service on the Board or as officers of the Union, but may be reimbursed for reasonable expenses for attending meetings or conducting the business of their offices, pursuant to policy adopted by the Board.

## ARTICLE V

## OFFICERS

Section 1. **Positions**. The Board shall elect the officers of the Union. The officers of the Union, who shall be General Members of the Union, shall be a President, one or more Vice Presidents, a Secretary and one or more Assistant Secretaries, a Treasurer and one or more Assistant Treasurers, one or more general counsels, and such other officers and agents as the Board may appoint. Any two or more offices may be held simultaneously by the same person, except for the offices of President and Secretary and except that the Executive Director may not be President, Vice President, Secretary or Treasurer. The Executive Director and any officer who is an employee of the Union shall not be members of the Board. The President and Vice Presidents and Secretary must be members of the Board. The offices of the Union shall be set forth by resolution of the Board.

Section 2. **Nomination and Election**. (a) The Special Nominating Committee shall nominate the officers of the Union. The report of the Special Nominating Committee shall be distributed within a reasonable period prior to the meeting at which the election of the officers is to be held. Additional nominations may be made by any member of the Board at the meeting at which the election is held.
(b) The annual election of officers shall be held at the first regular meeting of the Board after the annual election of At-Large Representatives of the Union. The President shall be elected by a majority of the directors in office.

Section 3. **Term of Office**. The officers of the Union shall hold office for a term of one year and until their successors are chosen and qualified or until their earlier removal, resignation or death.

Section 4. **Removal**. Any officer may be removed at any time by majority vote of the directors in office, pursuant to procedures adopted by the Board.

Section 5. **President**. The President shall preside at all meetings of the Board and of the Executive Committee, ensure that all orders and resolutions of the Board are carried into effect, and in general perform all duties normally incident to

- 444 -

the office of President and presiding officer of the Board and
such other duties as may be prescribed by the Board.

Section 6. **Vice President**. In the absence of the
President or in the event of the President's inability or
refusal to act, the Vice President (or in the event there is more
than one Vice President then in the order designated by the
Executive Committee) shall perform the duties of the President,
and when so acting shall have all the powers of, and be subject
to all the restrictions upon, the President. The Vice Presidents
shall perform such other duties and have such other powers as the
Board or, if authorized by the Board to do so, the President, may
prescribe.

Section 7. **Secretary**. The Secretary shall attend all
meetings of the Board and shall cause to be recorded all the
proceedings of such meetings of the Board in a book to be kept
for that purpose, and shall perform like duties for the
committees of the Board and a Biennial Conference when so
requested; when unable to perform such duties, the Secretary may
delegate such duties to the Assistant Secretary. The Secretary
shall see that all notices are duly given in accordance with the
provisions of these Bylaws or as required by law or as directed
by the Board or the President, and shall perform such other
duties as may be prescribed by the Board or by the President,
under whose supervision the Secretary shall function. The
Secretary shall have custody of the corporate seal of the Union,
and the Secretary shall have authority to affix the same to any
instrument requiring it, and when so affixed it may be attested
by the signature of the Secretary. The Board may give general
authority or specific authority to any other officer to affix the
seal of the Union and to attest the affixing by such officer's
signature. The Secretary may also attest all instruments signed
on behalf of the Union by the President or any Vice President.
The Secretary shall in general perform all duties incident to the
office of Secretary and such other duties as may be assigned by
the Board or, if authorized by the Board to do so, the President.

Section 8. **Assistant Secretary**. The Assistant
Secretary, or, if there be more than one, the Assistant
Secretaries in the order determined by the Board (or if there be
no such determination, then in the order of their election),
shall, in the absence of the Secretary for any reason, including
the failure of the Board to elect a Secretary, or in the event of
the Secretary's inability or refusal to act, perform the duties
and exercise the powers of the Secretary and perform such other
duties and have such other powers as the Board or, if authorized
by the Board to do so, the President, may prescribe. Any
Assistant Secretary shall have authority to affix the corporate
seal and attest by his or her signature to the same extent as the
Secretary.

Section 9. **Treasurer**. The Treasurer shall be
responsible for all funds of the Union and shall keep full and
accurate accounts of receipts and disbursements in books

- 444a -

belonging to the Union, and shall deposit all moneys and other
valuable effects in the name and to the credit of the Union in
such depositories as may be designated by the Board. The
Treasurer or his or her designee(s) shall disburse the funds of
the Union as ordered by the Board, taking proper vouchers for
such disbursements. The Treasurer shall render to the Board, at
its regular meetings or when the Board so requires, an account of
all financial condition of the Union. The Treasurer shall
perform all other duties incident to the office of Treasurer and
such other duties as may be assigned by the Board or, if
authorized by the Board to do so, the President.

Section 10. **Assistant Treasurer**. The Assistant
Treasurer, or, if there be more than one, the Assistant
Treasurers in the order determined by the Board (or if there be
no such determination, then in the order of their election),
shall, in the absence of the Treasurer for any reason, including
the failure of the Board to elect a Treasurer, or in the event of
the Treasurer's inability or refusal to act, perform the duties
and exercise the powers of the Treasurer and perform such other
duties and have such other powers as the Board or, if authorized
by the Board to do so, the President, may prescribe.

Section 11. **Vacancies**. A vacancy in any office of the
Union because of death, resignation, removal, disqualification,
or otherwise, may be filled by the Board for the vacancy of the
term.

Section 12. **Fidelity Bonds**. The Union may, but shall
not be required to, secure the fidelity of any or all of its
officers or agents by bond or otherwise.

Section 13. **Compensation**. The Board shall determine
the compensation of the employees, officers and agents of the
Union which such compensation shall be reasonable for the
services rendered, except that officers who are members of the
Board are subject to Article IV, Section 19 of these Bylaws.

Section 14. **Execution of Documents**. All deeds, mort-
gages, bonds, contracts, and other instruments may be executed on
behalf of the Union by the President, the Executive Director, or
any Vice President (unless such power is restricted by Board
resolution or is required by law to be otherwise signed or
executed) or by any other person or persons designated by the
Board.

Section 15. **Executive Director**. The Executive
Director shall manage the business of the Union as the chief
executive officer of the Union, and shall perform such other
duties as may be prescribed by the Board. The Executive Director
shall be selected by the Board and shall serve until his or her
successor is chosen and qualified or until his or her earlier
removal, resignation or death.

- 444b -

## ARTICLE VI

## AFFILIATES

Section 1.  **General**.  Any group of General Members residing in the same geographic area of the United States or its possessions may form a nonprofit membership organization and apply for recognition as an affiliate of the Union (an "Affiliate"), and the Board ' all so recognize the group when satisfied that the purposes of the Union will be so served.  An Affiliate shall act in accordance with the policies of the Union, with the understanding that the purpose of this requirement is to obtain general unity rather than absolute uniformity.  Each General Member who resides within the boundaries of an Affiliate shall be a voting member of that Affiliate and an Affiliate shall have no members who are not General Members.

Section 2.  **Structure**.  The structure and functioning of an Affiliate, including its relations with the Union and with its own chapters (if any), and any tax-exempt entities associated with the Affiliate, shall be governed by rules adopted by the Board.

Section 3.  **Suspension; Removal**.  By vote of two-thirds of the membership of the Board, an Affiliate may be suspended on those terms established by the Board or removed from the Union and/or a receiver appointed for it and its associated entities. In such event, the Affiliate is entitled to a hearing before the Board, at its request.  The hearing shall be conducted pursuant to such procedures as the Board may adopt.

Section 4.  **Governing Bodies**.
(a)  The board of an Affiliate shall consist of persons who are General Members of the Union, and shall be  electorally responsible to the Affiliate's membership.  To establish such electoral responsibility, the Affiliate's constitution or bylaws shall provide that:
(1)  Election of its board members shall be for reasonable terms and in a manner by which all the Affiliate's members have reasonable opportunity to vote, as by proxy or by a ballot mailed to each, if permitted by law.  If the board members are delegates from chapters, they shall be reasonably apportioned taking into consideration the chapter membership in relationship to the Affiliate membership as a whole and the geographical distribution of the Affiliate's membership, and if they are elected indirectly by chapter boards, those chapter boards shall be electorally responsible to their respective chapter memberships.
(2)  Reasonable opportunity shall be afforded the Affiliate's (or chapter's) membership to nominate candidates for the Affiliate (or chapter) board, and to initiate amendments to the Affiliate (or chapter) constitution and bylaws.  Any vacancy in an Affiliate

- 444c -

(or chapter) board existing between regular elections
may be filled by the board of the Affiliate (or
chapter).

### ARTICLE VII

### NATIONAL ADVISORY COUNCIL

**Section 1. Function.** The National Advisory Council
shall advise the Board but shall have no other rights or powers,
except that its members shall be Biennial Conference Delegates
(the "National Advisory Council").

**Section 2. Members.** The number of members of the
National Advisory Council shall be determined by the Board. Each
member of the National Advisory Council shall be a General Member
of the Union.

**Section 3. Election.** One-third of the membership
shall be elected each year for three-year terms in the following
manner:     (A) Nominations shall be made by the Nominating
Committee, after seeking suggestions from all members
of the Union. Further nominations may be made by
petition of any five members of the Board, any ten
members of the National Advisory Council, the boards of
any three Affiliates, or any fifty members of the
Union.
(B) Election shall be by a majority of the total
membership of the Board.
(C) In nominating and electing such members, the
Nominating Committee and the Board shall take into account
the aim of the Union that the members of the National
Advisory Council shall be apportioned roughly according to
the population of the main geographical sections of the
United States and its possessions, and selected to obtain
the widest possible distribution of support of persons
currently active publicly in behalf of civil liberties -- if
possible, to the extent of being readily recognized
nationally.

**Section 4. Vacancy.** Any vacancy in the National
Advisory Council existing between annual elections may be filled
by the Board. Any person so elected will hold and serve for the
remainder of the term.

**Section 5. Suspension; Removal.** Any member of the
National Advisory Council may be removed or suspended at any
time, by the affirmative vote of a majority of the directors then
in office. In such event, the member is entitled to a hearing at
his or her request. The hearing shall be conducted pursuant to
such procedures as the Board may adopt.

**Section 6. Officers.** The officers of the National
Advisory Council shall be a chairperson and two or more vice-
chairpersons (distributed among the main geographical sections).

- 444d -

The Special Nominating Committee shall nominate the officers of
the National Advisory Council and the Board shall elect such
officers.  The term of such office shall be one year.  A vacancy
in any office because of death, resignation, removal,
disqualification, or otherwise, may be filled by the Board for
the remainder of the term.  Any officer may be removed at any
time by majority vote of the Board.

### ARTICLE VIII

#### BIENNIAL CONFERENCE

Section 1.  **Conference**.  A conference shall be held
biennially in odd-numbered years and at a time and place to be
fixed by the Board, provided that at least each second time it
shall be held in a city other than that of the National Office
(preferably in rotation among the main geographical sections)
(the "Biennial Conference").  In the event of a grave organiza-
tional or national emergency, the Board may cancel a Biennial
Conference by resolution stating the reasons for such cancel-
lation, adopted by vote of three-quarters of the directors
present, provided that a quorum for purposes of such vote will be
a majority of the directors in office, and provided further that
written notice of such proposed action be given at least ten days
prior to the meeting at which the vote is proposed to be taken.

Section 2.  **Attendance; Voting**.  Members of the boards
of Affiliates, other duly authorized representatives, and
professional employees of the Union or Affiliates may attend the
conference, and speak at the discretion of the Chair.  Delegates
shall be entitled to vote and to speak at a Biennial Conference.
In voting at a Biennial Conference, no Delegate shall cast more
than one vote; no proxy votes shall be cast or counted; and no
Affiliate shall have authority to bind or impose any form of unit
rule upon its Delegates.  A roll-call vote shall be taken and
recorded in the minutes at the request of ten or more Delegates.

Section 3.  **Agenda**.  (a)  A Biennial Conference may
consider any matter of concern to the Union, and may make binding
recommendations thereon to the Board.  No less than 120 days
before a Biennial Conference, the Biennial Conference Committee
shall circulate to the Affiliates and the Board, the agenda and
the rules it will propose to a Biennial Conference.  Should any
Affiliate board or any ten members of the Board propose, no less
than 45 days before a Biennial Conference, any addition or
amendment to the agenda or the rules as circulated, the Biennial
Conference Committee shall consider the proposal and either
accept or reject it.  In either case, the Biennial Conference
Committee shall promptly notify the Affiliates and the Delegates
to a Biennial Conference of the proposed addition or amendment
and of the action the Biennial Conference Committee has taken in
respect to each such proposal.
    (b)  A Biennial Conference shall, at its first meeting,
consider the agenda and the rules proposed by the Biennial

- 444e -

Conference Committee.  Adoption of any addition or amendment
proposed 45 days or more before a Biennial Conference, if moved
by any Delegate and seconded, shall be by a majority vote of the
Delegates, a quorum being present (a quorum being a majority of
the registered Delegates).
        (c)  The adoption of the agenda and of the rules shall
be by a majority vote of the Delegates, a quorum being present.
Once adopted, the agenda and the rules shall not be amended or
suspended except by a two-thirds vote of the Delegates, a quorum
being present.
        (d)  The Biennial Conference may consider any matter of
concern to the Union and may make binding recommendations thereon
to the Board (a "Binding Recommendation").  The substance of any
Binding Recommendation that is not acted upon by the Board
pursuant to Section 4 of this Article shall become policy of the
Union as if adopted by affirmative Board vote.

        **Section 4.  Decision Not To Adopt Binding
Recommendation**.  (a)  For the longer of:  (i) a period of 18
months from the time such Conference adjourns, or (ii) a period
during which the Board holds six regularly scheduled meetings,
the Board shall have the power to decide not to adopt the
substance of any Binding Recommendation made by a Biennial
Conference.  Such Board decision shall be by a majority of those
present, a quorum being a majority of the directors in office,
such vote to be taken by name and so recorded in the minutes.
        (b)  Subject to Article IV, Section 1(b), any decision
not to adopt by the Board of a Binding Recommendation shall then
be submitted for referendum vote by the Affiliate Voting Members,
casting votes at respective meetings of the Affiliate boards,
with notice given to the Affiliate Voting Members that the
meeting is called for the purpose of considering the issues in
the referendum.  Each Affiliate shall certify to the National
Office the names of Affiliate board members who attended and
voted in the referendum.  The ballots of members of the Affiliate
board not present at the meeting shall be returned to the
National Office.  Each of the Affiliate Voting Members shall vote
individually, casting as many votes as there are members of his
or her Affiliate, divided by that number of Affiliate board mem-
bers present and voting at the meeting.  If the decision of the
Board not to adopt is overridden by a two-thirds vote of the
Affiliate Voting Members, then the Binding Recommendation shall
be adopted.

### ARTICLE IX

### AMENDMENT

        **Section 1.  Biennial Conference Proposal**.  Amendments
to these Bylaws may be proposed as recommendations of a  Biennial
Conference.  At the next following meeting of the Board, the
Board shall vote on the proposed amendment, and such amendment
shall be adopted by a majority vote of the Board, a quorum being
a majority of its actual membership, such vote to be taken by
name and so recorded in the minutes.  If the Board determines to

- 444f -

not to adopt such amendment, such decision shall then be
submitted for referendum vote by the Affiliate Voting Members
voting by mail pursuant to the procedures set forth in Article
IV, Section 4(b)(2)(a), and if the decision of the Board is
overridden by a two-thirds vote, the proposed amendment shall be
adopted, subject to Article IV, Section 1(b).

        **Section 2.** **Petition.** (a) Amendments to these Bylaws
may also be proposed by petition of any five members of the
Board, any ten members of the National Advisory Council, the
boards of any three Affiliates, or any fifty members of the
Union. At the next following meeting of the Board, the Board
shall vote on the proposed amendment, and such amendment shall be
adopted by a majority vote of the Board, a quorum being a
majority of its actual membership, such vote to be taken by name
and so recorded in the minutes. If such an amendment is approved
by the Board, it shall then be submitted for referendum vote by
the Affiliate Voting Members voting by mail pursuant to the
procedures set forth in Article IV, Section 4(b)(2)(a), and if
approved by a two-thirds vote, shall be adopted, subject to
Article IV, Section 1(b).
        (b) Amendments to these Bylaws may also be proposed by
petition of the board of any ten Affiliates. The proposed
amendment shall be submitted, together with the proposed
recommendation of the Board, if any, for referendum vote by the
Affiliate Voting Members voting by mail pursuant to the
procedures set forth in Article IV, Section 4(b)(2)(a), and shall
be adopted if approved by a two-thirds vote, subject to Article
IV, Section 1(b).

        **Section 3.** **Directors.** Article IV, Section 3 of these
Bylaws may be amended by a majority vote of the Board, a quorum
being a majority of its actual membership, in order to reflect
the admission or removal of an Affiliate and the corresponding
addition or deletion of an Affiliate Representative.

## ARTICLE X

### POLICY REFERENDUM SYSTEM

        **Section 1.** **General.** Upon petition of the boards of
any ten Affiliates, any action taken by the Board shall be
submitted to a referendum of the Affiliate Voting Members in
accordance with the procedures set forth in Article VIII, Section
4(b) of these Bylaws and subject to Article IV, Section 1(b) of
these Bylaws.

## ARTICLE XI

### INDEMNIFICATION

        **Section 1.** **Indemnification.** The Union shall indem-
nify, to the fullest extent permitted by the laws of the District
of Columbia as those laws presently exist or hereafter may be
amended, any director, officer, or former director or officer, of

- 444g -

the Union, or any person who may have served at its request as a
director or officer of another corporation, whether for profit or
not for profit, against expenses actually and necessarily
incurred by him, including attorney's fees, judgments, fines and
amounts paid in settlements in connection with the defense of any
action, suit, or proceeding in which he or she is made a party by
reason of being or having been such director or officer, except
in relation to matters as to which he or she shall be adjudged in
such action, suit, or proceeding to be liable for negligence or
misconduct in the performance of a duty.   Advances against
reasonable expenses may be made by the Union on terms fixed by
the Board subject to an obligation to repay if indemnification
proves unwarranted.  Such indemnification shall not be deemed
exclusive of any other rights to which such director or officer
may be entitled, under any agreement, vote of the Board, or
otherwise, including rights under any insurance policy that may
be purchased by the Union to the extent permitted by the laws of
the District of Columbia as they presently exist or hereafter may
be amended.

### ARTICLE XII

#### GENERAL PROVISIONS

Section 1.  **Fiscal Year**.  The fiscal year of the Union
shall be fixed by resolution of the Board.

Section 2.  **Checks, Notes, Etc.**  All notes, drafts,
checks, acceptances, orders for the payment of money, and
negotiable instruments obligating the Union for the payment of
money shall be signed by the President, the Executive Director,
the Treasurer or by such other officer or officers or employee or
employees as the Executive Committee or Board may direct.

Section 3.  **Loans**.  No loans shall be contracted for or
on behalf of the Union and no evidence of indebtedness shall be
issued in the name of the Union unless authorized by a resolution
of the Executive Committee or Board.  Such authority may be
general or may be confined to specific instances.

Section 4.  **Voting Securities of Other Corporations**.
The Executive Director or such other person as may be designated
by the Board or the Executive Committee shall have the authority
to vote on behalf of the Union those securities of any other
corporation which are owned or held by the Union and may attend
meetings of stockholders or execute and deliver proxies for such
purpose.

Section 5.  **Form of Records**.  Any records maintained by
the Union in the regular course of its business, including its
books of account and minute books, may be kept on, or be in the
form of, punch cards, magnetic tape, photographs,
microphotographs, or any other information storage device,
provided that the records so kept can be converted into clearly
legible written form within a reasonable time.  The Union shall

- 444h -

so convert any records so kept upon the request of any person
entitled to inspect the same.   [Board Minutes, January 23-24,
1993]

**EXHIBIT B TO FORM 1024**
**Application for Recognition of Exemption**
**for the American Civil Liberties Union, Inc.**

<u>Part II, Activities and Operational Information</u>

1.   Provide a detailed narrative description of all the activities of the
organization - past, present, and planned.  Do not merely refer to or
repeat the language in the organizational document.   Describe each
activity separately in the order of importance.  Each description should
include, as a minimum, the following:  (a) a detailed description of the
activity including its purpose;  (b) when the activity was or will be
initiated;  and (c) where and by whom the activity will be conducted.

The applicant is the American Civil Liberties Union, Inc. ("ACLU"), a
District of Columbia nonprofit corporation.  The ACLU is the successor to the
American Civil Liberties Union, Inc., a New York not-for-profit corporation,
which was recognized as tax-exempt under Section 501(c)(4) of the Internal
Revenue Code (<u>see</u> Exhibit C).

For almost seventy years, the ACLU has been dedicated to preserving and
defending the principles set forth in the Bill of Rights.  To this end, the
ACLU engages in various legislative and educational activities intended to
further civil rights and civil liberties.   The ACLU engages in lobbying
activities on the federal and state level, and in public education efforts to
(i) support civil rights, (ii) end the death penalty, (iii) protect the
constitutional rights of artists, (iv) advocate for the adoption of legal
safeguards in the workplace to ensure that workers are judged solely on their
job performance, (v) advocate for legal remedies to redress and prevent
electronic invasions of privacy, and (vi) support the separation of church
and state.  The ACLU also contributes money to its local affiliate organiza-
tions to support similar activities.

In recent years, the predecessor organization helped to pass the Civil Rights
Act of 1991, assisted in drafting legislation that would allow students to
sue a college that disciplined them under codes that penalize "hate speech,"
organized a "pro-choice" voter education drive to defeat a ballot proposal
for a parental notification abortion law, and lobbied to defeat a congres-
sional initiative that would have imposed content-based restrictions on
projects funded by the National Endowment for the Humanities.

Attached as Exhibit D is a copy of the 1994-1995 annual report describing in
greater detail the activities of the ACLU.

**Internal Revenue Service**                    Department of the Treasury

District
Director
                                                10 MetroTech Center
                                                625 Fulton Street
                                                Brooklyn, NY 11201

                                                Date:  MAY 27 1994

American Civil Liberties                         Person to Contact:
   Union, Inc.                                   Patricia Holub
132 West 43rd Street                             Contact Telephone Number:
New York, NY  10036-8506                         (718) 488-2333
                                                 EIN:  13-4921750

Dear Sir or Madam:

Reference is made to your request for verification of the
tax exempt status of American Civil Liberties Union, Inc.

A determination or ruling letter issued to an organization
granting exemption under the Internal Revenue Code remains in
effect until the tax exempt status has been terminated, revoked
or modified.

Our records indicate that exemption was granted as shown below.

                                    Sincerely yours,

                                    [Patricia Holub]

                                    Patricia Holub
                                    Manager, Customer
                                    Service Unit

Name of Organization:  American Civil Liberties Union, Inc.

Date of Exemption Letter:  December 1970

Exemption granted pursuant to section 501(c)(4) of the
Internal Revenue Code.

Foundation Classification (if applicable):  Not applicable.

This organization is tax exempt under the
Group Exemption Number 2131.



**EXHIBIT F TO FORM 1024**
**Application for Recognition of Exemption**
**for the American Civil Liberties Union, Inc.**

Part II. Activities and Operational Information (continued)

4.    If the organization is the outgrowth or continuation of any form of
predecessor, state the name of each predecessor, the period during which
it was in existence, and the reasons for its termination. Submit copies
of all papers by which any transfer of assets was effected.

The American Civil Liberties Union, Inc. was incorporated in the state of New
York on November 7, 1927 (see Exhibit G). To allow for greater flexibility
under corporate law, the applicant was incorporated in the District of
Columbia on October 26, 1993. The New York and District of Columbia
organizations merged, effective September 19, 1994. At that time, the New
York corporation ceased to exist. The applicant, a District of Columbia
nonprofit corporation, is the surviving corporation of the merger. (See
Exhibit A(2).)

**EXHIBIT G TO FORM 1024**
Application for Recognition of Exemption
for the American Civil Liberties Union, Inc.

Certificate of Incorporation for the American Civil
Liberties Union, Inc., dated November 7, 1927

<u>CERTIFICATE OF INCORPORATION</u>

-of-

AMERICAN CIVIL LIBERTIES UNION, INC.

Pursuant to the Membership Corporations Law.

We, THE UNDERSIGNED, desiring to form a Membership Corporation pursuant to the provisions of the Membership Corporations Law, all being of full age; at least two-thirds being citizens of the United States; at least one a resident of the State of New York and at least one of the persons named as a director being a citizen of the United States and a resident of the State of New York, HEREBY CERTIFY and state as follows:

FIRST:    The name of the proposed corporation shall be AMERICAN CIVIL LIBERTIES UNION, INC.

SECOND:    The purposes for which it is to be formed are as follows:

To maintain throughout the United States and its possessions, the rights of free speech, free press, free assemblage and other civil rights, and to take all legitimate action in furtherance of such purposes.

THIRD:    The operations of said corporation are principally to be conducted in the United States of America, and in the territories and possessions of the United States of America.

FOURTH:    The principal office of said corporation shall be located in the City, County and State of

-2-

New York.

**FIFTH:** The number of directors of said corporation shall be twenty (20).

**SIXTH:** The names and residences of the directors until its first annual meeting are:

| NAME | RESIDENCE |
|------|-----------|
| ROGER N. BALDWIN | 100 Fifth Avenue, New York City |
| FORREST BAILEY | 18 East 10th Street, New York City |
| ROBERT W. DUNN | 27 Commerce Street, New York City |
| MORRIS ERNST | 285 Madison Avenue, New York City |
| WALTER FRANK | 25 Broad Street, New York City |
| ELIZABETH GURLEY FLYNN | Room 411, 70 Fifth Avenue, N.Y.City |
| JOHN HAYNES HOLMES | 12 Park Avenue, New York City |
| BENJAMIN H. HUEBSCH | 30 Irving Place, New York City |
| ARTHUR GARFIELD HAYS | 43 Exchange Place, New York City |
| HENRY R. LINVILLE | 70 Fifth Avenue, New York City |
| LUCILLE B. MILNER | 17 West 71st Street, New York City |
| WELCOME E. PITKIN | 41 Broad Street, New York City. |
| JOHN NEVIN SAYRE | 104 East 9th Street, New York City |
| HELEN PHELPS STOKES | 90 Grove Street, New York City |
| JOSEPH SCHLOSSBERG | 15 Union Square, New York City |
| REX STOUT | 66 Fifth Avenue, New York City |
| NORMAN THOMAS | 70 Fifth Avenue, New York City |
| HARRY F. WARD | 16 Bridle Way, Palisades, N.J. |
| B. CHARNEY VLADECK | 175 East Broadway, New York City |
| FRANK P. WALSH | 285 Broadway, New York City. |

**SEVENTH:** All persons shall be eligible to membership in the American Civil Liberties Union, Inc. and shall be accepted under such conditions, including payment of dues, as shall be formulated by the directors.

**EIGHTH:** The corporation shall have a National Committee, which committee shall act in an advisory capacity to the directors. The members of said National Committee, until the election of their successors, shall be as follows:

| NAME | RESIDENCE |
|------|-----------|
| JANE ADAMS | 800 S. Halsted St., Chicago, Ill. |
| HARRY ELMER BARNES | 108 Maynard St., Northampton, Mass. |
| HERBERT S. BIGELOW | 211 Odd Fellows Temple, Cincinnati, |
| RICHARD C. CABOT | 101 Brattle St., Boston, Mass. |
| JOSEPH D. CANNON | 136 West 64th Street, New York City |
| JOHN S. CODMAN | 120 High Street, Boston, Mass. |



**-2-**

| NAMES | RESIDENCE |
|---|---|
| LINCOLN COLCORD | 2203 Aldrich Ave., S., Minneapolis, Minn |
| CLARENCE DARROW | Chicago Temple Bldg., Chicago, Ill. |
| JAMES H. DILLARD | Box 418, Charlottesville, Va. |
| JAMES A. DUNCAN | 965 Second Avenue, Seattle, Wash. |
| ROBERT W. DUNN | 27 Commerce Street, New York City |
| JOHN LOVEJOY ELLIOTT | 426 West 27th Street, New York City |
| EDWARD W. EVANS | 6014 Chew Street, Germantown, Philadelphia, Pa. |
| ELIZABETH GLENDOWER EVANS | 7 Wellington Terrace, Brookline, Mass. |
| ELIZABETH GURLEY FLYNN | Room 411, 70 Fifth Avenue, N.Y.City |
| WILLIAM Z. FOSTER | 423E Michigan Avenue, Chicago, Ill. |
| FELIX FRANKFURTER | Harvard Law School, Cambridge, Mass. |
| ERNST FREUND | 5730 Woodlawn Ave., Chicago, Ill. |
| KATE CRANE GARTZ | Altadena, California |
| NORMAN HAPGOOD | 1286 Madison Avenue, New York City |
| ARTHUR GARFIELD HAYS | 43 Exchange Place, New York City |
| MORRIS HILLQUIT | 19 West 44th Street, New York City |
| JOHN HAYNES HOLMES | 12 Park Avenue, New York City |
| FREDERICK C. HOWE | Century Club, 7 West 43rd St. N.Y.C. |
| B.W. HUEBSCH | 30 Irving Place, New York City |
| JAMES WELDON JOHNSON | 69 Fifth Avenue, New York City |
| WILLIAM H. JOHNSTON | 3615 New Hampshire Avenue, N.W. Washington, D.C. |
| DAVID STARR JORDAN | Stanford University, California |
| HELEN KELLER | Forest Hills, Long Island, N.Y. |
| GEORGE W. KIRCHWEY | 105 East 22nd Street, New York City |
| JULIA C. LATHROP | 1204 National Avenue, Washington, D.C |
| AGNES BROWN LEACH | 170 East 64th Street, New York City |
| ARTHUR LE SUEUR | 719 Metropolitan Life Building Minneapolis, Minn. |
| HENRY R. LINVILLE | 70 Fifth Avenue, New York City |
| ROBERT MORSS LOVETT | 421 West 21st Street, New York City |
| MARY E. McDOWELL | 139 West Clark Street, Chicago, Ill. |
| OSCAR MADDAUS | Manhasset, Long Island, New York |
| ANNE MARTIN | Carmel, California |
| JAMES H. MAURER | 1356 North 11th Street, Reading, Pa. |
| ALEXANDER MEIKLEJOHN | University of Wisconsin, Madison, Wis |
| HENRY R. MUSSEY | 20 Lonawell Road, Wellesley, 81, Mass. |
| A.J. MUSTE | Brookwood, Katonah, New York |
| SCOTT NEARING | Ridgewood, N.J. |
| WALTER NELLES | Cos. Cob, Connecticut |
| FREMONT OLDER | San Francisco Call, San Francisco, Cal. |
| JULIA S. O'CONNOR PARKER | 1110 Fremont Building, Boston, Mass. |
| WILLIAM PICKENS | 69 Fifth Avenue, New York City |
| JEANETTE RANKIN | 23 Bank Street, New York City |
| EDWARD A. ROSS | 336 Sterling Hall, Madison, Wis. |
| JOHN A. RYAN | 1312 Massachusetts Avenue, Washington, D.C. |
| JOHN NEVIN SAYRE | 104 East 9th Street, New York City |
| JOSEPH SCHLOSSBERG | 16 Union Square, New York City |
| ROSE SCHNEIDERMAN | 247 Lexington Avenue, New York City |
| VIDA D. SCUDDER | Wellesley College, Wellesley, Mass. |
| ABBA HILLEL SILVER | The Temple, East 105th Street at Ansel Road, Cleveland, Ohio. |



| NAME | RESIDENCE |
|---|---|
| JOHN P. SINCLAIR | 6014 First Ave. S., Minneapolis, Minn. |
| CLARENCE R. SKINNER | Tufts College, Mass. |
| SEYMOUR STEDMAN | 6532 Greenwood Ave., Chicago, Ill. |
| HELEN PHELPS STOKES | 90 Grove Street, New York City |
| NORMAN THOMAS | 70 Fifth Avenue, New York City |
| EDWARD D. TITTMAN | First National Bank Building, El Paso, Texas. |
| ALBERT M. TODD | Kalamazoo, Mich. |
| WILLIAM S. U'REN | Oregonian Bldg., Portland, Oregon |
| OSWALD GARRISON VILLARD | 20 Vesey Street, New York City |
| B. CHARNEY VLADECK | 175 East Broadway, New York City |
| DAVID WALLERSTEIN | Land Title Building, Philadelphia, Pa. |
| FRANK P. WALSH | 225 Broadway, New York City |
| HARRY F. WARD | 16 Bridle Way, Palisades, N.J. |
| GEORGE P. WEST | Sausalito, California |
| PETER WITT | 860 Leader Bldg., Cleveland, Ohio |
| L. HOLLINGSWORTH WOOD | 601 Fifth Avenue, New York City. |

NINTH: The duration of said corporation shall be perpetual.

TENTH: The name and Post Office address of each subscriber to this Certificate of Incorporation is as follows:

| NAME | POST OFFICE ADDRESS |
|---|---|
| Harry F. Ward | 16 Bridle Way, Palisades, N.J. |
| Arthur Garfield Hays | 43 Exchange Place, New York City |
| Henry R. Linville | 70 Fifth Avenue, New York City |
| Walter Frank | 25 Broad Street, New York City |
| John Haynes Holmes | 12 Park Avenue, New York City |

IN WITNESS WHEREOF, we have made and acknowledged this Certificate in triplicate, this 7th day of November, in the year One thousand nine hundred and twenty-seven.

**EXHIBIT E TO FORM 1024**
Application for Recognition of Exemption
for the American Civil Liberties Union, Inc.

<u>Part II, Activities and Operational Information (continued)</u>

5.    If the applicant organization is now, or plans to be, connected in any
way with any other organization, describe the organization and explain
the relationship (e.g., financial support on a continuing basis; shared
facilities or employees; same officers, directors, or trustees).

The American Civil Liberties Union, Inc. ("ACLU") grants money to affiliate
organizations around the country, and the members of the local affiliate
organizations are also members of the ACLU.

The ACLU shares facilities with the ACLU Foundation, a related organization
that is recognized as exempt under Section 501(c)(3). The ACLU rents office
space in a building owned by the ACLU Foundation. The officers of the ACLU
Foundation are members of the Executive Committee of the ACLU.

**EXHIBIT I TO FORM 1024**
**Application for Recognition of Exemption**
**for the American Civil Liberties Union, Inc.**
**Membership Classifications**

Part II, Activities and Operational Information (continued)

7.  State the qualifications necessary for membership in the organization;
    the classes of membership (with the number of members in each class);
    and the voting rights and privileges received.  If any group or class of
    persons is required to join, describe the requirement and explain the
    relationship between those members and members who join voluntarily.
    Submit copies of any membership solicitation material.  Attach sample
    copies of all types of membership certificates issued.

The American Civil Liberties Union ("ACLU") has two classes of members:
General Members and Voting Members.  Any individual who pays membership dues,
which are voluntary (most contribute $20 to $35), may be a General Member.
No group or class of persons is required to join the ACLU and the ACLU does
not issue membership certificates.

There are three classes of voting members:  Affiliate Voting Members, Board
Voting Members, and Biennial Conference Delegates.  Affiliate Voting Members
are those who are members of the board of the affiliate organizations around
the country, all of whose members must be General Members of the ACLU.
Affiliate Voting Members may vote in any election of directors of the board
of the ACLU, any referendum vote on a decision of the Board of Directors not
to adopt a Binding Recommendation of the Biennial Conference of the ACLU, any
referendum vote on a Board of Directors rejection or adoption of a proposed
amendment to the Bylaws, or any referendum vote on a Board of Directors
action.

Board Voting Members are members of the Board of Directors of the ACLU and
are entitled to vote in any election of directors to the Board.

Biennial Conference Delegates include members of the Board of Directors, the
members of the National Advisory Council, and Affiliate Delegates.    The
Delegates are entitled to vote on all matters that come before a Biennial
Conference.

Copies of membership solicitation material and sample membership cards are
attached.



ra Glasser
Executive Director

132 West 43rd Street
New York, New York 10036

Dear ~:..⁻⁻:

~ank ~ou ⁻    inquiring about the American Civil Liberties
Union.  ~he ~CLU is a non-profit organization chartered to main-
tain those constitutional liberties guaranteed by the Bill of
Rights --

* Freedoms specified in the First Amendment including
  freedom of speech, freedom of the press, and freedom
  of religion;

* Freedom from police abuses, domestic spying and illegal
  intelligence activities guaranteed by the Fourth Amendment;

* Equal treatment and due process before the law, guaranteed
  by the Fifth Amendment;

* A fair trial as guaranteed by the Sixth Amendment;

* The rights of privacy and personal autonomy implicit in
  the Fourth, Fifth and Ninth Amendments.

The ACLU acts on behalf of a group or individuals not because
we are in agreement with their views or politics.  We act because
of our duty to defend constitutional rights.

Our litigation and legislative efforts are supported entirely
by contributions and the dues of our members.  Our mailing list is
limited to our roster of current members and donors.  I
am enclosing information about our substantive program and a
membership application.  I welcome any questions you might have
and look forward to including you among our current members.

Sincerely,

Ira Glasser
Executive Director



**AS AN**

# ACLU

**MEMBER
YOU WILL RECEIVE:**

**Civil Liberties** newsletter.
It is a lively, fascinating report
c___ rent ACLU cases, and
other legal and political
developments, affecting your
civil liberties.

## Yes, I want to help defend my rights.

My contribution is enclosed for ACLU membership in the category I have indicated.
I understand this contribution will also make me a member of my state ACLU, and that
I will receive the newsletter, *Civil Liberties.*

Individual ☐ $20       Joint ☐ $30
Limited Income ☐ $5

☐ $35 ☀ ☐ $50     ☐ $75     ☐ $125     ☐ Other

*Please give this amount or more
if you possibly can*

Name(s)

Address

City                    State            Zip

Amount Enclosed: $

Contributions to the ACLU are not tax-deductible.



**IRA GLASSER**
EXECUTIVE DIRECTOR

*"KEEPING FREEDOM'S FLAME ALIVE 1920-1995"*

Dear ACLU Member:

Today we are witnessing the authoritarian takeover of one of this nation's two major political parties ...

... and if you care about the Bill of Rights, and about such bedrock principles as fairness, equality and privacy, you should be deeply alarmed by this stunning development.

Because the goal of extremists like Pat Robertson and Pat Buchanan, who are driving the Republican party toward their own agendas, is to establish religiously driven government authority over many of our individual freedoms.

**And that's why I'm writing to you today to ask you for a special contribution to help us meet the overwhelming expenses we now face.**

**Your help is urgently needed to counter the most serious and insidious threat to the separation of church and state and to the basic principles of justice and equality we've seen in 40 years.**

We truly have no choice but to confront this stark escalation of attacks on everything you and I believe in -- and everything the ACLU has fought for throughout all 75 years of our existence.

But to do so means expanding literally everything we are doing -- from litigation to legislative lobbying to grassroots public education. And that takes resources we don't have.

So, we desperately need your help to meet the overwhelming costs of the workload created by this extraordinary attempt to impose religious beliefs and authoritarian values on the American people through the force of government.

Believe me, I don't make such a claim lightly. But when I consider what has occurred in this country in just the past two months alone, this conclusion is unavoidable:

▸ At a news conference called by Pat Robertson's Christian Coalition, House Speaker Newt Gingrich pledged to support their reactionary agenda for Congress -- unveiled under the deceptive name, "Contract with the American Family."

To explain his support, Gingrich told the press that the Christian Coalition's electoral activities in 1994 were "a vital part of why we had a revolution at the polls on November 8th."

▸ Bob Dole and Phil Gramm, the two leading Republican

presidential hopefuls, are competing fiercely for the support of the extremists in their party. And as a result, they're pushing the GOP further and further to the right with every speech and public appearance.

► James Dobson, head of the fervently reactionary, two-million-member Focus on the Family, warned Republican leaders that they risk losing the support of religious conservatives if they "ignore the concerns that burn within our hearts," referring particularly to the need to outlaw abortion.

► At the same time, the Democratic party appears totally intimidated by the tactics of the extreme right, with politicians from the President on down offering little or no principled opposition to authoritarian assaults on our most fundamental rights.

In fact, no major political leader of any persuasion -- Democrat, Republican or Independent -- appears willing to step forward and challenge what amounts to a coup by the authoritarian wing of the Republican party or to expose the real goals behind the extremists' agenda.

**That's why your ACLU must sound the alarm to concerned citizens of all political persuasions that the time has come to put political partisanship aside and to defend the Bill of Rights -- before it's too late.**

**But to do this, we must have your strongest support.**

Make no mistake about it. The kind of sectarian, author-itarian influence on electoral politics we are now seeing -- from the grassroots to the highest level of presidential politics -- is unprecedented in American history.

And we know that if the radical right's full agenda should ever become the law of the land, there's no question what it would mean:

A radical shift toward government control of the most personal areas of our lives -- and away from policies that preserve religious liberty and free expression, protect privacy or promote equal opportunity, especially for the most vulnerable members of society.

Here's what they intend to do:

► **Deny women reproductive rights.**

Right now, the Christian Coalition is moving its anti-choice agenda to center stage in Congress in order to eliminate a woman's right to choose abortion as a necessary health procedure. It is trying to eliminate all federal support for abortion whether for women receiving Medicaid (even for victims of rape and incest) or

- 3 -

women in federal prisons or women who are federal employees.

The gloves have come off. And although no proposal carries the weight of an outright ban, the reality is that party activists such as Pat Buchanan and Focus on the Family will not be placated until all abortions are outlawed.

- ► **Censor speech and expression, and control the content of music, T.V., movies and telecommunications.**

The extreme right has proposed a constitutional amendment to outlaw desecration of the flag -- even though the Supreme Court has already ruled that burning the flag, for example, is a form of expression protected by the First Amendment. The House has already passed this amendment overwhelmingly, and by the time you read this, the Senate may have passed it as well. Then we will need to fight in all 50 states to prevent ratification!

In addition, recent attacks on Hollywood and the entertainment industry by Republican presidential candidates demonstrate just how willing men like Dole and Gramm are to sacrifice the Constitution for votes from extremists. What this will lead to is another "blacklist," like we had in the 50s.

Finally, the Senate has already voted to restrict computer speech on the Internet which is approximately like restricting pamphlets after the invention of the printing press.

- ► **Establish religion in the schools and in other public or government-controlled forums.**

They are trying to win this particular goal by hiding it behind the reasonable-sounding "Religious Equality Amendment" to the Constitution -- instead of calling for a "School Prayer Amendment," which is what they intend to impose.

The truth is, they don't need a constitutional amendment to get "religious equality." That's what the First Amendment has guaranteed for more than 200 years.

- ► **Push gay men and lesbians back into the closet.**

Pat Buchanan continues to lead the anti-gay crusade, regularly contending in his campaign speeches that AIDS is nature's "awful retribution" against gays. There is no question that we will face new anti-gay state ballot measures in 1996, with the full support of right-wing extremists at every level.

- ► **Wipe out affirmative action and other remedies for racial and gender discrimination.**

In Congress, Dole and Gingrich and others are attempting to demonize affirmative action, characterizing it as "reverse" discrimination against white males, when in fact it is a remedy for centuries of discrimination against minorities and women,

- 4 -

much of which persists today.

In California, Governor Pete Wilson, another presidential opportunist, has shucked his "moderate" Republican credentials to join the reactionary attack on fairness, equal opportunity and affirmative action. Encouraged by Gov. Wilson, California is preparing to vote on a state constitutional amendment in 1996 that would outlaw affirmative action in all public institutions.

And, thanks to the efforts of the Christian Coalition and other right-wing groups, anti-affirmative action sentiment is spreading throughout the country. We expect several other states to follow California's lead and hold similar referenda.

So, what does all this mean for you and me?

First of all, although the right-wing agenda is being pursued in the context of partisan politics, the true victim will not be any political party, candidate or presidential "wannabe." In any case, the ACLU is non-partisan and takes no electoral positions.

The _true_ victim of the authoritarian takeover of politics will be our Constitution -- the embodiment of our democracy, our founding principles and our real values as a pluralistic nation.

And here at the ACLU, our only agenda is to protect the Constitution, and the rights it guarantees.

_That's_ _why_ _I'm_ _asking_ _for_ _your_ _help_ _today_ -- so that the ACLU can continue to expose and challenge the threats posed by zealots like Robertson, Buchanan and Dobson and by opportunistic political candidates who have chosen increasingly to dance to their authoritarian tune.

Because the right-wing onslaught against our most fundamental rights and liberties has really only just begun.

_We_ _need_ _your_ _help_ _more_ _than_ _ever_ _before_. _And_ _we_ _need_ _it_ _now_.

So please, while my letter is in front of you, help us turn back one of the most dangerous reactionary movements against civil liberties in our 75-year history. Thank you.

For the Bill of Rights,

Ira Glasser
Executive Director

P.S.  Our efforts on your behalf to respond to the authoritarian and sectarian influence of the extreme right so far this year has put us in serious financial jeopardy. That's why I must turn to you and other ACLU members for help. Your generous gift today will make a big difference in our ability to fight back. _Don't_ _let_ _them_ _win_. Thank you.

**ACLU**

132 WEST 43RD STREET
NEW YORK, NY 10036-6599

# SPECIAL REPLY

TO:      Ira Glasser

FROM:

‖ı‖ı‖ıı‖‖ıı‖ıı‖ıı‖‖ıııı‖‖ıı‖‖ıı‖ı‖ı‖ıı‖ıı‖

S5711      5433132L

I am deeply concerned that we now face the most serious authoritarian threat to the Bill of Rights and to the basic principles of justice and equality we've seen in more than 40 years.  I want to help the ACLU confront that threat.

I agree we must sound the alarm to concerned citizens of all political persuasions that the time has come to put political partisanship aside and to defend the Bill of Rights from anti-liberty extremists — before it's too late.

And to make certain the ACLU has the financial resources to expand every aspect of our work on behalf of fundamental rights and liberties, I have enclosed a special contribution to the ACLU in the amount of:

☐ $20        ☐ $30        ☐ $40        ☐ Other $_____

Please make your check payable to the American Civil Liberties Union (ACLU) and return it with this reply form in the enclosed envelope or mail to: ACLU, 132 West 43rd Street, New York, New York 10036-6599.
Contributions to the ACLU are not tax deductible.



A copy of the annual Financial Report and Registration filed by this organization may be obtained by sending a stamped self-addressed envelope to: American Civil Liberties Union, 132 West 43rd Street, New York, NY 10036-6599; the Office of Charities Registration, 162 Washington Avenue, Albany, NY 12231; Maryland — FOR THE COST OF COPIES AND POSTAGE, Office of the Secretary of State, State House, Annapolis, MD 21401; Virginia — State Division of Consumer Affairs, Dept. of Agriculture & Consumer Services, P.O. Box 1163, Richmond, VA 23209; Washington — Charities Division, Office of the Secretary of State, State of Washington, Olympia, WA 98504-0422; (within Washington, 1-800-332-4483); West Virginia — Secretary of State, State Capitol, Charleston, WV 25305. Florida — A COPY OF THE OFFICIAL REGISTRATION AND FINANCIAL INFORMATION MAY BE OBTAINED FROM THE DIVISION OF CONSUMER SERVICES BY CALLING TOLL-FREE 1-800-HELP-FLA (1-800-435-7352) WITHIN THE STATE OF FLORIDA. Pennsylvania — The official registration and financial information of the American Civil Liberties Union may be obtained from the Pennsylvania Department of State by calling toll-free within the state, 1-800-732-0999. NORTH CAROLINA — A COPY OF THE LICENSE TO SOLICIT CHARITABLE CONTRIBUTIONS AS A CHARITABLE ORGANIZATION OR SPONSOR AND FINANCIAL INFORMATION MAY BE OBTAINED FROM THE DEPARTMENT OF HUMAN RESOURCES, SOLICITATION LICENSING BRANCH, BY CALLING (919) 733-4510. NEW JERSEY — INFORMATION FILED WITH THE ATTORNEY GENERAL CONCERNING THIS CHARITABLE SOLICITATION MAY BE OBTAINED FROM THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY BY CALLING (201) 504-6215. REGISTRATION DOES NOT IMPLY ENDORSEMENT, APPROVAL, OR RECOMMENDATION BY ANY STATE. MICS 9845.

Recycled paper



Dear Friend of Freedom:

A firestorm is sweeping across the country that threatens us all.

Now that the Radical Right has won political power in Congress and in state legislatures across the country ...

... newly empowered extremist groups in nearly every state are fanning the flames of intolerance and bigotry, igniting fierce legal battles and triggering explosive social conflicts.

Groups like Pat Robertson's **Christian Coalition** and his **American Center for Law and Justice** (ACLJ) now feel like they have permission to set fire to the Bill of Rights in courtrooms from coast to coast.

In fact, a whole new industry has sprung up solely to advocate and advance right-wing causes in courtrooms and in the public arena. There's the **National Legal Foundation**, the **American Family Association Law Center**, the **Western Center for Law and Religious Freedom**, the **Rutherford Institute**, the **American Spiritual Liberties Union**, the **U.S. Justice Foundation**, and the **Christian Educators' Association** -- just to name a few!

This assault from the extreme right is underprecedented in both its scope and strategy. And it is particularly successful in advancing the religious agenda of the Radical Right.

Prayer in public schools ... religious symbols on government property ... teaching creationism and prohibiting sex education classes ... denying basic rights to homosexuals ... banning books ... censoring art and music -- these are some of the legal challenges that are burning holes in our Constitution even as I write.

**AND** ... there is only one organization -- on the ground in every state -- responding to these challenges. That's the **American Civil Liberties Union** (ACLU). But frankly, as you can see on the enclosed map, we are stretched to our limits!

**That's why I'm writing to urge you to become a member of the ACLU today. After 75 years of defending liberty, we know of only one way to guarantee that you can exercise your rights and freedoms when you need to: fight for them every time they're threatened.**

These are dangerous times for our basic freedoms --

(over, please)

AMERICAN CIVIL LIBERTIES UNION ■ 132 WEST 43RD STREET ■ NEW YORK, NY 10036-6599
Recycled paper

- 2 -

particularly the <u>freedom to practice, or not practice religion</u> as you choose ... the <u>freedom to speak your mind</u> ... the <u>freedom to express yourself</u> ... and the <u>right to be different</u> from the majority of people.

With religious right leaders like Pat Robertson fanning the fires of destruction with extremist rhetoric and Radical Right lawyers putting the torch to years of judicial precedent, the demands on the ACLU are overwhelming.

Why should you care that the ACLU is in danger of being overwhelmed?

Because the reality of our constitutional system is that <u>just having a right on paper is meaningless unless someone is there to protect your ability to exercise that right</u>.

And today, particularly because of the rightward shift in Congress, <u>providing that protection has become even more difficult</u>. Not only must we face the threat of a school prayer amendment to the Constitution, but such a proposal has <u>energized</u> the nationwide axis of right-wing lawyers and religious right activists to <u>step up their efforts</u> to dismantle the wall of separation between church and state.

Just look at what they've done so far:

**   Legislatures in <u>Virginia</u>, <u>Alabama</u>, <u>Georgia</u>, <u>Arkansas</u>, <u>Tennessee</u>, and <u>Mississippi</u> have already enacted laws that mandate prayer in public schools.

**   Similar laws requiring some form of prayer in public schools are being debated in <u>Idaho</u>, <u>Texas</u>, <u>Florida</u>, and <u>New Jersey</u>.

**   In <u>California</u>, the school board majority that sought to mandate the teaching of creationism was voted out of power, but three other school boards with radical right majorities are seeking to change curricula and textbooks to reflect a sectarian religious viewpoint.

**   Books explaining homosexuality were burned in <u>Kansas</u> and a library aide was fired in <u>Montana</u> for helping students with an approved project because parents believed the books she loaned them "reflected feminism and satanism."

**   Public schools in <u>West Virginia</u> allow proselytizing of students by the local Crusade for Christ during the school day. And one school board in <u>Virginia</u> voted to use the Bible for the study of grammar, history and literature, a pretext for sectarian indoctrination.

(next page, please)

- 3 -

\*\*  And in _Wisconsin_, a law has been passed that would
     divert taxpayer funds from public schools to private
     religious schools.

The Bill of Rights promises religious liberty, and free
speech and expression, promises to keep you free from the
government's pressure to support someone else's religion, but in
all these states people will be denied those freedoms -- unless
someone fights to defend them.

_And that someone is the American Civil Liberties Union and our_
_275,000 members_ -- _people like you who care enough to fight back_.

We've been doing it for 75 years, and many of the rights you
take for granted today were won as the result of ACLU cases.

<center>

### The ACLU in Action:
### A Fire Department for Your Endangered Rights

</center>

Every time the ACLU is alerted to a threat to someone's
liberty, we rush to the scene like a volunteer fire brigade and
take whatever action is necessary.

And, with an ACLU affiliate or chapter in every state and the
District of Columbia, we're _the only national organization_
capable of responding wherever and whenever someone's civil
liberties are threatened.

For example, Lisa Herdahl of Ecru, Mississippi, called on the
ACLU to help her after her children were harassed -- by both
teachers and classmates -- for not participating in daily prayer
and Bible classes in their local public school.  When Mrs.
Herdahl protested the treatment of her children, her concerns
were dismissed by school officials as either exaggerated or
fictional.  So she turned to us for help.

And, in April, a federal court in Oxford, Mississippi, ruled
that the religious practices that take place in Ecru's public
school violate the Constitution -- just as we had argued in court.

But, rather than defusing the school prayer movement, the
court decision only served to fan the movement's flames.  And now
the Radical Right is more determined than ever to pass a consti-
tutional amendment that will allow public schools to conduct
religious ceremonies and impose religious beliefs on children
whose families believe differently.

Furthermore, Robertson's cadre of lawyers at his ACLJ have
not let up for a minute in their litigation strategy.  So here at
the ACLU, we've had to _rush_ forward constantly to stop them.

\*\*  Local ACLU affiliates are bringing court cases
     against states that have enacted school prayer laws.
     Litigation is planned in Tennessee and Arkansas, and

(over, please)

- 4 -

we fear that more lawsuits -- expensive and time-
consuming -- will be necessary.

** For school districts being badgered by Radical Right
propaganda, the national ACLU prepared and dis-
tributed a video called "Our Constitutional Heritage"
that explains how the separation of church and state
is essential to religious liberty.

** The ACLU represented students and others in Loudoun
County, Virginia, who objected to a policy in which
high school students were asked to vote on whether or
not prayer should occur at high school ceremonies.
The court also ruled in our favor in this case,
explaining:

"The notion that a person's constitutional rights may
be subject to a majority vote is itself anathema.
The graduating classes in Loudoun County could not
have voted to exclude from the ceremonies persons of
a certain race.  To be constructively excluded from
graduation ceremonies because of one's religion or
lack of religion is not a great deal different."

These two recent legal victories prove that if we are given
enough resources, we can prevail in court.  We can stop religious
tyranny.  But there are cases like these all across the country
-- fires that must be put out.

Moreover, the more we win in court, the more the extremists
push for a constitutional amendment that would take away our
legal weapons.  So while we fight in court over the Constitution
we have, we also have to fight in Congress to keep the
Constitution from being changed.

**That is why we simply cannot prevail in our
defense of your fundamental rights without your
support as a member of the ACLU.**

Rights never stay won unless those who mean to keep them
contribute to their defense.

And now, with agents of the Radical Right such as Newt
Gingrich using their new power in Congress to push for a
constitutional amendment that would shatter the wall separating
church and state, we must be able to fight back -- both
nationally and locally where extremist groups have launched
dozens of dangerous schemes to remake America in their own right-
wing, religious image.

** Pat Robertson's **American Center for Law and Justice
(ACLJ)** has been initiating lawsuits all over the
country on behalf of "student-initiated" prayer at
graduation ceremonies to stir up support for the

(next page, please)

- 5 -

effort to amend the Constitution to allow public
schools to conduct religious ceremonies.

** The extremist Rutherford Institute defended a public
school teacher who wanted to teach creationism
instead of evolution. The case was dismissed by a
federal judge, but Rutherford lawyers are appealing
it. The school district estimates it will spend
$100,000 to defend itself. "This is one of the
scariest phenomena I've seen in my 30 years of
education," said school superintendent James Fleming.

** The Christian Educators Association exists to help
public school teachers stretch the limits of the laws
governing church/state relations -- to avoid going
to court. They hold seminars entitled, "How to Share
Judeo-Christian Perspective Without Being Sued."

### Only the ACLU Can Put Out All the Fires -- But We Can't Do It Alone!

The Radical Right has been pushing for school prayer since
the mid-1960s when the Supreme Court first ruled that government-
endorsed public school prayer is unconstitutional. And they are
getting closer to what they want every day.

They've been trying to overturn Roe v. Wade for nearly as
long -- and as a result of their efforts, millions of poor women
and young women have lost the right to choose abortion.

And their latest campaign to deny basic rights to men and
women who are discriminated against in housing and employment
solely because of their sexual orientation is equally vehement
and dangerous.

These are not their only intended victims. Read their publi-
cations and it becomes crystal clear: they mean to create a
theocracy in America, to impose their sectarian views through law
on you.

These are your rights that are under fire.

Whenever a court denies anyone's rights, you lose those same
rights, too. Maybe you don't have children in schools where the
Crusade for Christ comes to visit. Or you've never tried to
check a censored book out of a library. Maybe no one in your
family ever had an unwanted pregnancy. Or you don't know anyone
who's lost his job because he's gay.

BUT ... you can no longer assume that when such things happen
to people, they -- or you! -- will be automatically protected by
the constitutional guarantees of individual liberty contained in
the Bill of Rights.

(over, please)

- 6 -

You need a strong ACLU to protect your rights.

Because only the ACLU has the expertise and the legal staff
to take constitutional challenges to a successful conclusion in
all the areas covered by the Bill of Rights.

Only the ACLU is capable of bringing suits in both state and
federal courts and following them all the way to the Supreme
Court if necessary because we have affiliates and chapters in
every state in the Union, backed up by strong central offices in
New York and Washington, D.C.

And only the ACLU has the combination of skill, experience
and resources to mount whatever tactical approach -- litigation,
legislative lobbying or public education -- is required to secure
your rights now and for the future.

That's why I'm asking you today to help us stay strong
by becoming a member of the ACLU. Just complete the
enclosed form and then return it to me with your most
generous membership contribution.

Your membership contribution of $20, $35, $50 or $100
will help guarantee our ability to continue defending
your rights wherever and whenever they're threatened.

With your help -- and on your behalf -- we'll go to court,
we'll speak out publicly, and we'll do whatever is necessary to
counter the Radical Right's assault on our fundamental freedoms.

Together, we can stand for tolerance, diversity and equality
-- the uniquely American values expressed by our Bill of Rights.
And together, we can fight to protect our rights today and to
preserve them for future generations of Americans.

Don't sit on the sidelines while your rights go up in smoke.
Join the ACLU and help us put out the fires that threaten to
consume the Constitution.

Sincerely,

Ira Glasser
Executive Director

P.S.  The ACLU is the only national organization on the ground in
every state responding to right-wing assaults on the Bill
of Rights. When you are a member of the ACLU, approx-
imately 75% of your membership contribution goes directly
to the ACLU affiliate in your state to help defend your
rights. Please help us.



EXHIBIT J TO FORM 1024
Application for Recognition of Exemption
for the American Civil Liberties Union, Inc.

## Part II. Activities and Operational Information (continued)

14. Does the organization now lease or does it plan to lease any property?
If "Yes," explain in detail. Include the amount of rent, a description
of the property, and any relationship between the applicant organization
and the other party.  Also, attach a copy of any rental or lease
agreement.

The American Civil Liberties Union, Inc. ("ACLU") leases office space from
the ACLU Foundation in New York City and Washington, D.C.  The ACLU leases
one floor of office space at 132 West 43rd Street, New York, for $15,000 per
year.  The ACLU leases office space in adjacent buildings at 122 Maryland
Avenue, N.E., Washington, D.C., for $40,000 per year.  There is no written
lease agreement for either property.